**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KAREN LURIE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:06-cv-00034-MEF** |
| | ) | |
| **GLOBE LIFE AND ACCIDENT** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**DEFENDANT GLOBE LIFE AND ACCIDENT INSURANCE COMPANY'S**</u>
<u>**BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**</u>

Defendant **Globe Life and Accident Insurance Company** (hereinafter "Globe"

or "Defendant") states as follows in support of its Motion for Summary Judgment:

**I.    THE PLAINTIFF'S ALLEGATIONS AND STATEMENT OF MATERIAL**
**FACTS.**

**A.    The allegations in the Plaintiff's Complaint.**

In her Complaint, Plaintiff Karen Lurie (hereinafter the "Plaintiff") alleges that in

or around April of 2003, her deceased husband, David Lurie (hereinafter the "Insured")

purchased an accidental death insurance policy (Policy Number 14-J522138) (hereinafter

the "Policy") from Globe which would pay accidental death benefits in the amount of

$100,000.00 in the event the insured died an accidental death as defined in the policy.

*Complaint* at ¶ 4.  Plaintiff alleges that she was designated as the beneficiary of the

Policy when the Insured died on or about January 6, 2004.  *Complaint* at ¶¶ 5-6.  Further,

Plaintiff alleges that she made a claim for the accidental death benefits of the Policy,

which was denied by Globe.  *Complaint* at ¶¶ 7-8.

In Count I of her Complaint, the Plaintiff purports to bring a claim against Globe for breach of contract. *Complaint* at ¶¶ 9-14. Specifically, Plaintiff alleges that Globe accepted premium payments from the Insured until the date of his death and that the Insured fully performed his end of the contractual agreement. *Complaint* at ¶¶ 10-11. Plaintiff further alleges that Globe failed to pay the death benefit stated in the Policy, which allegedly constitutes a breach of contract entitling the Plaintiff to recovery as a beneficiary under the policy. *Complaint* at ¶¶ 12-14.

In Count II, the Plaintiff purports to bring a claim against Globe for bad faith. *Complaint* at ¶¶ 15-18. Specifically, Plaintiff alleges that Globe intentionally, and in bad faith, failed and refused to properly pay and investigate Plaintiff's claim for accidental death benefits. *Complaint* at ¶¶ 16-17.

### B.    The applicable policy provisions.

The Policy contains the following provisions which are pertinent to the issues before this Court:

TERMINATION OF COVERAGE: The coverage of any Insured[1] shall terminate at the end of the Grace Period following any premium due date for which the Insured's required premium has not been paid. Any premium paid for any period after the date coverage terminates will not continue the Insured's coverage in force and will be returned, unless accepted by Us[2] under the Reinstatement provision in this certificate.

PAYMENT: Each premium is payable in advance at Our[3] Administrative Office.

---

[1]   The term "Insured" is defined as "[a]n eligible person who is named in the Certificate Schedule." In this case, the Insured was listed in the Certificate Schedule as "David Lurie." Mr. Lurie is the deceased husband of the Plaintiff.

[2]   The term "Us" is defined as Globe Life and Accident Insurance Company at Our Administrative Office in Oklahoma City, Oklahoma.

[3]   The term "Our" is defined as Globe Life and Accident Insurance Company at Our Administrative Office in Oklahoma City, Oklahoma.

FREQUENCY:   The first premium for each Insured is due on the Certificate Effective Date.   Thereafter, each premium is due at the end of the period for which the preceding premium was paid.

DEFAULT:   If a premium remains unpaid at the end of the grace period, the Insured's insurance will terminate.

GRACE PERIOD:   A grace period of 31 days will be allowed each Insured for the payment of each premium after the first, during which period his or her insurance shall continue in force.

REINSTATEMENT:   Coverage may be reinstated at any time within one year after default in premium payment if:

    a.   The Insured provides Evidence of Insurability[4] satisfactory to Us; and

    b.   All overdue premiums are paid.

CERTIFICATE EFFECTIVE DATE:  APRIL 28, 2003.

*Lurie Depo.* at Ex C.

**C.**    **Timeline of pertinent events.**

The following is a timeline of events that are pertinent to this lawsuit:

- November 28, 2003  -  A premium payment was due on the Policy.  *Lurie Depo.* at 70:11-18, Ex C.[5]

- December 29, 2003  -  The 31 day grace period for payment of the November premium passed and **the Policy lapsed**.[6]  *Lurie Depo.* at 56:10-14, Ex C.

- January 2, 2004  -  Globe sent the Insured a letter bearing this date notifying the Insured that Globe never received the premium due on November 28, 2003, and offering to **"reinstate"** the Policy **"provided the insured is still in good health,"** and that premium was paid by January 17, 2004.[7]  *Lurie Depo.* at Ex C.

---

[4]   The term "Evidence of Insurability" is defined as "[s]atisfactory proof, as determined by Us, that a person is acceptable for insurance."

[5]   The deposition of Plaintiff Karen Lurie is attached hereto as Exhibit "A."

[6]   It cannot be disputed that the Policy was not in force after December 29, 2003.

[7]   This letter evidences the fact that the Policy was no longer in force, that it would have to be reinstated for coverage to resume and that reinstatement could only occur if the Insured was in good health (i.e.,

- <u>January 4, 2004</u>  -  The Plaintiff allegedly wrote a check for the past due premium on this Sunday evening and placed the check in her mailbox. *Lurie Depo.* at 57:22-58:20, 67:7-13.

- <u>January 6, 2004</u>  -  The Insured was killed in a motorcycle collision at approximately 5:40 a.m. *Lurie Depo.* at 41:6-13, 66:15-18.

- <u>January 12, 2004</u>  -  The Plaintiff alleges that she received Globe's letter, which was dated January 2nd and allegedly postmarked January 7th, offering to reinstate the Policy provided premium was paid by January 17th and that the insured was still in good health. *Lurie Depo.* at 93:2-94:7, Ex C.

- <u>January 16, 2004</u>  -  The past due premium check, which was allegedly written and placed in the mail on January 4th, was received in Globe's office in Oklahoma City, Oklahoma (allegedly 12 days after mailing and undisputedly after the death of the insured). *Hernandez Depo.* at 17:5-18:1, 24:15-18.[8]

- <u>January 26, 2004</u>  -  A letter bearing this date was sent from an attorney representing the Plaintiff to Globe providing written notice of the death of the Insured. *Whitaker Depo.* at 10:3-17, 17:5-9, Ex 2.[9]

- <u>January 30, 2004</u>  -  Globe received the letter dated January 26, 2004, which, according to Globe's records, was the very first time it received notice of the death of the Insured. *Whitaker Depo.* at 10:3-17, 17:5-9, 14:18-15:11, Ex 10.

- <u>March 8, 2004</u>  -  Globe did not receive Proof of Loss documents from the Plaintiff, which was required before the claim processing could begin, until this date. *Whitaker Depo.* at 10:1-2, Ex 10.

- <u>May 6, 2004</u>  -  After an investigation into the facts of the Insured's death, Sandy Whitaker, the Manager of the Life Claims Department, initially determined that the claim made on the Policy was payable. *Whitaker Depo.* at 5:20-6:4, 7:21-8:9, 8:19-9:24, 22:8-23:2, 57:19-58:6, 83:13-19, Ex 9.

---

insurable) when Globe received the premium intended to reinstate the Policy.  This letter is consistent with the terms of the Policy.

[8]  The deposition of Barbara Hernandez, who is Globe's Vice President for Premium Accounting, is attached hereto as Exhibit "B."

[9]  The deposition of Sandy Whitaker, who is the Manager of Globe's Life Claims Department, is attached hereto as Exhibit "C."

- May 13, 2004 - Globe first discovered that the policy was not reinstated prior to the death of the Insured. *Whitaker Depo.* at 20:7-9, 23:3-4, 84:17-19, 140:6-144:9, Ex 9, Ex 10.

- May 19, 2004 - Globe mailed a check to the Plaintiff returning the premium paid by the Plaintiff after the policy lapsed and after the death of the Insured. *Whitaker Depo.* at 20:9-10, 140:6-144:9, Ex 7, Ex 10.

**D.    The Policy was already lapsed when the Plaintiff allegedly placed her premium check in her mailbox on Sunday, January 4, 2004.**

The Plaintiff admits that she did not pay the invoice due on November 28, 2003, before the 31 day grace period ended on December 29, 2003. *Lurie Depo.* at 56:10-14. In fact, the Plaintiff testified that she did not attempt to make another payment until Sunday, January 4, 2004, after the policy had already lapsed, when she wrote a check for $33.60 to Globe and placed it in her mailbox. *Lurie Depo.* at 57:22-58:20, 67:7-13. There was no policy in place and, thus, no coverage at the time the Plaintiff placed the check in the mail. *Lurie Depo.* at Ex C. The policy would have to be reinstated, in accordance with the provisions set forth in the policy, before coverage could resume. *Lurie Depo.* at Ex C.

**E.    The premium check, dated January 4th, was not received by Globe until January 16, 2004.**

The mail did not run on January 4th because it was a Sunday. *Lurie Depo.* at 73:16-74:1. The Plaintiff believes that the premium check would have likely been picked up from her mailbox when the mail ran on Monday, January 5, 2004, which was the day before the death of the Insured. *Lurie Depo.* at 72:9-21, 73:16-74:1, 74:20-75:1. However, the Plaintiff testified that she does not know what happened to the check after she placed it in the mailbox on January 4, 2004. *Lurie Depo.* at 75:19-76:1. The check

was not received by Globe until twelve days later on January 16, 2004. *Lurie Depo.* at 130:3-5; *Hernandez Depo.* at 17:5-18:1, 24:15-18.

  **F.**  **The Plaintiff made no effort to inquire of Globe as to if and how the Policy could be reinstated or to follow the procedures for set forth in the Policy for reinstatement.**

  The Plaintiff did not call anyone from Globe prior to writing the check on January 4, 2004, to find out if she could still make the premium payment even though the grace period had expired. *Lurie Depo.* at 70:18-22. According to the Plaintiff, when she wrote the check on January 4, 2004, she had not received any correspondence from Globe other than the invoice for the November premium that showed a due date of November 28, 2003. *Lurie Depo.* at 71:5-10. Furthermore, she made no effort to submit any evidence of insurability as required by the Policy. *Lurie Depo.* at 67:7-72:11, Ex C. In fact, on the date that Globe received the past due premium check, the Insured was deceased and no longer insurable which made reinstatement impossible. *Lurie Depo.* at 66:15-19, Ex C; *Hernandez Depo.* at 17:5-18:1, 24:15-18.

  Globe did send the Insured a letter dated January 2, 2004, which offered reinstatement consistent with the terms set forth in the Policy. *Lurie Depo.* at Ex C. Specifically, the letter offered to reinstate the Policy if premium was paid by January 17th and "provided the insured is still in good health." *Lurie Depo.* at Ex C. The Plaintiff alleges that she received this letter on or about January 12th and that it was postmarked January 7th. *Lurie Depo.* at 93:2-94:7, Ex C. Accordingly, Plaintiff alleges to have mailed her premium check prior to receiving the letter dated January 2nd. *Lurie Depo.* at 88:11-18. It is undisputed that Globe received the premium check before January 17th, however, it is also undisputed that the Insured was already deceased when the check was

received by Globe. *Lurie Depo.* at 41:6-13, 66:15-18, 90:4-8. Accordingly, it cannot be disputed that the Insured was not in good health and, therefore, no longer insurable when Globe received the premium attempting to reinstate the out of force Policy.[10] *Lurie Depo.* at 41:6-13, 66:15-18, 90:4-8.

G. **Globe's records indicate that the Plaintiff provided notice of the Insured's death via a letter dated January 26, 2004, which was received by Globe on January 30, 2004.**

On January 30, 2004, Globe received a letter dated Janaury 26, 2004, from an attorney representing the Plaintiff providing notice of the death of the Insured. *Whitaker Depo.* at 10:3-17, 17:5-9, Ex 2, Ex 10. The letter references a previous telephone conversation with someone at Globe, however, Globe has no record of any previous communications providing notice of death. *Whitaker Depo.* at 11:1-13. The Plaintiff contends that she notified Globe of the Insured's death via telephone on January 12, 2004, which was before Globe received her premium payment on the 16th. *Lurie Depo.* at 77:20-80:4.[11]

If there had been a previous notice of death via telephone, it would have been recorded on Globe's electronic reporting system. *Whitaker Depo.* at 1:11-12:21. When a notice of death is made via telephone, "the customer service department receives that phone call. They have an electronic system that they enter information on the system which automatically codes the policy for death and assigns it a claim number." *Whitaker*

---

[10]  Furthermore, the Plaintiff cannot contend that Globe waived or revised the requirement in the Policy that the insured be insurable in order for the Policy to be reinstated. The Policy expressly states "ENTIRE CONTRACT; CHANGES: This certificate, with the group policy, enrollment form and attached papers, if any, is the entire contract between You and Us. No change in this certificate will be effective until approved by Us. This approval must be noted on or attached to this certificate." *Lurie Depo.* at Ex C. There is absolutely no evidence that the terms of the reinstatement terms of Policy were ever changed in such a manner.

[11]  As will be shown in Globe's argument, Globe is entitled to summary judgment even if Plaintiff's contentions in this regard are true.

*Depo.* at 14:13-17.  In this case, there is no indication on Globe's system of receiving a notice of death by telephone nor are there any notations on Globe's system that it received any other type of call concerning the Policy prior to receiving the written notice of death on January 30, 2004.  *Whitaker Depo.* at 14:18-15:11.  Furthermore, Globe's Supervisor of Customer Service, Daniel Mendoza, is unaware of any instance in which a notice of death was provided via telephone and was not entered into Globe's computer system.  *Mendoza Depo.* at 4:8-10, 4:24-5:5,12:8-12.[12]

 **H.** **The initial steps, investigations and evaluations conducted in Globe's processing of the Plaintiff's claims.**

 Upon receiving a notice of death, Globe's claim process includes several different "steps" or "safeguards" to ensure each claim is "handled correctly and in accordance with the provisions of the policy."  *Whitaker Depo.* at  108:13-20.  First, the Plaintiff's claim was assigned to a Claims Clerk, who sent the Plaintiff the necessary forms to begin processing the claim.  *Whitaker Depo.* at 84:20-85:2, 89:21-25.  Globe did not receive the completed "Proof of Loss" documents from the Plaintiff, which are required before the claim processing can begin, until March 8, 2004.  *Whitaker Depo.* at 10:1-2, 16:20-17:4, Ex 10.

 After receiving the Proof of Loss documentation, Globe began its customary evaluation/investigation process to determine whether the Plaintiff's claim was eligible under the terms and exclusions of the Policy.  *Whitaker Depo.* at 21:20-23, 86:1-7.  First, the claim went to a Claims Examiner (in this case Ms. Knudson) who determined whether any additional information was needed to process the claim.  *Whitaker Depo.* at 86:25-90:3.  Knudson then assigned the claim to an outside field service to obtain the

---

[12] The deposition of Daniel Mendoza is attached hereto as Exhibit "D."

accident report, the coroner's report and the toxicology report, which is standard practice on an accidental death policy, such as the policy in question. *Whitaker Depo.* at 87:7-10, 99:17-20, 100:18-24. Next, Globe's medical director, Dr. Stanley McCampbell, investigated the death of the Insured in order "to verify there wasn't anything that [Globe] might not be aware of and that it met the guidelines of accidental death." *Whitaker Depo.* at 85:14-21, 101:23-102:13.

> **I.    Unaware that the policy was not in force at the time of the insured's death, Globe initially approved the Plaintiff's claim for payment based on the information gathered concerning the facts of the Insured's death.**

Based upon the information gathered concerning the facts of the accident and the cause of death, on May 6, 2004, Sandy Whitaker, the Manager of the Life Claims Department, initially determined that the claim made on the Policy was payable. *Whitaker Depo.* at 5:20-6:4, 7:21-8:9, 8:19-9:24, 22:8-23:2, 57:19-58:6, 83:13-19, Ex 9. Accordingly, after making her initial review of the claim investigation materials, Whitaker suggested that Globe pay the claim. *Whitaker Depo.* at 71:25-72:3, 83:13-19, 141:18-142:12. Because the Policy amount exceeded Whitaker's payout authority and in order to ensure the claim was handled properly and in accordance with the policy provisions, Whitaker was required to send her suggestion to the Legal Department for review and approval. *Whitaker Depo.* at 72:3-11, 73:23-74, 108:21-109:9. The Plaintiff's claim was reviewed by Brian Mitchell in Globe's Legal Department, who approved Whitaker's suggestion to pay the claim. *Whitaker Depo.* at 74:17-75:5, Ex 9.

> **J.    Upon discovering that the policy was lapsed at the time of the Insured's death, Globe promptly returned the premium it received after the death of the Insured.**

After the Legal Department's first review of the claim, the claim then went to Wendy Hamrick on May 12, 2006, who is a Claims Examiner, for review. *Whitaker Depo.* at 77:21-78:2, 140:6-144:9, Ex 10. As part of her duties as Claims Examiner, Hamrick was required to verify the premium history and that the Policy was in force at the time the claim arose. *Whitaker Depo.* at 81:10-17, 82:18-83:1. Sandy Whitaker further explained the Claims Examiner's responsibility: "My decision was based on the facts that was in the file at that time. My decision was based on - - and my recommendation on the facts of investigating the accident, itself. Now, assigning it to an examiner, it's their responsibility at that time, before any payment is issued, to verify that the reinstatement was done correctly, that the policy was in force at the time of death, and in accordance with the provisions of the policy issue any type of benefits that would be available." *Whitaker Depo.* at 96:10-21. The Claims Examiner acts as a "safeguard" to go behind the previous steps of the claims process and to bring anything that appears inappropriate to Whitaker's attention. *Whitaker Depo.* at 114:15-24, 116:5-8.

While conducting her review, on May 13, 2004, Wendy Hamrick was the first Globe employee to discover that the policy was not reinstated prior to the death of the Insured. *Whitaker Depo.* at 20:7-9, 23:3-11, 84:17-19, 140:6-144:9, Ex 9, Ex 10. Upon discovering this, Hamrick returned the claim file to the Legal Department along with the following question: "Is it okay to refund the later premium?" *Whitaker Depo.* at 123:3-12, 125:23-24. The Legal Department then reviewed the claim again and on May 14, 2004, responded that the late premium should be returned to the Plaintiff. *Whitaker Depo.* at 125:24-25, 140:6-144:9, Ex 9. Thus, Globe denied the claim because the Policy was not in force at the time of the Insured's death and because a policy cannot be

reinstated after the death of an insured under any circumstances. *Whitaker Depo.* at 44:7-13, 65:3-14. On May 18, 2004, Globe generated and the next day mailed a check to the Plaintiff in which it returned the premium paid by the Plaintiff after the policy lapsed and after the death of the Insured. *Whitaker Depo.* at 20:9-10, 140:6-144:9, Ex 7, Ex 10. Accordingly, it cannot be disputed that Globe promptly refunded the premium less than one week after its Claims Department first discovered that the Policy had expired prior to the Insured's death. *Whitaker Depo.* at 96:22-97:1.

   **K.    Globe followed its claims procedures, which provide appropriate and reasonable checks and balances to ensure that claims are administered properly, and those procedures worked accordingly in this instance.**

   When asked why it took so long for Globe to realize that the Plaintiff attempted to submit premium to reinstate the Policy after the death of the Insured, Sandy Whitaker explained: "Apparently, we're not perfect, and we didn't realize at the very beginning that the reinstatement wasn't completed accurately. But we have steps in place to determine that we are handling claims correctly. And as soon as this was brought to our attention, we did act promptly in refunding the premium." *Whitaker Depo.* at 21:9-15. Furthermore, concerning her initial suggestion to pay the claim, Whitaker testified: "had I been aware of all the circumstances and facts and the premium - - that the policy wasn't in force, it wouldn't have been my suggestion to make payment." *Whitaker Depo.* at 83:22-25. One reason Whitaker was not initially aware of the facts surrounding the timing of the Plaintiff's efforts to reinstate the Policy is because neither the Plaintiff nor the Plaintiff's attorney disclosed the payment issues to Globe at the time they submitted the claim. *Whitaker Depo.* at 94:16-95:7. Globe's claims process consists of multiple levels of "checks and balances" to make sure claims are processed correctly and to catch

issues such as the lapse of the Policy in question.  *Whitaker Depo.* at 147:6-149:2.  It cannot be disputed that those checks and balances worked in this instance.

## II.    STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Baker v. Alabama Dep't of Public Safety*, 296 F. Supp. 2d 1299, 1300 (M.D. Ala. 2003) (internal citations omitted).  The moving party can meet its burden by presenting evidence showing there is no dispute of material fact or by showing the court that the nonmoving party has failed to present evidence supporting some element of its case on which it bears the ultimate burden of proof. *Id.*  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *Id.* at 1301.  To avoid summary judgment, the nonmoving party must show more than "some metaphysical doubt" as to the material facts.  *Id.*  After the nonmoving party has responded to the summary judgment motion, a court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*

## III.    ARGUMENT

### A.    Globe is entitled to summary judgment on the Plaintiff's breach of contract claim.

#### 1.    Elements of a breach of contract claim.

Plaintiff must prove the following elements to prevail on her breach of contract claim: (1) the existence of a valid contract binding the parties in the action, (2) Plaintiff's

own performance under the contract, (3) Globe's non-performance, and (4) damages. *Ex parte ALFA Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001). In this case, the Plaintiff cannot prove her breach of contract claim against Globe for numerous reasons. Specifically, the Plaintiff cannot prove a *prima facie* case of breach of contract because: (1) the policy in question was lapsed prior to the Insured's death, due to the Plaintiff's nonperformance by failing to timely pay premium; (2) the policy was not reinstated prior to the Insured's death and, therefore, no valid contract existed at the time of the Insured's death; and (3) Globe acted in compliance with Alabama law in returning the premium submitted by the Plaintiff.

> 2. *The policy lapsed after December 29, 2003 and, accordingly, there was no insurance contract in existence after that date.*

The Alabama Supreme Court has long held that although "[t]he general rule in Alabama is that **unless the policy so provides**, the failure to pay the premium on a life insurance contract does not of itself forfeit the contract. . . , **agreements for the forfeiture of an insurance policy for the nonpayment of premiums are valid and are enforceable by the insurer**." *Grimes v. Liberty National Life Insurance Company*, 551 So.2d 329, 332 (Ala. 1989)(emphasis added)(citing *Equitable Life Assurance Society of the United States v. Golson*, 159 Ala. 508, 48 So. 1034 (1909); *Security Mutual Life insurance Co. v. Riley*, 157 Ala. 553, 47 So. 735 (1908); *Lolley v. Allstate Life Insurance Co.,* 48 Ala.App. 230, 263 So.2d 688 (1972); *Travelers Insurance Co. v. Lazenby*, 16 Ala.App. 549, 80 So. 25 (1918)(overruled on unrelated grounds). Accordingly, where appropriate policy language is in place, the failure of an insured to pay premiums so as to cause an insurance policy to lapse means that there is "no insurance contract in existence." *See, Grimes*, 551 So.2d at 333; *See also, Haupt v. Midland Life Insurance*

*Co.,* 567 So.2d 1319, 1321 (Ala. 1990)("if the policy provides, as [the insured's] policy did, that failure to pay the premium causes the contract to end, then the insured is contractually bound either to pay the premiums or lose the coverage.").

The Globe policy in question clearly and unambiguously provided that coverage would terminate in the event premium due was not paid prior to the expiration of the thirty-one (31) day grace period provided in the policy. It further provided that any premium payments made after the expiration of the grace period would not continue the policy in force. Rather, in order for the policy to be reinstated, the Insured would be required to show evidence of insurability (i.e., proof that the Insured was acceptable for insurance). In fact, the Policy even gives Globe the right to return any premiums submitted after the Grace Period in the event the provisions set forth in the Policy for reinstatement were not met. In this case, it is absolutely clear that the Policy lapsed on December 30, 2003, when the Insured failed to pay the November, 2003, premium by the last day of the Grace Peroid, which was December 29, 2003. Accordingly, as of December 30, 2003, the Policy was no longer in existence unless and until it was properly reinstated, which it was not.

> 3.    *The policy was not reinstated prior to the death of the insured.*

The Policy was not reinstated prior to the Insured's death on January 6, 2003, and, thus, there was no coverage. The Plaintiff cannot claim to have reinstated the Policy by virtue or writing her check for past due premiums and placing it in her mailbox on January 4, 2004, for presumed pickup by the postal service on January 5, 2004, which was the day before the Insured's death. Alabama law is clear that it is the insured's "duty" to make sure premium payments are actually and timely remitted to the insurer.

*See, Haupt*, 567 So.2d at 1321 (holding that it was the insured's duty to check his bank statements to make sure that premium payments were being automatically withdrawn from his account when he chose that method of payment). In this case, simply placing the past due premium in her mailbox did not relieve the Plaintiff of her obligation to make sure the premium payments arrived and that all reinstatement requirements were met prior to the death of the Insured.

The payment terms of the Policy expressly require premium payments to be made at Globe's Administrative Office in Oklahoma City, Oklahoma. Thus, simply placing a premium check in the mail does not constitute a premium payment until the check is actually received by Globe. In this case, Globe did not receive the Plaintiff's check until January 16, 2004, which was after the death of the Insured. Furthermore, precedent set by the Alabama Supreme Court is consistent with Globe's position that a premium is not considered paid until actually received by the insurer. *See e.g., State Farm Mutual Automobile Insurance Co. v. Anderson,* 294 Ala. 451, 318 So.2d 687 (1975). The *Anderson* case is factually very similar to this case in terms of the timing of and method in which the premium payment was submitted. In *Anderson*, an insured claimed to have written and placed a check in the mail on October 29th to renew an automobile policy that had expired on October 10th. *Anderson*, 318 So.2d at 452. An accident occurred on November 1st, but the October 29th check was not actually received by the insurer until November 3rd. *Id.* In analyzing the Plaintiff's claims against the insurer for failure to provide coverage for the November 1st accident, the Alabama Supreme Court stated "[t]here is no question here but that the loss was sustained during a defaulting period." *Id.* at 454.

4.    *Globe returned the Plaintiff's premium in accordance with Alabama law.*

Globe is also entitled to summary judgment because it acted in accordance with Alabama law and the express provisions of the Policy when it returned the Plaintiff's premium, which was submitted after the Insured's death. Pursuant to Alabama law, when "an insurance company accepts payment for a premium on a lapsed policy with knowledge that an accident occurred during the period of lapse, three options are available to the insurer.[13]  The insurer may: 1) return the premium for the lapsed period; 2) apply the premium from the date received forward; or 3) retain the premium and cover the. . . loss." *Allen v. Dairyland Insurance Company,* 391 So.2d 109 (Ala. 1990)(citing *Central National Insurance Co. Group of Omaha v. Grimmett,* 340 So.2d 767 (1976); *Alabama Farm Bureau v. Hicks*, 272 Ala. 574, 133 So.2d 221 (1960)).  In cases such as this, where life insurance coverage is at issue, only options one and three are applicable because there could be no future coverage since the insured is deceased.  *Mutual Savings Life Insurance v. Noah*, 282 So.2d 271 (Ala. 1979).  Because Globe promptly returned the Plaintiff's overdue premium payment, as it was expressly authorized to do under Alabama law and the provisions of the Policy, in less than a week after Globe's Claims Department discovered that the policy was not reinstated prior to the death of the Insured, Globe is entitled to summary judgment on the Plaintiff's breach of contract claim.

**B.    Globe is entitled to summary judgment on the Plaintiff's bad faith claim.**

---

[13]    The plaintiff contends that her attorney notified Globe, via telephone, of the Insured's death on January 12, 2004, which was before Globe received the Plaintiff's check on January 16, 2004.  Globe disputes the Plaintiff's contention that it had knowledge, at the time it received the Plaintiff's premium check, that the Insured died while the policy was lapsed.  However, even assuming the Plaintiff's contention is true, which Globe is doing for the purposes of this summary judgment argument, Globe is still entitled to summary judgment.

*1.    The elements of a bad faith claim.*

Under Alabama law, there are two methods, "normal" and "abnormal," by which a plaintiff can establish a bad faith refusal to pay an insurance claim.  *See, Mutual Casualty Insurance Company v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004)(citing *Employees' Benefit Assoc. v. Grissett*, 732 So.2d 968, 976 (Ala. 1998); *State Farm Fire & Casualty Co. v. Slade*, 747 So.2d 293, 306 (Ala. 1999)).  The elements of a "normal" bad faith claim include:  (1) an insurance contract between the parties, (2) breach of the contract by the defendant, (3) an intentional refusal to pay the insured's claim, (4) the absence of any reasonably legitimate or arguable reason for the refusal, (5) the insurer's actual knowledge of the absence of any legitimate or arguable reason, and (6) the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.  *Ex parte ALFA Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001).    The most difficult element to prove in a bad faith claim is often the last element because a plaintiff must show more than nonpayment.  *Id.*  He must prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. *Id.*  In other words, a plaintiff must show that the insurance company had no legal or factual defense to the claim. *Id.*  (quoting *National Security Fire & Casualty Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982)).

Alabama law places a "heavy" burden on a plaintiff to prove a bad faith claim. *Acceptance Insurance Company v. Brown*, 832 So.2d 1, 17 (Ala. 2001).  In fact, a plaintiff's underlying breach of contract claim "must be so strong that the plaintiff is entitled to a preverdict JML; if a fact issue makes a JML [in plaintiff's favor] inappropriate [on the breach of contract claim], then the defendant is entitled to a JML on

the plaintiff's bad-faith claim." *Brown*, 832 So.2d at 16 (citing *National Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala. 1982)). "In other words, for a 'normal' bad-faith claim, if there is a genuine issue of fact as to whether the insurer legitimately denied the plaintiff's claim, summary judgment should be granted [in favor of the defendant on the bad faith claim] rather than denied." *Nobles v. Rural Community Insurance Services*, 303 F.Supp.2d 1292, 1305 (M.D. Ala. 2004)(citing *S & W Properties v. American Motorists Ins. Co.*, 668 So.2d 529, 533 (Ala. 1995)).

Alabama law limits "abnormal" bad faith claims to four types of claims, all of which require a showing by a plaintiff of substantial evidence that the insurer: "(1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claims; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim." *Nobles*, 303 F.Supp.2d at 1305 (citing *National Ins. Ass'n v. Sockwell*, 829 So.2d 111, 128 (Ala. 2002)). In order to recover under an "abnormal" case of bad faith failure to investigate, an insured must prove: "(1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." *Henderson* 368 F.3d at 315 (citing *Simmons v. Congress Life Ins. Co.*, 791 So.2d 371, 379 (Ala. 2000)).

Like a "normal" bad faith claim, "contractual liability is a prerequisite for liability for [abnormal] bad faith" and, accordingly, "one who cannot prove she was entitled to benefits under an insurance policy cannot recover." *Brown*, 832 So.2d at 16 (citing

*Slade*, 747 So.2d at 318).  In order to recover for an "abnormal" bad faith claim, a plaintiff must prove that the insurer "intentionally or recklessly fail[ed] to conduct an adequate investigation of the facts and submit those facts to a thorough review." *Henderson*, 368 F.3d at 1315 (citing *Blackburn v. Fid. and Deposit Co. of Maryland*, 667 So.2d 661, 668 (Ala. 1995)).  The insurer's responsibility is to "'marshal all of the pertinent facts with regard to its insured's claim' before denying coverage."  *Id.* at 1315 (citing *Sockwell*, 829 So.2d at 130).

A plaintiff cannot merely assert an "abnormal" bad faith claim in his or her Complaint.  *Nobles*, 303 F.Supp.2d at 1305-06.  Rather, a plaintiff has the burden of proving facts that establish that his or her bad-faith claim is an "abnormal" one.  *Id.* at 1305 (citing *Sockwell*, 829 So.2d at 129).  Otherwise, Alabama law will treat all bad faith claims as "normal" bad faith claims, no matter how they may be labeled by plaintiffs.  *Id.* at 1305-06.

> 2.    *Globe has not breached the insurance contract and it had a reasonably legitimate and arguable reason for denying the Plaintiff's claim.*

The Plaintiff's bad faith claim, under either a "normal" or an "abnormal" theory, is totally without merit and, accordingly, Globe is entitled to summary judgment as to this claim for numerous reasons.  First, there was no insurance contract in force between the parties at the time of the Insured's death because the policy had lapsed for nonpayment of premiums and had not been reinstated.  Obviously, without an in force contract, there could be no breach of that contract by the insurer.  Furthermore, the evidence is clear that Globe complied with the terms of the Policy in making its determination that the policy was not in force at the time of the Insured's death.  Specifically, it is undisputed that the

Plaintiff did not place her premium payment in the mail until after the 31 day grace period had expired. Accordingly, there was no coverage under the Policy until or unless it was reinstated, which it was not. The Policy required premium to be paid at Globe's office in Oklahoma City and it is undisputed that Globe did not receive the untimely premium payment until after the death of the Insured. In order to reinstate the Policy after the expiration of the grace period, the Policy expressly requires that the Insured be acceptable for insurance. In this case, there could be no reinstatement because the Insured was already deceased when reinstatement was sought, which clearly made him uninsurable. For these reasons, it is absolutely clear that Globe did not commit a breach of contract when it denied the Plaintiff's claim. Furthermore, the reasons for Globe's denial, which are supported by the terms of the Policy itself, are grounded upon reasonably legitimate and arguable reasoning.

> 3.    *Globe handled the Plaintiff's claim in good faith.*

Globe is also entitled to summary judgment on the Plaintiff's bad faith claim because it investigated, administered, processed and ultimately denied the Plaintiff's claim in good faith. The evidence is clear that, upon receiving the Proof of Loss documents from the Plaintiff, that Globe handled the Plaintiff's claim diligently and in accordance with the safeguarding steps put in place by Globe to ensure that claims are handled accurately. The claim first went to a Claims Examiner to ensure that Globe had all of the information it would need to process the claim. The Claims Examiner determined that additional information was needed and assigned the claim to an outside field service to obtain needed information. Once the field service obtained the

information, the claim went to Globe's Medical Director, who reviewed the claim to determine whether the Insured's death met the definition of an "accidental death."

The claim then went to the Manager of Globe's Life Claims Department, who suggested that Globe pay the claim based on her review of the materials gathered concerning the facts of the accident and the cause of death.  The Manager's suggestion was then approved by the Legal Department and the claim was sent to another Claims Examiner for a final review for accuracy before the claim was paid by Globe.  It was not until this step that anyone in the claims handling process discovered that the Plaintiff attempted to reinstate the Policy after the death of the Insured.  Upon discovering this, the Claims Examiner notified the Legal Department and, in less than a week after discovering that the Policy was lapsed and not properly reinstated, Globe denied the claim and returned the premium paid after the death of the Insured.

Globe has checks and balances in place to ensure that claims are handled properly and those procedures worked in this instance.  The actions by Globe show a thorough claims handling process and present absolutely no evidence of bad faith.  In fact, Globe's initial approval of the Plaintiff's claim for payment cannot be ignored and clearly shows Globe's good faith intentions in regards to handling the Plaintiff's claim.  The only thing upon which the Plaintiff has any ground whatsoever to argue in this case is that Globe inadvertently failed to discover that the Policy was not reinstated prior to the death of the Insured as soon as it could have.  Such an argument is insufficient to support a bad faith claim as the Alabama Supreme Court has held, since the very first time it recognized the existence of bad faith, "that mere negligence or mistake is not sufficient to support a claim of bad faith; there must be refusal to pay, coupled with a conscious intent to

injure." *Ex parte Government Employees Insurance Company*, 729 So.2d 299, 306 (Ala. 1999); *See also*, *Blue Cross and Blue Shield v. Granger*, 461 So.2d 1320, 1327 (Ala. 1984)(". . .this Court has made it abundantly clear that an action for bad faith lies only where the insurer has acted with an intent to injure. . . Mere negligence or bad judgment will not support a bad faith claim.")(citing *Prudential Ins. Co. of America v. Coleman*, 428 So.2d 593 (Ala. 1983); *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.2d 916, 924 (Ala. 1981)).  For all of these reasons, Globe is entitled to summary judgment on the Plaintiff's bad faith claim.

## IV.    CONCLUSION

For the reasons set forth above, Globe respectfully requests that this Court grant summary judgment in its favor and, in accordance therewith, dismiss with prejudice all of the claims brought against it in Plaintiff's Complaint.


Respectfully submitted this the 18th day of October, 2006.


_/s/Bobby Poundstone_____
Philip H. Butler (BUTL1716)
Robert E. Poundstone IV (POU006)

Attorneys for Defendant Globe Life and
Accident Insurance Company

**OF COUNSEL:**

BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
E-mail: pbutler@bradleyarant.com
         bpoundstone@bradleyarant.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 18th, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

William B. Matthews, Jr., Esq.
wbmatthews@snowhill.com

            and

Christopher Sanspree, Esq.
Chris.sanspree@beasleyallen.com.


                                         _/s/Bobby Poundstone_____
                                         Philip H. Butler (BUTL1716)
                                         Robert E. Poundstone IV (POU006)
                                         BRADLEY ARANT ROSE & WHITE LLP
                                         The Alabama Center for Commerce
                                         401 Adams Avenue, Suite 780
                                         Montgomery, AL 36104
                                         Telephone: (334) 956-7700
                                         Facsimile: (334) 956-7701
                                         E-mail: pbutler@bradleyarant.com
                                                 bpoundstone@bradleyarant.com

                                         Attorneys for Defendant Globe Life and
                                         Accident Insurance Company