KAREN LURIE,

PLAINTIFF,

V.

GLOBE LIFE AND ACCIDENT INSURANCE

COMPANY, ET AL.,

DEFENDANTS.


CIVIL ACTION NO.

1:06-CV-0034MEF


DEPONENT:  KAREN FRANCES LURIE BRITTON

DATE:  JULY 25, 2006



1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

KAREN LURIE,

      Plaintiff,    CIVIL ACTION NO.
                      1:06-cv-0034MEF
vs.

GLOBE LIFE AND
ACCIDENT
INSURANCE
COMPANY, et al.,

      Defendants.

*   *   *   *   *   *   *

DEPOSITION OF

KAREN FRANCES LURIE BRITTON,

taken pursuant to notice and
stipulation on behalf of the
Defendants, in the Law Offices of
Morris, Cary, Andrews & Talmadge, 170
East Main Street, Dothan, Alabama,
before Tiffany B. Beasley, Certified
Court Reporter and Notary Public in
and for the State of Alabama at Large,
on July 25, 2006, commencing at 10:38
a.m.

---

2

## APPEARANCES

FOR THE PLAINTIFF:

**CHRISTOPHER E. SANSPREE, ESQUIRE**
Beasley, Allen, Crow, Methvin,
    Portis & Miles
218 Commerce Street
Montgomery, Alabama 36104

FOR THE DEFENDANTS:

**GEORGE R. PARKER, ESQUIRE**
Bradley, Arant, Rose & White
The Alabama Center for Commerce
401 Adams Avenue
Montgomery, Alabama 36104

---

## STIPULATIONS

It is stipulated and agreed by and between counsel representing the parties that the deposition of **KAREN FRANCES LURIE BRITTON** may be taken before Tiffany B. Beasley, Certified Court Reporter and Notary Public in and for the State of Alabama at Large, without the formality of a commission; and all formality with respect to other procedural requirements is waived; that objections to questions, other than objections as to the form of the questions, need not be made at this time, but may be reserved for a ruling at such time as the deposition may be offered in evidence or used for any other purpose by either party as provided by the Federal Rules of Civil Procedure.

It is further stipulated and agreed by and between the parties

---

4

hereto and the witness, that the signature of the witness to this deposition is hereby not waived.

5

| | | | | |
|---|---|---|---|---|
| **EXAMINATION** | | | | **Page** |
| MR. PARKER | ...................... | | | 6 |
| MR. SANSPREE | ..................... | | | 126 |

**DEFENDANTS' EXHIBITS**                **Page**

| | | | |
|---|---|---|---|
| A | Complaint | | 31 |
| B | January 2004 Calendar | | 41 |
| C | Cumulative Exhibit, Bates-Stamped LURIE 0001 to LURIE 0075 | | 57 |
| D | Cumulative Exhibit, Documents Produced By Globe | | 100 |
| E | Plaintiff's Response to Defendants' Interrogatories and Request for Production, dated April 10, 2006 | | 102 |

**PLAINTIFF'S EXHIBITS**                **Page**

| | | | |
|---|---|---|---|
| 1 | Photocopies of Checks, various dates | | 127 |
| 2 | Photocopies of Checks, various dates | | 128 |

6

     KAREN FRANCES LURIE BRITTON, of
lawful age, having first been duly
sworn, testified as follows:
          THE REPORTER: Usual
          stipulations.
     MR. SANSPREE: She wants to --
          we want to reserve the
          right to read and sign.
     MR. PARKER: Okay.
               **EXAMINATION**
**BY MR. PARKER:**
Q.  Please state your name.
A.  **Karen Frances Britton.**
     (Off-the-record discussion.)
Q.  My name is George Parker, and I
represent Globe Life in the lawsuit
that you filed against it. Do you
understand that you're here today to
give your deposition?
A.  **Yes, I do.**
Q.  Okay. Do you understand the answers
that you're going to give are under
oath?

7

A.  **Yes, I do.**
Q.  Have you ever given a deposition
before?
A.  **No.**
Q.  Okay. What I'm going to do is I'm
going to ask you a series of
questions, and if you would, answer
them in the best way that you can. To
avoid a problem for the court reporter
taking down what's said, if the answer
is a yes or no, answer with a yes or a
no rather than a nod or an uh-huh or
huh-uh so Tiffany can take down
what's -- what's being said here
today, okay?
A.  **Okay.**
Q.  If you need a break, just let me know.
We can certainly accommodate you. If
you don't understand what I'm asking
you, you know, ask me to repeat it,
because I want you to understands what
I'm asking you, okay?
A.  **Okay.**

8

Q.  Are you taking any type medication
today that would impair your ability
to testify?
A.  **No.**
Q.  Okay. If you would, will you tell me
your date of birth?
A.  **11/9/61.**
Q.  Okay. And your Social Security
number?
A.  **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.**
Q.  Okay. And where do you currently
live?
A.  **4181 County Road 73, Midland City,
Alabama 36350.**
Q.  36350?
A.  **Uh-huh.**
Q.  Okay. Is that in Dale County?
A.  **Yes.**
Q.  Okay. How long have you lived at that
address?
A.  **About 20 years.**
Q.  Okay. And who lives at that address
with you?

1 A. My husband and my children.

2 Q. Okay. What is your husband's name?

3 A. Michael.

4 Q. And the last name Britton,
   B-R-I-T-T-O-N?

6 A. Yes.

7 Q. Okay. And which children -- what are
8    your children's names that live with
9    you?

10 A. Arian.

11 Q. How do you spell that?

12 A. A-R-I-A-N Britton.

13 Q. Okay.

14 A. And Jadon, J-A-D-O-N, Britton.

15 Q. Okay.

16    (Brief interruption.)

17 Q. Okay. And how old are Arian and
18    Jadon?

19 A. Arian is 4; Jadon is eight months.

20 Q. Okay. Does anybody else live in that
21    house with you?

22 A. No.

23 Q. Is Jadon your -- your child with

10

1    Michael?

2 A. Yes.

3 Q. Is Arian a step-child of yours?

4 A. Yes.

5 Q. What does Michael do for a living?

6 A. He farms.

7 Q. Do you live on a farm?

8 A. Yes.

9 Q. Okay. Does he farm at this --

10 A. Yes.

11 Q. -- County Road address? Okay. What
12    type farming?

13 A. Endangered poultry and livestock.

14 Q. Okay. What is endangered poultry?
15    What does that mean?

16 A. You're probably not familiar with the
17    ALBC, but it's an organization that
18    through *Mother Earth News* and other
19    organizations -- I don't know how to
20    explain this. Some of the birds that
21    we have are endangered --

22 Q. Okay.

23 A. -- or near extinction, and so we're

11

1    trying to preserve that breed. We
2    also have Boer, B-O-E-R, meat goats,
3    which is for breeding and meat.

4 Q. Okay. What type -- what would be
5    examples of the type poultry that you
6    have -- what type birds?

7 A. Barred Rock chickens, Rhode Island Red
8    chickens, Wyandotte chickens, Guineas,
9    peacocks, geese, rare geese, ducks,
10    etc.

11 Q. Okay. Do you farm those to breed
12    them, or to sell them to stores, or to
13    sell them for -- what do you sell --
14    who do you sell the product to? Does
15    that make sense?

16 A. Uh-huh.

17 Q. Okay.

18 A. With the ALBC, they are -- in the
19    process of breeding them up for them,
20    and they turn around and -- I can't
21    remember the name of it. Michael
22    handles all of this. I don't.

23    MR. SANSPREE: He's just

12

1    asking who you sold them
2    to. Do you sell them
3    back to the ALBC? Is
4    that what you said?

5 A. You raise some of their birds, and you
6    turn around -- and then they do a
7    series of testing and eating and
8    stuff, and, yeah, they do. But we
9    haven't done that yet. We're in the
10    process of that. But, then, if
11    somebody -- yeah. We sell ducks; we
12    sell geese. And we hatch and breed --
13    you know, breed and hatch eggs. It's
14    a hatchery.

15    MR. SANSPREE: He just wanted
16        to know who you sold them
17        to.

18 Q. Yeah. So you would --

19    MR. SANSPREE: Who did you
20        sell them to, basically,
21        what he wants to know.
22        People?

23 A. Yeah.

1  Q.  Okay.

2  A.  I'm sorry.

3  Q.  Sure.  No.  No.

A.  I misunderstood.

Q.  I was just trying -- that's just kind

6     of an interesting type farm.  It's

7     different than the usual type farm you

8     hear about, and I was just trying to,

9     you know, understand who --

10  A.  It's a rare niche, yeah.

11  Q.  Do you farm any type -- any type

12     produce on that farm?

13  A.  No.

14  Q.  Okay.  And how long has -- has that

15     type farming been going on at that

16     farm?

17  A.  Since, I believe, September of '05.

18  Q.  Okay.  And how long have you and

19     Michael been married?

20  A.  We were married on June the 27, 2005.

21  Q.  Okay.  And then a couple of months

22     after you got married, he started this

23     type farming on that land where y'all

14

1     live?

2  A.  Uh-huh.

3  Q.  Okay.

4        MR. SANSPREE:  Answer yes or

5              no --

6  A.  Yes.

7        MR. SANSPREE:  -- or however

8              you want to answer.

9  Q.  Did he have experience doing that

10     before?

11  A.  No.

12  Q.  Okay.  And you were also married to

13     David?

14  A.  Yes.

15  Q.  Okay.  And when were y'all married?

16     What years?

17  A.  April 1st, 1983, until his death,

18     January the 6th, 2004.

19  Q.  Okay.  Other than Michael and David,

20     have you been married to anyone else?

21  A.  Yes.

22  Q.  Okay.  Tell me who else you've been

23     married to.

1  A.  My first husband was Myron Johnson.

2  Q.  Okay.

3  A.  From Headland, Alabama.

4  Q.  And when were y'all married?  What

5     dates?

6  A.  June 22nd, 1979 --

7        MR. SANSPREE:  I don't know

8              how you remember that.

9  A.  -- through -- well, until I married

10     Chris -- or David; it's David

11     Christopher.  He went by Chris.

12  Q.  Okay.  Just -- I want to make sure I

13     call him the right name.  Chris is how

14     you referred to him?

15  A.  Chris is David, yes.

16  Q.  So I'm going to call him Chris

17     throughout the deposition, okay?

18  A.  Okay.

19  Q.  So June 22nd, 1979, until when were

20     you married to Myron?

21  A.  January of '82, I believe, if I

22     remember correctly.

23  Q.  Okay.  Did you and Myron divorce?

16

1  A.  Yes.

2  Q.  Did y'all have children?

3  A.  Yes.

4  Q.  Okay.  Tell me the names of your

5     children with Myron.

6  A.  One daughter, Kylie, K-Y-L-I-E,

7     Johnson.

8  Q.  Okay.  And when you and Myron were

9     married, where did y'all live?

10  A.  In Headland.

11  Q.  Do you remember the address where

12     y'all lived in Headland?

13  A.  Route 1, Headland.

14  Q.  Okay.  And Kylie, where does she live

15     today?

16  A.  She lives in Mobile.

17  Q.  How old is she?

18  A.  26.

19  Q.  Is she married?

20  A.  No.

21  Q.  Okay.  Do you know what she does for a

22     living?

23  A.  She has a master's degree in speech

17

1  pathology.
2  Q.  Okay.
3  A.  **She's working at a local hospital**
4      **there in Mobile.**
5  Q.  And is her name Kylie Johnson; is that
6      her name?
7  A.  **Yes.**
8  Q.  Now, did you and Chris have children?
9  A.  **Yes.**
10 Q.  Okay.  Tell me the names or name of
11     your children with Chris.
12 A.  **Christopher.**
13 Q.  Okay.
14 A.  **And William.**
15 Q.  Do they go by the last name Lurie?
16 A.  **Yes.**
17 Q.  And where do they live?
18 A.  **Dothan.**
19 Q.  Okay.  How old is Christopher?
20 A.  **21.**
21 Q.  And what does he do for a living?
22 A.  **He works at Chili's, and he's going to**
23     **school.**

18

1  Q.  Okay.  Does he work as a waiter or
2      bartender or manager?
3  A.  **A waiter.**
4  Q.  Okay.  At the Chili's here in Dothan?
5  A.  **Uh-huh.**
6  Q.  And William, what does he do for a
7      living?
8  A.  **He's self-employed.**
9  Q.  Where does he live?
10 A.  **Where does?**
11 Q.  Where does he live?  Does he live in
12     Dothan?
13 A.  **Dothan.**
14 Q.  What type work does he do?
15 A.  **He has his own little business.**
16     **It's -- I can't recall the name of it.**
17     **He just started it up.  It has to do**
18     **with providing services to -- etching**
19     **glass.**
20 Q.  Okay.  And how old is William?
21 A.  **20.**
22 Q.  20.  Are either William or Christopher
23     married?

19

1  A.  **William is.**
2  Q.  Okay.  What's his wife's name?
3  A.  **Natalie.**
4  Q.  Okay.  Do you know what she does for a
5      living, where she works?
6  A.  **No.**
7  Q.  So you and Michael have lived County
8      Road 73 the entire time that y'all
9      have been married; is that right?
10 A.  **Yes.**
11 Q.  Okay.  When you and Chris were
12     married, where did y'all live?
13 A.  **Same house, 4181 County Road 73 in**
14     **Midland City, Alabama 36350.**
15 Q.  Okay.  And that's the same address you
16     gave me earlier?
17 A.  **Yes.**
18 Q.  Okay.  Who lived at that address with
19     you during y'all's marriage?  Who
20     lived at that address with you and
21     Chris when you and Chris were married?
22 A.  **William and Christopher.**
23 Q.  Okay.  Nobody else from time to time

20

1  lived there; they were the only two
2  people that lived there?
3  A.  **Yes.**
4  Q.  Okay.  And in 2004, when Chris passed
5      away, William was about 18 or 17 years
6      old?
7  A.  **Seventeen, I believe.**
8  Q.  Christopher was 19 or 20; is that
9      close?
10 A.  **Eighteen.**
11 Q.  Okay.
12 A.  **If I recall correctly.**
13 Q.  Do you have any other children?
14 A.  **Yeah -- well --**
15 Q.  Other than the ones that we've talked
16     about so far?
17 A.  **No.**
18 Q.  Okay.  Let me ask you just a little
19     bit about your educational background.
20     Did you graduate from high school?
21 A.  **Yes, I got a GED.**
22 Q.  Okay.  When did you get your GED?  Do
23     you have any idea of the year?

21

1    Just in the '80s, in the --
2  A.  1980.
3  Q.  Okay.  Where did you go to high school
4      before getting your GED?
5  A.  Berry High School in Birmingham,
6      Alabama.  Hoover.
7  Q.  Okay.  And how far along did you get
8      in school?
9  A.  Eleventh.
10         (Off-the-record discussion.)
11 Q.  What year was it when you -- when you
12     left school in 11th grade?
13 A.  It would have been in '79.
14 Q.  Okay.  And once you got your GED, have
15     you been to any type classes or any
16     schools or any junior colleges or
17     colleges since that time?
18 A.  No.
19 Q.  No more education since getting your
20     GED in 1980?
21 A.  No.
22 Q.  Okay.  Are you able to read and write?
23 A.  Yes.

22

1  Q.  Okay.  Never had any problem with
2      reading or with writing?
3  A.  No.
4  Q.  And let me just tell you, some of the
5      questions, I have to ask you.  Not
6      meant to patronize you or make light
7      of anything.  I just have to ask some
8      type questions, okay, and that's just
9      one of them.
10         Are you currently
11     employed?
12 A.  No.
13 Q.  When is the last time you were
14     employed?
15 A.  I want to say '88, slash, '89.
16 Q.  What was the last job that you can
17     remember having?
18 A.  I worked at Double D Food Mart, which
       no longer exists, in Midland City.
20 Q.  What type work did you do there?
21 A.  Clerk.
22 Q.  Is that a grocery store?
23 A.  Yes.

23

1  Q.  Okay.  Did you work the register
2      and --
3  A.  Yes.
4  Q.  -- do different things in the store
5      that needed to be done?
6  A.  Yes.
7  Q.  Okay.  How long did you have that job?
8  A.  About a year.
9  Q.  Do you remember why you left?
10 A.  My grandmother passed away.
11 Q.  Is that a family business?
12 A.  No.
13 Q.  Okay.  Where else can you recall
14     working?
15 A.  Prior to that, I had my own dance
16     studio.
17 Q.  Okay.  What was that called?
18 A.  Karen's Studio of Dance, Midland City.
19 Q.  Okay.  Is that a dance studio for
20     younger children?
21 A.  Teaching small children tap, ballet.
22 Q.  How long was that -- that business
23     open?

24

1  A.  Two years.
2  Q.  Okay.  Was that before you worked as a
3      clerk at the WD Food Mart (phonetic)?
4  A.  I believe so.
5  Q.  Do you remember the two years that
6      that business were open, which years
7      those might have been?
8  A.  Not right off, no.
9  Q.  Was it in the 1980s?
10 A.  Yes.
11 Q.  Okay.  Did you own that business by
12     yourself?
13 A.  Yes.
14 Q.  What other jobs can you remember
15     having in the past?
16 A.  I'm going way back now.
17 Q.  Just do the best you can.
18 A.  I worked at various restaurants.
19 Q.  In the Dothan --
20 A.  Dothan.
21 Q.  -- Houston County, Dale County area?
22 A.  Yes.  And I was -- worked security at
23     K-Mart.

25

1    Q.   Okay.  Here in the Dothan area?
2    A.   Yeah -- yes.
3    Q.   Was that in the '80s?
4    A.   Yes.
5    Q.   Did you -- where did you grow up?
6    A.   Birmingham, the Hoover area.
7    Q.   And then when did you move to the
8         south Alabama area?
9    A.   '79.
10   Q.   After finishing -- or after getting a
11        GED or after finishing school?
12   A.   Yes.
13   Q.   Okay.  And since that time, 1979, have
14        you lived down in the Dale or Houston
15        County area?
16   A.   Yes.
17   Q.   Since that time, you haven't had any
18        periods of time where you've moved
19        away?
20   A.   No.
21   Q.   The address that you gave me earlier,
22        the County Road 73 address, is that
23        some land that you've had in your

26

1         family, or did you purchase the land?
2    A.   Both.
3    Q.   Okay.  How much land is it?  How many
4         acres is the farm?
5    A.   Where we reside?  Two.
6    Q.   Because that -- is the two acres where
7         you have a house and live?
8    A.   Yes.
9    Q.   Okay.  And then how much farmland is
10        there over there?
11   A.   A hundred and thirty-five acres.
12   Q.   And you've lived in that area at the
13        two-acre plot of the 135 acres for the
14        past 20 years; am I right on that?
15   A.   Yes.
16   Q.   Okay.  Before you married William,
17        what did -- what was done with the
18        land out there?  He started farming,
19        as I understand it, in September of
20        2005.  Was it farmed by others, or was
21        there any type farming activity
22        performed on the land before that?
23             MR. SANSPREE:  Before she

27

1         married Michael.  You
2         said William.
3    Q.   I'm sorry.  I'm sorry.  Michael.
4    A.   Repeat the question.
5    Q.   Okay.  Before you married Mike -- and
6         as I understand it, Michael started
7         farming that land in September of
8         2005?
9    A.   Yes.
10   Q.   Okay.  Before that time, was there --
11        were there other people that were
12        farming that 135 acres?
13   A.   That's my father's business.
14   Q.   Okay.  Was your father a farmer?
15   A.   No.  He rents land out to farmers.
16   Q.   Okay.  Do other family members live
17        out there near that?
18   A.   On that land, no.
19   Q.   Okay.  Is your father still alive?
20   A.   Yes.  But he's ill.
21   Q.   Okay.  Is your mother still alive?
22   A.   Yes.
23   Q.   Okay.  Do they -- does she or he live

28

1         out near the farm?
2    A.   Yes.
3    Q.   And so your father would -- would rent
4         the land to other farmers in the area
5         that wanted to, maybe, farm the land,
6         the 135 acres that we're talking
7         about?
8    A.   Yes.
9    Q.   Okay.  Did you ever help out with any
10        of that farming in the past 20 years
11        or so?
12   A.   No.
13   Q.   Were you -- were you, basically,
14        raising children for the past
15        20 years?
16   A.   Homemaker, yes.
17   Q.   Do you have any type hobbies or things
18        that you like to do that aren't --
19        aren't work, but they're maybe
20        associations or groups that you do
21        things with or activities that you do?
22   A.   As in?
23   Q.   Well, different -- maybe associations,

29

1    like civic groups that you might be
2    involved in, church groups that you
3    might be involved in?
4  A.  **Church.**
5  Q.  Where do you go to church?
6  A.  **Cornerstone Bible Church.  John D.**
7       **Odom Road, Dothan, Alabama.**
8  Q.  Okay.  How long have you been going
9       there?
10 A.  **Off and on since 2001.**
11 Q.  Okay.  Are you active in the choir or
12      the Sunday school group or any of the
13      different types of groups that may
14      be --
15 A.  **Not at this time, no.**
16 Q.  Okay.  Have you in the past been?
17 A.  **Not in choir, no.**
18 Q.  Any type group in the church you've
19      been actively involved with?
20 A.  **Yes.  I've worked with the children,**
21      **yes.**
22 Q.  Okay.  Any other type hobbies,
23      activities, interests that you've been

30

1    active in?
2  A.  **An occasional fishing trip.**
3  Q.  Okay.  Have you ever been involved in
4       a lawsuit before?
5  A.  **No.**
6  Q.  Okay.  Have you ever been convicted of
7       a crime?
8  A.  **No.**
9  Q.  Have you ever had any type worker's
10      compensation claim?
11 A.  **No.**
12 Q.  Okay.  Ever filed a claim for any type
13      of insurance benefits that you can
14      recall in the past other than the one
15      that we're here about today?
16 A.  **I don't remember.**
17 Q.  Okay.  Have you ever had to testify in
18      court before?
   A.  **Yes.**
20 Q.  Okay.  What type cases have you had to
21      testify in court about?
22 A.  **Custody.**
23 Q.  Was that custody case involving your

31

1    own children?
2  A.  **Uh-huh, yes.**
3  Q.  Other than maybe -- maybe lawsuits or
4       disputes you may have had in the
5       domestic relations court dealing with
6       custody or with a divorce, have you
7       ever had to go to court to testify
8       about anything else?
9  A.  **No.**
10 Q.  Okay.  I'm going to let you look at
11      the complaint that's been filed in
12      this case, and I'm going to mark it as
13      Exhibit A.  Have you read the
14      complaint that's been filed in this
15      case?
16 A.  **I'm not sure.**
17 Q.  Okay.  I'm going to let you look at
18      this and mark it Defendants' Exhibit
19      A, and let me know if you've ever read
20      that before.
21          (The referred-to document was
22           marked for identification as
23           Defendants' Exhibit A.)

32

1          MR. SANSPREE:  Do you remember
2           his question?  He asked
3           if you ever read that
4           before.
5  A.  **I believe I have.**
6  Q.  Okay.  Do you know when you may have
7       read it?
8  A.  **I don't remember.**
9  Q.  Okay.  Did you -- were you involved
10      with drafting it or helping out with
11      the wording of it?
12 A.  **No.**
13 Q.  Okay.  You just looked at it a second
14      ago while we were sitting here; is
15      that right?
16 A.  **Yes.**
17 Q.  Okay.  Is there anything in it that
18      you believe is inaccurate as you sit
19      here today and you've just reviewed
20      the complaint?
21          MR. SANSPREE:  She needs to
22           take her time to read
23           it --

33

1    MR. PARKER: Sure.

2    MR. SANSPREE: -- if you're

3        going to ask her that.

4        Put an objection in to

5        any legal terms. She's

6        not going to be able to

7        answer those.

8    MR. PARKER: Sure.

9 A.  **Page 2, No. 11.**

10 Q.  Bear with me one second. Page 2, No.

11    11?

12 A.  **Am I correct in saying that's supposed**

13    **to be defendant or decedent.**

14    MR. SANSPREE: That means the

15        deceased.

16 A.  **See, I don't know that.**

17    MR. SANSPREE: She didn't

18        draft this, for the

19        record. I mean, I did

20        it.

21    MR. PARKER: Okay.

22 Q.  Okay.

23 A.  **It's okay.**

34

1 Q.  Looks accurate to you?

2 A.  **Yes.**

3 Q.  Have you ever been represented by the

4    Beasley firm before in any other type

5    case or in any --

6 A.  **No.**

7 Q.  -- any other matter? Okay. Have you

8    talked to anybody other than your

9    lawyers about any of the facts or

10    circumstances regarding your dispute

11    with Globe Life?

12 A.  **No.**

13 Q.  I know you've produced some documents

14    in this case. Other than what's been

15    produced so far, do you maintain or

16    have you maintained any type diary or

17    notes regarding your dispute with

18    Globe Life?

  A.  **No.**

20 Q.  Everything you've got maybe at your

21    home has been turned over to your

22    attorneys for production in this case?

23 A.  **Yes.**

35

1 Q.  Okay. To prepare for today's

2    deposition, did you review any

3    documents?

4 A.  **Yes.**

5 Q.  Do you remember what you reviewed?

6 A.  **No.**

7 Q.  Let me ask you a couple of questions

8    about Chris. Where did he work?

9 A.  **Service Machine.**

10 Q.  Okay. And how long did he work there?

11 A.  **This was his -- he worked there prior.**

12    **This was his third day on the job. He**

13    **had gone back there -- prior to that,**

14    **he was at Maha.**

15 Q.  Can you spell that?

16 A.  **M-A-H-A.**

17 Q.  Okay. When was he at Maha? Kind of

18    give me a history of where he worked,

19    the best you can remember.

20 A.  **Best I can remember, he was at Maha**

21    **from 2001 to 2004. Do you want me to**

22    **go back further?**

23 Q.  Well -- okay. 2001 to 2004, was he

36

1    working there at the time he passed?

2 A.  **At Maha, no.**

3 Q.  Okay.

4 A.  **He had been hired with Service**

5    **Machine.**

6 Q.  Okay. Did he work one or two days

7    during 2004 at Maha? My question is

8    if he passed on the 6th, then I'm just

9    trying to figure out --

10    MR. SANSPREE: It was his

11        third day at work at

12        Service Machine when he

13        died.

14 A.  **It was his second day on the job.**

15 Q.  Okay. So he worked 2001 to 2003 at

16    Maha?

17 A.  **I think so.**

18 Q.  Okay. And then Service Machine, he

19    passed on his second day on the job.

20    Would he have started on the 5th?

21    Worked the 5th and then the 6th?

22 A.  **Yes.**

23 Q.  What did he do at Maha?

37

1  A.  He was a machinist.

2  Q.  What type machines would he work on?

3      Do you know?

A.  Mills, drills, lays, shapers.

Q.  Okay.  Do you remember how much he was

6      making at Maha?

7  A.  Hourly?

8  Q.  Well, if he was paid hourly.  If he

9      was paid a salary, then if you can

10     remember his salary.

11 A.  I believe 12.50.

12 Q.  Okay.  That's per hour?

13 A.  Yes.

14 Q.  Okay.  Do you remember how much he was

15     making at Service Machine?

16 A.  No.

17 Q.  Okay.  Was it in that range, in the

18     12.50 area?

19 A.  Yes.

20 Q.  Okay.  And do you know what he was

21     going to be doing at Service Machine,

22     what his job there was going to be?

23 A.  Machinist.

38

1  Q.  Had he worked there before?

2  A.  Yes.

3  Q.  When did he work there previously,

4      Service Machine?

5  A.  Prior to Maha.

6  Q.  Okay.  Do you remember how long or

7      what years?

8  A.  No.

9  Q.  Okay.  How many years had he worked at

10     Service Machine in the past prior to

11     going back to work for them in 2004?

12 A.  Four or five.  Maybe more.  I do not

13     remember.

14 Q.  Sure.  How many stints did he have at

15     Service Machine?  How many different

16     times did he work at Service Machine?

17 A.  Those two times.

18 Q.  Okay.  So he had four years straight

        with Service Machine, and then he --

20     then he also worked at Maha, and then

21     he went back to Service Machine?

22 A.  Yes.  And Maha is no longer open.

23 Q.  Okay.

39

1  A.  Prior to them closing, he knew what to

2      do.

3  Q.  Okay.  Did he have the same job at

4      Service Machine when he went back in

5      2004 that he did before?

6  A.  Yes.

7  Q.  Okay.  And when you say, he had four

8      years at Service Machine, would those

9      have been in the late '90s, early

10     2000s, or would that have been earlier

11     in the 1990s?  I'm just trying to get

12     an idea of where he worked during what

13     years.

14 A.  Late '90s, early 2000.

15 Q.  Okay.  Can you recall other places

16     where he worked?

17 A.  Dothan Machine Shop.

18 Q.  Do you remember how long he worked

19     there and when?

20 A.  No.

21 Q.  Okay.

22 A.  Tri-State Machine Shop.

23 Q.  Same question, do you remember when or

40

1      how long he worked there?

2  A.  '80s.

3  Q.  Okay.  Any other places you can recall

4      that he worked?

5  A.  No.

6  Q.  Okay.  During the, I guess, 20 years

7      that y'all were married, did he always

8      work as a machinist?

9  A.  Yes.

10 Q.  And there may have been places he

11     worked in addition, but the places you

12     recall that he worked were Dothan

13     Machine Shop, Tri-State Machine Shop,

14     Maha, and Service Machine?

15 A.  Yes.

16 Q.  Okay.

17     (Off-the-record discussion.)

18     (Brief recess taken.)

19 Q.  Before we broke I was talking -- or we

20     were talking about Chris's past jobs,

21     and you told me the different places

22     that he worked as a machinist in the

23     past.

**41**

1  A.  Yes.

2  Q.  And we -- when we left off, we were

3  talking about that he had taken a job

4  with Service Machine, where he had

5  worked before, and he had worked a

6  couple of days before he had passed away;

7  is that -- is that accurate?

8  A.  Yes.

9  Q.  I've got a calendar here, because I

10  think that it may be helpful to make

11  sure we're on the same page on dates

12  and everything.  And this is a

13  January '04 calendar that I just

14  printed off of my calendar at the

15  office.  I'm hoping there's no

16  appointments on here.

17        (The referred-to document was

18        marked for identification as

19        Defendants' Exhibit No. B.)

20        (Off-the-record discussion.)

21  Q.  According to this calendar, the 5th

22  was a Monday of January '04?

23  A.  Oh, there's the number.  Okay.

**42**

1        MR. SANSPREE:  That's

2        December.  This is

3        January.

4        MR. PARKER:  Yeah.

5  A.  Yes.

6  Q.  Okay.  And the 6th was a Tuesday?

7  A.  Yes.

8  Q.  So he would have started back at the

9  new job on the 5th, on that Monday?

10  A.  Yes.

11  Q.  Okay.  And he passed away on the

12  Tuesday?

13  A.  Yes.  He was killed Tuesday morning.

14  Q.  What were his hours at Service Machine

15  when he went back to work?

16  A.  Excuse me.  Seven to 3:30, I believe.

17  Q.  Okay.  When he died, was he on his way

18  to work?

19        (Off-the-record discussion.)

20  A.  Pardon?

21  Q.  Was he on his way to work when he

22  passed away on the 6th?

23  A.  When he was killed on the 6th, yes.

**43**

1  Q.  Okay.  And he was riding a motorcycle?

2  A.  Yes.

3  Q.  Do you know if he ever was involved in

4  any type lawsuits while he was alive?

5  A.  No.

6  Q.  Okay.  Did he have any -- any problems

7  with -- with the law, any criminal

8  convictions, anything like that?

9  A.  No.

10  Q.  What was his educational background?

11  A.  High school.  He graduated from tool

12  and die school.

13  Q.  Is that like a vocational school?

14  A.  I believe.  That would have been

15  before I met him.  And -- and had a

16  year of college.

17  Q.  When did y'all meet?

18  A.  June '82, I believe.

19  Q.  Okay.  Now, at the time that he died,

20  he was making 12.50 an hour; is that

21  right?

22  A.  If I recall correctly.

23  Q.  In that range, maybe a little more,

**44**

1  maybe a little less --

2  A.  In that range.

3  Q.  -- but in that range?  Was there any

4  other income coming into the family at

5  the time?

6  A.  No.

7  Q.  Okay.  At the time that he died, what

8  was the -- what debt did the family

9  owe?  Did you owe a mortgage on the

10  house?

11  A.  Yes.

12  Q.  Okay.  Do you remember how much it

13  was?

14  A.  No.

15  Q.  Do you remember how much in a range it

16  was?

17  A.  No.  Thirty-five to 50, somewhere in

18  there.

19  Q.  Okay.  Thousand?

20  A.  Yes.

21  Q.  Okay.

22  A.  Yes.

23  Q.  Okay.  Did you owe on cars, owe money

45

1  Q.  on cars?
2  A.  **At that time, no.  I don't believe.**
3  Q.  Okay.  Owe money on credit cards?
4  A.  **No.**
5  Q.  Okay.  Other than the mortgage, did
6      you owe any money to anybody that you
7      can recall, anybody or any companies?
8  A.  **No.**
9  Q.  Okay.  Have you or Chris or the two of
10     you together, had you ever had to file
11     bankruptcy or had any type financial
12     problems?
13 A.  **No.**
14 Q.  Following his death, did you receive
15     any benefits from any source by virtue
16     of his passing away?
17 A.  **Yes.**
18 Q.  Okay.  Can you recall who you received
19     benefits from and why you received
20     those benefits?  For example, did he
21     have any life insurance policies?
22 A.  **Would be the automobile.**
23          MR. SANSPREE:  Just tell him.

46

1  A.  **I'm trying to remember.  The**
2      **automobile policy; the other people**
3      **that were in the accident paid out.**
4  Q.  Do you remember how much you got?
5  A.  **I want to say 50.**
6  Q.  Okay.  And that was from the other
7      people's insurance?
8  A.  **Uh-huh.**
9  Q.  Did you get some money from your own
10     insurance, underinsured or uninsured
11     motorist coverage; does that ring a
12     bell?
13 A.  **I don't remember.**
14 Q.  Okay.  Any life insurance policies
15     pay?
16 A.  **I don't remember.**
17          (Off-the-record discussion.)
18 Q.  Other than the 50,000 that you
19     received, can you recall any other
20     monies that any other companies or
21     persons paid you or your family as a
22     result of the death?  May be that the
23     other person that he was involved in

47

1      the wreck with had monies that were
2      paid to you but it was an insurance
3      company that paid.  Any benefits or
4      any monies that you can recall other
5      than the 50,000?
6  A.  **A hundred and ten, I think it was,**
7      **from CNA.**
8  Q.  What was that for?
9  A.  **It was a -- AD&D through the bank.**
10 Q.  Was that a credit life type policy
11     or --
12 A.  **I don't know.  He just took it out.  I**
13     **don't know.**
14 Q.  Okay.  So he had $110,000 amount that
15     CNA --
16 A.  **Yeah.**
17 Q.  -- insurance company paid for a bank;
18     is that...
19 A.  **The premiums were taken out through**
20     **the bank.  You know, they have those**
21     **little --**
22 Q.  A bank draft.
23 A.  **It's, like, a thousand-dollar policy**

48

1      **if you have an account with the bank.**
2      **And then they do the little -- you pay**
3      **a certain amount ever so often and --**
4      **yeah.  That.**
5  Q.  So he got through the bank -- which
6      bank?
7  A.  **Headland.**
8  Q.  Through that bank --
9  A.  **Well, it didn't come -- well, it came**
10     **directly from CNA, but through the**
11     **bank.  They was just the middle man**
12     **for the payment.**
13 Q.  Headland Bank was the bank you did
14     your --
15 A.  **Yes.**
16 Q.  -- banking business with?
17 A.  **Yes.**
18 Q.  And through, maybe, something that was
19     automatic when you banked with them or
20     through some policies that he may have
21     taken out, y'all received $110,000 but
22     the payment was received on a CNA
23     insurance check?

49

1  A.  I think so.

2  Q.  Okay. Any other amounts such as that

3      that you can recall?

4  A.  Not that I can recall, no.

5  Q.  Okay. Did you -- other than Globe --

6      and I'm going to ask you about the

7      Globe dispute in a minute. But other

8      than Globe, were there any other

9      companies that you made claims?

10 A.  Not that I recall, no.

11 Q.  Okay. No denials of any claims by any

12     other companies?

13 A.  No.

14 Q.  Okay. At his job, did he have health

15     insurance?

16 A.  No.

17 Q.  Did you owe medical bills from any

18     type medical treatment due to the

19     accident? Were there any medical

20     bills -- were there any medical bills

21     associated with the accident?

22 A.  No, there -- no, there wasn't --

23         MR. SANSPREE: I think he

50

1           passed immediately.

2  A.  There was not even -- there was

3      nothing left.

4  Q.  Okay. And, I'm sorry. These are

5      questions I just have to ask. And I'm

6      not doing it to make you

7      uncomfortable. These are just

8      questions I have to ask, and I'm

9      trying to do it in the most sensitive

10     way that I can, and I apologize if I

11     don't, okay?

12 A.  Just move along.

13 Q.  Okay. In the past, had y'all taken

14     out any insurance, such as this Globe

15     Life policy, with any companies such

16     as life insurance or disability

17     insurance, any type insurance that you

18     and Chris had taken out that you can

19     recall that you paid monthly premium

20     on?

21 A.  Not that I recall.

22 Q.  Okay. What was Chris's general health

23     history?

51

1  A.  Good.

2  Q.  Okay. Did he have any type health

3      problems?

4  A.  He was diabetic.

5  Q.  How long was he diabetic?

6  A.  Since he was about 16.

7  Q.  Who was the doctor that treated him

8      for that condition?

9  A.  Doctor Paulk.

10 Q.  Doctor Paulk?

11 A.  Yeah.

12 Q.  Is he in Headland or Dothan?

13 A.  Dothan.

14 Q.  Are there any other doctors that you

15     knew of that treated him for diabetes?

16 A.  Yes. But I can't recall the name

17     really.

18 Q.  Okay. Were there any other conditions

19     such as diabetes that he suffered

20     from?

21 A.  No.

22 Q.  Okay. Did he ever have to be

23     hospitalized for any reason that you

52

1  can recall?

2  A.  No.

3  Q.  Okay.

4  A.  He was controlled.

5  Q.  Okay. Any illnesses or injuries that

6      required him to go to the emergency

7      room that you can ever recall?

8  A.  No.

9  Q.  Was he on any medications when he died

10     for diabetes or for any type

11     condition?

12 A.  Diabetes, yes.

13 Q.  Do you remember what he took?

14 A.  Insulin.

15 Q.  Okay. Is that something he took

16     daily?

17 A.  Yes.

18 Q.  Okay. Do you recall when the -- this

19     Globe Life policy was first taken out?

20 A.  I believe he took it out in...

21         MR. SANSPREE: You don't need

22             to be testifying on what

23             you believe or what you

53

1 think. You need to
2 testify to what you know.
3 **A.** **April 2003.**
4 **Q.** Okay. And did he discuss with you the
5 policy before he took it out?
6 **A.** **As in?**
7 **Q.** Did you know he took it out when he
8 took it out?
9 **A.** **Yeah.**
10 **Q.** Okay. Were you with him when he was
11 talking about maybe taking it out?
12 **A.** **All I know is he took it out.**
13 **Q.** Okay. In 2003 he took out a
14 disability or an accident policy?
15 **A.** **Yes.**
16 **Q.** And did he discuss with you how much
17 it was going to cost or how much it
18 was going to pay or why he thought it
19 would be a good idea to take it out or
20 how he learned about the policy or
21 other people that may have had the
22 same type policy, just that kind of
23 stuff; did y'all talk about any of

54

1 that before he took it out?
2 **A.** **No. I just paid the premiums.**
3 **Q.** Okay. How did he alert you that a
4 premium was owed?
5 **A.** **Statement came in the mail.**
6 **Q.** Okay. So the statement came in the
7 mail, but before it did, you already
8 knew he had applied for the policy?
9 **A.** **Yes.**
10 **Q.** Okay. And that's something he talked
11 to you about before he did it or while
12 he was filling it out or after he had
13 sent it in? Do you remember?
14 **A.** **I don't recall.**
15 **Q.** Okay. You recall a statement came in
16 the mail, and you paid it?
17 **A.** **Yes.**
18 **Q.** Okay. And you -- but you already knew
19 what it was for because he had either
20 told you that he had taken it out, or
21 y'all had talked about --
22 **A.** **Yes.**
23 **Q.** -- the policy? Were you the one when

55

1 you and Chris were married that paid
2 the bills?
3 **A.** **Yes.**
4 **Q.** Okay. Did he do any of the -- write
5 any of the checks for the family?
6 **A.** **Sometimes.**
7 **Q.** Okay. How would it -- how would you
8 decide who would pay which bills
9 during the course of a month?
10 **A.** **I did the majority of it.**
11 **Q.** Did he ever write checks for the
12 premium for this policy?
13 **A.** **No. I did.**
14 **Q.** Okay. Would you agree -- well, let me
15 ask you this: Up until November of
16 2003, did you pay the premium on it
17 each month on time?
18 **A.** **Yes.**
19 **Q.** Okay. After November 2003, would you
20 agree with me that -- that a payment
21 was not made in association with your
22 November -- November invoice of 2003?
23 **A.** **Repeat that.**

56

1 **Q.** Okay. There was an invoice in
2 November of 2003. Do you remember
3 that?
4 **A.** **Yes.**
5 **Q.** And would you agree with me that you
6 didn't pay it?
7 **A.** **No.**
8 **Q.** You would not agree with me?
9 **A.** **No.**
10 **Q.** Okay. Would you agree with me that
11 you did not pay the invoice due
12 November -- or for November 28th,
13 2003, before December 29th, 2003?
14 **A.** **Yes.**
15 **Q.** Okay. That -- you would agree with me
16 that one was not paid? There was an
17 invoice that went to you in November
18 that was to be paid by or before
19 December 29th, 2003; do you recall
20 that?
21 **A.** **I'm just looking at what you were**
22 **thumbing --**
23 **Q.** Oh, no. I --

57

1  A.  -- what you were --

2  Q.  No, no.  I was just trying to see if

3      that's how you recalled it, that in

4      November, there was a premium due that

5      was not paid?

6  A.  **That premium was paid on January the**

7      **4th.**

8  Q.  Okay.  Let me let you look at this.

9      This may help.  This is on -- let me

10     just do this:  The documents here

11     are -- L-U-R-I-E 01 to L-U-R-I-E 075,

12     the documents that were produced in

13     this case.  And I'm just going to

14     attach them all as a cumulative

15     exhibit because there may be some

16     questions I'm going to ask you about

17     these documents.  I'm going to attach

18     these all as Exhibit C.

19              (The referred-to document was

20               marked for identification as

21               Defendants' Exhibit C.)

22  Q.  If you look through there, I think

23      it's No. 18, L-U-R-I-E 18, that has a

58

1      due date 11/28/03 up in the top

2      right-hand side of the invoice.

3  A.  **Uh-huh.**

4  Q.  Okay.  Was that -- was this -- is this

5      an invoice for premium that's owed; is

6      that what you understand this to be?

7  A.  **Yes.**

8  Q.  Was this one paid?

9  A.  **Yes.**

10  Q.  Okay.  And is this the one you said

11      was paid -- when was this one paid?

12  A.  **January 4th, 2003.**

13  Q.  Okay.  Can you tell from this sheet

14      when -- when the amount was due?

15  A.  **It says here November 28th, '03.**

16  Q.  Okay.  The due date 11/28/03?

17  A.  **Uh-huh.**

18  Q.  Okay.  Was it paid on or before the

19      due date?

20  A.  **No.**

21  Q.  Okay.  Was not.  Do you remember this

22      invoice coming to you that was due

23      11/28/03?

59

1  A.  **I don't recall.**

2  Q.  Okay.  Did you ever have any problems

3      receiving or -- or getting payments to

4      Globe Life?  Did you ever have any

5      problems with the mail and with

6      receiving statements from them?

7  A.  **No.**

8  Q.  Okay.  Did you ever have any problems

9      with your checks getting to them?

10  A.  **No.**

11  Q.  Okay.  Would you agree with me -- and

12      these are documents that I received

13      from you -- that you did receive this

14      invoice here, that I have here in my

15      group of documents, No. 18; you

16      received the invoice that had a due

17      date 11/28/03?

18  A.  **I don't recall receiving that**

19      **particular invoice, no.**

20  Q.  Okay.  Do you recall if you received

21      an invoice in December?

22  A.  **Pardon?**

23  Q.  Do you recall if you received an

60

1      invoice in December at any point

2      stating that they did not receive your

3      November payment?

4  A.  **I don't know.  Where is that --**

5          MR. SANSPREE:  I'm sorry.

6          Here.  Here it is.

7  A.  **What I'm looking for --**

8          MR. SANSPREE:  He just asked

9               if you recalled receiving

10               an invoice in December.

11  A.  **Yeah -- yes.**

12  Q.  Okay.

13  A.  **Sorry.**

14  Q.  I'm just trying to make sure I've got

15      the facts straight as you -- you

16      remember them.  In early '03, an

17      application was taken out, and you

18      were the one that made the premium

19      payments for this policy --

20  A.  **Yes.**

21  Q.  -- to Globe Life?

22  A.  **Yes.**

23  Q.  And you get a series of invoices in

61

1  the mail at this 4181 County Road 73
2  address?
3  A.  Yes.
4  Q.  And in November, one came to you that
5  stated the due date was November 28th,
6  2003, as reflected in L-U-R-I-E 0018?
7  A.  Yes.
8  Q.  And no payment was made before the due
9  date of 11/28/03?
10  A.  **There was a payment made in October**
11  **for the October premium.**
12  Q.  True.  In relation to this invoice
13  that was due -- the November invoice
14  that was due 11/28/03, no payment was
15  made before --
16  A.  **No.**
17  Q.  -- 11/28/03?
18  A.  **No.**
19  Q.  Okay.  And the next time you heard
20  back from Globe Life was when, that
21  you can recall in relation to this
22  policy?
23  A.  **I think it was sometime around -- on**

62

1  **or around January the 2nd.**
2  Q.  So January 2nd -- and I think there's
3  a copy of this letter 0020.
4         MR. SANSPREE:  Flip through
5         there.
6  A.  **I looked, and I didn't see it.**
7         MR. SANSPREE:  Go ahead,
8         George.  I'm sorry.
9  Q.  Look at 0020.
10         MR. SANSPREE:  Two pages after
11         that.  There it is.
12  Q.  Is that a copy of the next
13  correspondence --
14  A.  **Yes.**
15  Q.  -- you received from them?
16  A.  **Yes.**
17  Q.  Okay.  And the date up there is
18  January 2nd, 2004?
    A.  **Yes.**
20  Q.  Okay.  Now, do you recall when you
21  received this letter from Globe Life
22  that's dated Lurie 0020?
23  A.  **A week or so around that date.**

63

1  Q.  Okay.  It was after January --
2  A.  **You said January 20 or January 2nd?**
3  Q.  I'm sorry.  January 2nd.
4  A.  **January 2nd.**
5  Q.  Okay.  It's Lurie 0020.  That's the
6  one I'm looking at.
7  A.  **All right.**
8  Q.  Do you remember when you would have
9  received this January 2nd letter from
10  Globe Life?
11  A.  **I would say it was about a week or so**
12  **after that --**
13  Q.  Okay.
14  A.  **-- after I had already made the**
15  **payment on the 4th.**
16  Q.  So you received this letter after you
17  had already made the payment?
18  A.  **Yes.**
19  Q.  Okay.  And between the statement or
20  invoice that's marked as LURIE 0018
21  and the letter or LURIE 0020, do you
22  recall if there was any other
23  correspondence --

64

1  A.  **No, I don't.**
2  Q.  -- to you from Globe Life?
3  A.  **No, I don't.  It was holiday time.**
4  Q.  What did y'all do during that holiday
5  period?  Do you remember if you were
6  in town or out of town, or do you
7  remember anything about that holiday?
8  A.  **In town.**
9  Q.  Okay.  During Christmas and New
10  Year's?
11  A.  **Uh-huh.**
12  Q.  Okay.  Did you go on any trips during
13  that --
14  A.  **No.**
15  Q.  -- at Christmastime?
16  A.  **Did the -- you know, the Santa Clause**
17  **thing and --**
18  Q.  Okay.  Was your husband working --
19  before he went back to his old place
20  of employment on the 5th, was he
21  working during that time for the other
22  machine shop that he worked for?  Was
23  there any gap in employment for him at

65

1       that time?

2  A.  I -- no, I don't think so. No. That

3       would have been -- where is the

         calendar? His last day was Friday,

         December -- no, December -- the Friday

6       prior to that -- to the beginning of

7       2004, his first day with Service

8       Machine would have been --

9  Q.  Look at that. Does that help you?

10  A.  Is this '03?

11  Q.  Yes.

12  A.  Okay. So then -- that's right.

13      Because his last day would have been,

14      I believe, based on looking at this

15      calendar, the 31st.

16  Q.  Okay. The 31st was a Wednesday. So

17      it would have been the 2nd -- would

18      have been the Friday?

19  A.  Yes, I believe.

20  Q.  Okay. So the best that you can

21      recall, January 2nd was his last day

22      at Maha, and January 5th was his first

23      day at Service?

66

1  A.  December -- yeah, January 2nd was last

2      day. And then back over here.

3         MR. SANSPREE: Right there.

4  A.  This calendar is odd.

5  Q.  There's January 1, January 2, January

6      3 and 4, then 5, 6. So it starts

7      right -- there's January 1, so --

8  A.  Okay.

9  Q.  -- these are the last few days of

10      December.

11  A.  If I recall correctly, the last day

12      was Friday that he worked with Maha.

13      He started with Service Machine on the

14      5th and was killed on the 6th.

15  Q.  And the 6th, he was killed in the

16      early morning hours of the 6th?

17  A.  Yes.

18  Q.  Approximately 6 a.m.?

    A.  5:40.

20  Q.  Okay. But in any event, he was

21      working a regular schedule; your

22      family was in the Headland area?

23  A.  No.

67

1  Q.  Midland City area?

2  A.  Yes.

3  Q.  Okay. And you don't recall going on

4      vacation or out of town or anything

5      like that?

6  A.  No.

7  Q.  Okay. Now, when did you write the

8      check, the $33.60 -- I think a copy of

9      that check is in this stack as 02 --

10      when did you write that check?

11  A.  January 4th. It would be a Sunday

12      night after the holidays paying the

13      bills.

14  Q.  And what triggered you to write that

15      check?

16  A.  The bills were due. That notice was

17      in my stack of bills there. I looked

18      at it and said pay that.

19  Q.  Okay. Which notice?

20  A.  This one, 0020.

21  Q.  Okay. On January 4th, 0020, dated

22      January 2nd, was in your stack of

23      bills?

68

1  A.  Yes. Yes.

2  Q.  So you received -- that was dated

3      January 2nd. You wrote the check on

4      January 4th. So you must have

5      received that mail on January 3rd?

6  A.  Yes. I guess. No. Yeah. I don't

7      remember. All I know is I got this;

8      this was laying there; I saw here

9      where it says had to receive a payment

10      by January the 17th, 2004; this was

11      the 4th; I said, good deal; wrote the

12      check out; put it in the mailbox that

13      night.

14  Q.  Earlier I thought I remembered you

15      saying that you had already mailed the

16      check when you got that letter?

17  A.  Is it this one or the -- or that one?

18         MR. SANSPREE: Look at it. I

19           don't know.

20  A.  I'm trying to remember. Oh, yeah.

21      Okay. I apologize. I said that I had

22      gotten this letter about a week or so,

23      give or take a day or two, after I had

69

1   already made the payment on the 4th.

2   Q.   Okay.

3   A.   And that -- and then I -- when I got

4        this, that was -- I said, well, I'm

5        okay because it was mailed out on the

6        4th and here it is -- it had to be

7        there by the 17th, so I'm sure that

8        was ample time for Globe to receive my

9        premium.

10  Q.   So what triggered you to write that

11       check on the 4th?  You said there was

12       a bill in your stack of things, and

13       I'm wondering what -- what it was that

14       you saw that triggered you to write

15       the check?

16  A.   I don't know.  I mean, the bills were

17       due.  I owe -- that was also received

18       afterwards.

19  Q.   Okay.

20            MR. SANSPREE:  She doesn't

21                 know what you're pointing

22                 to.  You're going to have

23                 to identify --

70

1   A.   I was pointing to 0001.  This was

2        received after Chris's death, after

3        they had already -- which one is that?

4            MR. SANSPREE:  It's Document

5                 No. 1.

6   Q.   Okay.  Okay.  I just want to make sure

7        we're on the same page and I

8        understand what you're saying.  You

9        wrote the check on January 4th in the

10       p.m., afternoon --

11  A.   Right.  I always sat down on Sunday

12       nights to pay my bills, and whether I

13       had a document in my hand or not, I

14       had one of the little calendars that

15       had what was due when.

16  Q.   Well, according to 0018, that was due

17       November 28th.

18  A.   Yes.  I said I was late on that.

19  Q.   Did you -- did you call anybody at

20       Globe and ask them if you could still

21       make that payment --

22  A.   No.

23  Q.   -- almost five or six weeks late?

71

1   A.   No.

2   Q.   Had you been late ever before on a

3        payment on the Globe policy?

4   A.   Not that I recall, no.

5   Q.   Okay.  So at the time you wrote the

6        check on January 4th, the only thing

7        you would have received from Globe was

8        0018, which is the invoice showing a

9        due date of 11/28/03?

10  A.   Yes.

11  Q.   Okay.  And --

12  A.   Excuse me.

13  Q.   When you wrote the check, did you

14       enclose a stub or anything from Globe

15       Life with your payment that you can

16       recall?

17  A.   Yes.  I'm sure I did.

18  Q.   Okay.  You would have torn something

19       off of -- off of one of the invoices?

20       There's something on there you would

21       include with your payment?

22  A.   Yes.  But I don't remember if I did or

23       not.  All I know is I put the payment

72

1        in the envelope --

2   Q.   Okay.

3   A.   -- and mailed it out on June the 4th,

4        2004.

5   Q.   Okay.  You put it in the mailbox on

6        June 4th -- I mean, January 4th?

7   A.   Yes.  Did I say June?  Forgive me.

8        January.

9   Q.   Okay.  January 4th you put the letter

10       in the mailbox at your house?

11  A.   Yes.

12  Q.   What time does the mail usually run

13       out at your house?

14  A.   It varies.

15  Q.   What's the general time?  In January

16       of 2004, do you remember when the mail

17       would run?  Afternoon?  Morning?  Late

18       afternoon?  Do you remember anything

19       like that?

20  A.   Usually ran around between 9 and 10 in

21       the morning.

22  Q.   Okay.  Do you remember any other

23       checks that you wrote on that Sunday?

73

1  Because you said you paid -- you
2  usually paid your bills on Sunday.  Do
3  you remember any other checks that you
4  wrote on that Sunday?
5  A.  I think -- I don't remember.  Car
6  insurance or something.
7  Q.  And that would have gone -- or the
8  power -- I don't --
9       MR. SANSPREE:  You can't --
10      you can't sit here and
11      testify under oath to
12      stuff you don't remember.
13      If you don't remember,
14      that's fine.
15 A.  Okay.  I don't remember.
16 Q.  Okay.  And you would have put a stamp
17  on the letter and put it in your
18  mailbox, put up the little flag; and
19  the mail carrier would have come by
20  and gotten your mail out of your
21  mailbox on that Monday?
22 A.  Yes.
23 Q.  And that would be January the 5th?

74

1  A.  Yes.
2  Q.  Okay.  I see that this check is
3  written on the Headland National Bank
4  account.  Chris and Karen Lurie are
5  the names on the account.  Were there
6  any other checking accounts that you
7  would write checks out of for family
8  type bills?
9  A.  No.
10 Q.  Okay.  This was the general family
11  checking account?
12 A.  Yes.
13 Q.  And the one that you would deposit
14  money that the family received into --
15 A.  Yes.
16 Q.  -- and pay, for example, the mortgage
17  or different premiums that are owed
18  out of this account?
19 A.  Yes.
20 Q.  Okay.  So then the next day on the
21  6th, after you -- after the mail runs
22  on the 5th, your husband dies on the
23  6th?

75

1  A.  He was killed on the 6th.
2  Q.  And when is the next time you can
3  recall receiving any correspondence
4  from Globe Life?
5  A.  It would have been this, wouldn't it?
6  Q.  It would have been the letter?
7  A.  0020.
8  Q.  Okay.  That's the letter dated
9  January 2nd, 2004?
10 A.  Yes.
11 Q.  Okay.  So -- and I know I've asked you
12  this a couple of times, but I just
13  want to make sure we're on the same
14  page.  The check was dated
15  January 4th?
16 A.  Yes.
17 Q.  Put in the mailbox and taken by the
18  mail carrier on January 5th?
19 A.  I don't know what happened to it after
20  I put it in the mailbox on
21  January 4th.
22 Q.  You never saw it again after you put
23  it in the mailbox on --

76

1  A.  No, sir.
2       MR. SANSPREE:  Well, that's
3       not actually true.  We've
4       got it -- you're under
5       oath.  You need to listen
6       to his questions.
7       MR. PARKER:  I know.  You're
8       right.  You're right.
9  Q.  You put it in the mail on the 4th.
10  Your mail doesn't run on Sundays;
11  right?
12 A.  Right.
13 Q.  Okay.  After it goes out on the -- on
14  the next day, you don't see this
15  envelope until it comes up -- the
16  check until it comes up again in this
17  lawsuit; that's correct?
18 A.  Yeah.
19 Q.  Okay.  And then after you mail it,
20  after you write the check, after your
21  husband passes away, you get a letter
22  from Globe Life that's marked here as
23  0020 that has the date of January 2nd,

77

1    2006, on it?

2  A.  **I didn't write the check after my**
3      **husband passed away.**

4  Q.  Let me make sure. You write the
5      check; it's dated January 4th?

6  A.  **Right.**

7  Q.  You put it in the mail; husband passes
8      away; and then you receive a letter
9      from Globe, dated January 2nd, 2004?

10 A.  **Yes.**

11 Q.  Okay. When you got the letter that's
12     marked as 0020, what did you do?

13 A.  **I said, as I said before, I had**
14     **already made that payment, and I had**
15     **to have it there by the 17th. And I**
16     **said, so I'm in good standing; it was**
17     **paid as they stated.**

18 Q.  Okay.

19 A.  **As Globe stated.**

20 Q.  Did you contact them when you received
21     this letter and advise them that your
22     husband had passed away?

23 A.  **Yes.**

78

1  Q.  You did contact them?

2  A.  **Yes.**

3  Q.  Okay. How long -- how many days after
4      you received this letter did you
5      contact them?

6  A.  **The 12th.**

7  Q.  Contacted Globe Life on January 12th?

8  A.  **Monday, January 12th.**

9  Q.  Okay. And what can you recall about
10     that conversation with them?

11 A.  **My attorney, Will Matthews, contacted**
12     **them on the 12th. I was present in**
13     **his office.**

14 Q.  Okay. Can you remember anything about
15     the conversation?

16 A.  **He -- he called to notify them of his**
17     **death, told them that he had been**
18     **killed on January the 6th, 2004, and**
19     **wanted to know what steps we had to**
20     **take -- he was helping me get my**
21     **paperwork up, claim.**

22 Q.  Okay. At that time did they look to
23     see if they had received the check

79

1      that was referenced in -- on the
2      January 2nd letter?

3  A.  **I don't know.**

4  Q.  That never came up in the
5      conversation?

6  A.  **They -- no.**

7  Q.  Okay. What did they tell your
8      attorney that he needed to do?

9  A.  **They told him that -- that -- we told**
10     **them that the payment had been put in**
11     **the mail on the 4th, and they said**
12     **that it was okay so long it was**
13     **there -- it was there by the 17th; the**
14     **policy was still in effect.**

15 Q.  Okay. Did -- if you look at this
16     calendar and you see that the 12th is
17     a Monday and you just recalled calling
18     Globe with your attorney on the
19     12th --

20 A.  **(Nods head.)**

21 Q.  -- can you give me an estimate as to
22     when -- if you keep that date in mind,
23     when you may have received this

80

1      January 2nd letter? Was it before you
2      made that call with your attorney on
3      the 12th?

4  A.  **Yeah.**

5  Q.  Okay. So you already had the letter?

6  A.  **Yeah. Because it would have been a**
7      **couple of days.**

8  Q.  Okay. So would you agree with me that
9      in your recollection you received the
10     January 2nd letter sometime after your
11     husband passed away but before you
12     made the call on the 12th?

13 A.  **Yes.**

14 Q.  Okay. Sometime between the 6th and
15     the 12th?

16 A.  **Yes.**

17 Q.  Were you checking your mail every day
18     when all of this was going on when
19     your husband had passed away, or did
20     you have mail that was kind of
21     stacking up around your house just
22     because you were busy with a lot of
23     things?

81

1 A.   During that week, yeah, sure, I
2       checked the mail.  But he was buried
3       on Friday the 9th.
4 Q.   Okay.  You just don't recall when you
5       received the letter that was dated the
6       2nd?
7 A.   (Shakes head.)
8 Q.   Okay.  Do you recall receiving the
9       January 16th letter, the letter with
10      the 0001 on the bottom right?
11 A.   I don't recall the exact day, but I
12      know I received that after, you know,
13      they had accepted payment and after he
14      had died --
15 Q.   Okay.
16 A.   -- or was killed.
17 Q.   After you talked to Globe on the 12th
18      with your attorney or after your
19      attorney made the call and there was a
20      conversation with somebody at Globe,
21      can you recall other conversations you
22      had with anybody at Globe about this?
23 A.   I don't recall.

82

1 Q.   Okay.  Did you let your attorney make
2       the calls, or did you make some of the
3       calls?
4 A.   After that time over -- he made some.
5       I know I made a few.  I don't recall
6       exactly when.  It was, like, you know,
7       what is the status of this claim, you
8       know.  The first thing they would say
9       whenever a call was, I'd give them the
10      number, and they'd say, yes, this
11      policy is still in effect.
12 Q.   Okay.  After you -- after the
13      payment -- or let me ask this:  After
14      the due date of 11/28/2003 was
15      passed -- and I'm referencing the
16      invoice of No. 18 that has 11/28/03 as
17      the due date -- did you discuss with
18      your husband that you had -- that you
19      didn't make that payment?
20 A.   No.
21 Q.   Was there a reason why that payment
22      wasn't made?
23 A.   Well, just I was late on some bills.

1 Q.   Okay.  Can you recall --
2 A.   It was the holiday and just...
3 Q.   Can you recall any other bills that
4       you were late with in that November,
5       December time frame?
6 A.   No.  No.
7 Q.   Do you recall anybody that was at the
8       house or in any way had knowledge of
9       your making this payment and writing
10      this check on January 4th, 2004 -- and
11      one thing before I ask you that, it
12      says 2003 on this check.  Is this your
13      writing on LURIE 02 that says, check
14      should have said '04, my error; check
15      dated '03 by habit, new year, Globe --
16      can you help me with that word?
17 A.   I can't see it from here.
18      MR. SANSPREE:  What page?
19 Q.   02.
20      MR. SANSPREE:  There it is.
21 A.   Yes, that's my handwriting.
22 Q.   It says, check should have said '04,
23      my error; check dated '03 by habit,

84

1       new year; Globe corrected it, as you
2       can see; cashed it, accepted, for the
3       premium due by the 17th of
4       January 2004, Karen Lurie?
5 A.   Correct.
6 Q.   Okay.  That's your handwriting right
7       there.  Okay.  So the check that says
8       January 4, 2003, was written
9       January 4, 2004?
10 A.   Yes.
11 Q.   Okay.
12 A.   You write 2003 all year, you know, and
13      you just --
14 Q.   Okay.  Did you tell anybody that you
15      can recall that you had written that
16      check?
17 A.   No.
18 Q.   Okay.  Was there anybody in the house
19      that was with you helping you pay the
20      bills when you were making the
21      payment?
22 A.   No.
23 Q.   Okay.

85

1    A.    **The kids don't get involved in that.**

2    Q.    Okay.  If you would, let me take you

3          through these documents real quick.

4          If you look at No. 1, I notice there's

5          a little bit of writing on the

6          right -- I'm sorry; it's going to be

7          on the left-hand side, received after

8          death after accepting payment?

9    A.    **Uh-huh.**

10   Q.    Is that your writing there?

11   A.    **Yes.**

12   Q.    Okay.  Do you remember when you wrote

13         that or why you wrote that?

14   A.    **It was jotted down for attorney's**

15         **notes, just what each document was in**

16         **reference to.**

17   Q.    Okay.  And that's the same with 2;

18         that's just a note that you made?

19   A.    **Exactly.**

20         MR. SANSPREE:  I don't know

21            what 3 is.

22   Q.    I don't know what 3 is either.  Four

23         is a letter from William Matthews,

86

1          your attorney, to Globe discussing the

2          death?

3    A.    **Yes.**

4    Q.    And you would get copies of those

5          letters from your attorney; is that

6          right?

7    A.    **Yes.**

8    Q.    Okay.  The next one appears to be some

9          correspondence from Globe where they

10         returned the payment to you, the

11         33.60?

12   A.    **Yes.  It went to Will Matthews, not**

13         **me.**

14   Q.    Okay.  And then the check is the next

15         page, the refund check; is that right?

16   A.    **Yeah.  And notice this -- records**

17         **indicate a premium payment in the**

18         **amount of 33.60 was received in our**

19         **office on January 16th.  Which is**

20         **before the 17th when it had to be**

21         **there.**

22   Q.    When you wrote the check on the 4th,

23         when did you think it needed to be to

87

1          the -- to Globe Life?

2    A.    **It had to be there before the 17th of**

3          **January.**

4    Q.    How did you know that?

5    A.    **Well, at the time of writing the**

6          **check, I hadn't received this yet so I**

7          **wouldn't have known that.**

8          MR. SANSPREE:  When you say

9             "this," you need to

10            identify it for the

11            record, because she

12            doesn't know what you're

13            talking about.

14   A.    **Speaking of 020.**

15   Q.    So that's my question.  How did you

16         know when it needed to be over to

17         Globe Life in order to -- to still

18         have the policy in effect?

19   A.    **Well, when I was doing my bills, I saw**

20         **that it needed to be paid, so I paid**

21         **it.**

22   Q.    But you didn't know when it needed to

23         make it to Globe Life by?

88

1    A.    **No.  I mailed the check on the 4th and**

2          **then, like I say, later on that week**

3          **or so, I got this and looked back --**

4          MR. SANSPREE:  When you say

5             "this," please identify

6             it for the record,

7             please.

8    A.    **I'm sorry.**

9    Q.    The letter of January 2nd?

10   A.    **Still speaking of 020.**

11   Q.    So when you wrote the check on the

12         4th, you didn't know when it needed to

13         make it to Globe; would that be a fair

14         statement?

15   A.    **Uh-huh, yes.**

16   Q.    Because you hadn't received the letter

17         of January 2nd?

18   A.    **Yes.**

19   Q.    Let's see.  Number 10 has a note on

20         the top of.  It says Check No. 350 for

21         33.60 mailed by me and paid on 1/4/05,

22         posted on 1/21/04, paren, cleared; is

23         that what that says?

89

1  A.  Yeah, that's what it says.

2  Q.  Okay. And when it says, posted, does

3      that mean it went through your bank on

4      the 21st?

5  A.  I assume.

6  Q.  Okay. That's your writing?

7  A.  I know it's my writing, but I'm

8      trying -- you know, I'm having to

9      remember --

10 Q.  Sure. Sure.

11 A.  -- back. I paid it on 1/4; posted

12     on -- cleared, question mark. It

13     was --

14         THE WITNESS: You can jump in

15             there any time.

16         MR. SANSPREE: I can't answer

17             the questions. I wish I

18             could, but I can't.

19 A.  I don't know how --

20 Q.  I'm just trying to confirm that that's

21     your writing, and I'm just trying to

22     get an idea if posted means -- and you

23     may not remember -- but posted might

90

1      mean that that's when it cleared your

2      checking account; is that what posted

3      means to you?

4  A.  Yeah. Yeah. Because they received

5      the payment prior to that.

6  Q.  Okay.

7  A.  I believe they received the payment on

8      the 16th.

9  Q.  Okay. And then the next couple of

10     pages, I guess, 11, 12, 13, 14, 15,

11     and 16, are -- that's the actual

12     policy?

13 A.  Uh-huh.

14 Q.  And the page that shows the benefits

15     and how much your premium is going to

16     be and that type information; is that

17     correct?

18 A.  Yes.

19 Q.  Okay. There's -- I see there's a mark

20     on Page 13 and Page 14. There's a

21     line drawn down there. Is that --

22         MR. SANSPREE: Thirteen.

23 Q.  And a star. There's a star on 13 and

91

1      a line on 14?

2  A.  Uh-huh.

3  Q.  Is that a mark that you would have

4      made, or if you have any idea who made

5      it?

6  A.  That's probably -- I was reading over

7      this and highlighted these areas,

8      because on Page 14, where it states,

9      written notice of claim must be given

10     within 20 days after accidental death

11     or as soon as reasonably possible --

12     they had already received the payment

13     prior to that and -- well, and then

14     Will got up with them on the 12th,

15     which was, you know, ample time to

16     abide by that.

17         MR. SANSPREE: You just need

18             to answer his question.

19 A.  Well, I'm trying -- did I underline

20     that? Yes.

21 Q.  Okay.

22 A.  Why did I underline it? Okay. (As

23     read:) Unless accepted by us under the

92

1      reinstatement provision in the

2      certificate.

3          MR. SANSPREE: You just need

4              to answer the question

5              that he's asked.

6  A.  Okay. What's the question? I'm

7      sorry.

8  Q.  I just asked if you drew the line

9      under it, and if you can recall why

10     you underlined it?

11 A.  That's what I was responding to. When

12     you wanted to know why.

13 Q.  Okay.

14 A.  That's what I was -- these were --

15     this was paperwork I was sending to

16     the attorney's office, and in that

17     reinstatement provision, the premium

18     was received by Globe before the 17th.

19     That was just like, look at this and

20     see if this is where -- this is for

21     them.

22 Q.  Okay. Seventeen is a note, appears to

23     be in your handwriting; is that right?

93

1  A.  Yes.

2  Q.  Okay.  And just to save time, it says,

3     payment made on January 4th, $33.60,

4     Check No. 950, mailed on January 5th,

5     2004.  Chris was killed on January 6,

6     2004.  Received notice from Globe on

7     or around January 12th?

8  A.  Uh-huh, yes.

9  Q.  Would that be the January 2nd letter

10    that we've been talking about, that

11    received notice from Globe?

12  A.  Yes.

13  Q.  So when you say, received notice from

14    Globe on or around January 12th, that

15    would probably be the January 2nd --

16    the letter dated January 2nd?

17        MR. SANSPREE:  Which is

18            Bates-marked 020.

19  A.  Yes.

20  Q.  And then it says, notice generated on

21    January 2nd, but not postmarked until

22    January 7th?

23  A.  Yeah.

94

1  Q.  Do you still have the letter -- the

2     actual envelope that that January 2nd

3     letter came in?

4  A.  No.

5  Q.  Do you -- did it get discarded?  Do

6     you have any idea where it might be?

7  A.  It's gone.

8  Q.  Okay.

9  A.  Yeah.

10  Q.  And then it says, check written on

11    January 4th mailed out January 5th,

12    postmark.  Have you seen the envelope

13    that your check was in since it left

14    your possession?

15  A.  No.

16  Q.  Okay.  Do you remember when you wrote

17    this 0017, when you wrote this note?

18  A.  No.

19  Q.  We've already talked about 18.

20    Nineteen has a note on it.  It says,

21    Will phone number.  Is that Will

22    Matthews' phone number?

23  A.  His office, yes.

95

1  Q.  Office number, okay.  Twenty, we've

2     talked about.  And is that your

3     writing on the right-hand margin of

4     20?

5  A.  Yes.

6  Q.  Okay.  And you note, mailed

7     January 5th, 2004; received by Globe

8     January 16, '04?

9  A.  It was put in the box on January the

10    4th.

11  Q.  Next one is a copy of a check but with

12    no writing.  And 22 is the back of

13    your check?

14  A.  That's what it appears to be.

15  Q.  Do you know where you got this -- the

16    back of the check from?

17  A.  Off of the cleared check.

18  Q.  Okay.  That you got back from the

19    bank?

20  A.  Yes.

21  Q.  Okay.  Your bank statement?

22  A.  Yes.

23  Q.  Okay.  Then, let's see, 23 is a letter

96

1     from Globe to your attorney?

2  A.  Yes.

3  Q.  Okay.  Twenty-four is the request for

4     premium due January 28th?

5  A.  Yeah.

6  Q.  And you didn't pay that one?

7  A.  Why, no.

8  Q.  Okay.  Twenty-five appears to be the

9     same letter that we've seen before in

10    0020, except for it's turned over a

11    different direction.

12  A.  Yes.

13        MR. SANSPREE:  We probably

14            copied those, George, a

15            couple of times.

16        MR. PARKER:  Sure.

17  Q.  Twenty-six looks like the same thing

18    as 18 just turned in, maybe, a

19    different direction?

20        MR. SANSPREE:  It is.  We

21            probably just copied

22            these documents twice,

23            George.  Eighteen.

97

1  A.  Okay.  Yes.
2  Q.  Okay.  And then if you would, look
3      through 27 to 33, and those records
4      appear to be some medical records
       associated with making the accident
6      claim?
7  A.  Yes.
8           MR. SANSPREE:  Look through
9                these before you answer
10               any questions.  He said
11               look through 27 through
12               33.
13 A.  Yes.
14 Q.  Okay.  And then I think we may be
15     looking at some duplicates --
16     Documents 0034 through 0041, and I
17     think may be documents we've already
18     seen before, just documents regarding
19     the coverage and the policy type and
20     the policy provisions.
21          MR. SANSPREE:  Did you
22               understand the question?
23 A.  Yes.

98

1  Q.  Does that appear to be what those
2      pages are?
3  A.  Yes.
4  Q.  Let me ask you about 42 and 43.  This
5      looks like a brochure that may have
6      been a two-sided brochure that -- with
7      a folded up -- I mean like a tri-fold?
8  A.  Yes.
9  Q.  Have you seen that before?
10 A.  Yes.
11 Q.  Was that some information about the
12     policy that your husband may have
13     looked at before he took it out?
14 A.  Yes.
15 Q.  Okay.  And then the rest of the
16     documents are documents that you've
17     received from Globe mailed to David
18     since his death; those are just copies
19     of mailings maybe you've received from
20     Globe?
21 A.  Yes.
22          MR. SANSPREE:  Again, look
23               through them all.  I

99

1      don't think you're trying
2      to pull anything on her,
3      George; I just want to
4      make sure she's right.
5           MR. PARKER:  Just
6               double-check.  I think
7               that's what it is, but
8               double-check.
9  A.  Those are...
10          MR. SANSPREE:  Go ahead and
11               answer if you want to
12               answer.
13 A.  Yes.  Those are the same type -- same
14     type mail that still invades my
15     mailbox two years after his death.
16 Q.  You're still getting that mail today?
17 A.  Yeah.
18 Q.  I've got a couple of documents here.
19     Those are marked as C.  I've got a
20     couple here I'm going to mark as D.
21     And there are a couple of records out
22     of what I think Globe has produced
23     to --

100

1      (The referred-to document was
2      marked for identification as
3      Defendants' Exhibit No. D.)
4           MR. SANSPREE:  George, if
5               you'll throw me that
6               clamp, I was going to
7               clamp this together.
8  Q.  Here's a group of documents that Globe
9      has produced to your attorney.
10          MR. PARKER:  I think you've
11               already gotten those.  I
12               just want to ask her
13               about a couple of those
14               pages.
15 A.  Yeah.
16          MR. SANSPREE:  Yeah.  Seen
17               those.  Death certificate
18               and everything.
19 Q.  Looks like the top document in this
20     group of documents that are marked
21     collectively as D is a letter to Globe
22     from your attorney, where he was
23     trying to get some information

101

1  together that they requested; is that
2  what that letter appears to be?
3  **A.  Yes.**
4  **Q.  Okay.  And --**
5           MR. SANSPREE:  Just for the
6                record, "they requested"
7                would be Globe Life?
8           MR. PARKER:  Yeah.
9  **Q.  0015 is -- is that a copy of the**
10     application that your husband took out
11     in order to get this policy, if you
12     know?
13  **A.  I don't know.**
14  **Q.  Okay.  You don't know.**
15         (Off-the-record discussion.)
16  **Q.  And then the rest of these, I think,**
17     are documents that are associated with
18     records that may have been sent to
19     Globe by your attorney?
20  **A.  (Nods head.)**
21  **Q.  Okay.**
22  **A.  Yes.**
23  **Q.  Okay.  I'm going to mark these**

102

1  responses that you've already made in
2  this case as E.  I just have a couple
3  of questions out of these.  Do you
4  remember signing off on these
5  interrogatories, these responses that
6  your attorney may have helped you
7  prepare?
8           (The referred-to document was
9                marked for identification as
10               Defendants' Exhibit No. E.)
11          MR. SANSPREE:  Let me get to
12               it, George.
13          MR. PARKER:  Sure.
14  **A.  Yes.**
15  **Q.  Okay.  On Question No. 2 on the second**
16     page of those documents, there's a
17     question that asks the names, address,
18     telephone number of each person who
19     has knowledge of any of the
20     allegations contained in the
21     complaint.  And listed are Philip
22     Christopher Lurie and yourself and
23     Michael Britton.

103

1  **A.  Yes.**
2  **Q.  Are there any other persons that know**
3     anything about any of the facts and
4     circumstances surrounding this
5     dispute?
6  **A.  No.**
7  **Q.  Okay.  What does Philip -- or what**
8     does Christopher know -- what does he
9     know about it?
10  **A.  Just that Globe didn't pay up like**
11     **they were supposed to.**
12          MR. SANSPREE:  And, George,
13               just so -- because I know
14               we're in federal court,
15               and I want to make sure
16               you know about all the
17               witnesses -- we may call
18               her first attorney, Will,
19               because there was a phone
20               call.  So make a note
21               that we need to
22               supplement this response
23               so it's not held against

104

1               me later on.
2          MR. PARKER:  Sure.
3  **Q.  So Will Matthews, he knows?**
4  **A.  He notified them of his death, Globe.**
5     **He notified Globe of Chris's death.**
6  **Q.  And you already mentioned one**
7     conversation that you had while he was
8     talking to Globe on the 12th?
9  **A.  Yes.**
10  **Q.  And you've shown me some letters that**
11     he wrote on your behalf to Globe?
12  **A.  Yes.**
13  **Q.  Okay.  Philip -- or, I'm sorry,**
14     Christopher, did he ever talk to
15     anybody at Globe that you know of?
16  **A.  No.**
17  **Q.  He didn't see you write the check or**
18     put the check in the mail?
19  **A.  No.**
20  **Q.  He just knows that you've talked about**
21     Globe not paying in this case?
22  **A.  He was aware of that.**
23  **Q.  Okay.  Is that extent of what he**

105

1  knows?
2  A.  Yes.
3  Q.  Okay.  Will -- what does your husband
      Michael know about the facts and
      circumstances of this case?
6            MR. SANSPREE:  I mean, just to
7               state that what does she
8               know that he knows.  I
9               mean, she really -- you
10              may just want to call him
11              and ask him.
12           MR. PARKER:  That's true.
13           MR. SANSPREE:  But answer the
14              question.  I was just
15              making sure that you're
16              not going to sit here and
17              tell him everything he
18              knows if you don't know.
19              But you tell him what you
20              know he knows.
21 A.  I know he's aware of the fact that
22      Globe didn't pay me.
23 Q.  Okay.  He's aware of the lawsuit; he's

106

1  aware of your contention that they
2  didn't pay, those type things?
3  A.  Yes.
4  Q.  He has no knowledge of when the check
5      was written or all that?
6  A.  No.
7  Q.  How long have you known Michael?
8  A.  We met May 15th.
9            MR. SANSPREE:  How do you
10              remember all these dates?
11 A.  Because I'm ready.
12           MR. SANSPREE:  I can't
13              remember anything.
14 A.  Wait a minute -- because, see -- you
15      know, January jumps in the middle of
16      things.
17 Q.  Sure.
18 A.  So May -- May 2004.
19 Q.  Okay.
20 A.  May 15th, '04.
21 Q.  Okay.  So you didn't meet him until
22      after your husband passed and after
23      you had written the check and after

107

1  you --
2  A.  Yes.
3  Q.  Okay.  There's some doctors listed
4      here as -- in No. 9 as doctors,
5      hospitals, pharmacists, medical
6      providers, or healthcare providers
7      that provided you with medical
8      treatment for the emotional distress
9      alleged in your complaint?
10 A.  What number?
11           MR. SANSPREE:  He was reading
12              the question to you.
13 A.  Yes.
14 Q.  Okay.  Did you -- do all these --
15      well, does Dr. Cook work at First Med?
16 A.  Yes.
17 Q.  Okay.  Did you see Dr. Cook because of
18      your allegations that Globe Life
19      didn't pay on this policy?  Is that
20      the reason why you had to go see him?
21 A.  I had gone and seen him initially, I
22      guess, a month or so after Chris's
23      death for depression and -- as far as

108

1  having to go and see Dr. Cook for --
2  because Globe didn't pay as they
3  should, no.
4  Q.  You did not see Dr. Cook because of
5      anything having to do with this
6      lawsuit relating to Globe Life not
7      paying your claim?
8  A.  Not that I remember, no.
9  Q.  Same question for Dr. Faulk.  Is that
10      Paulk?
11 A.  It's supposed to be Paulk, yes.
12 Q.  Same question for him.
13 A.  Yes.
14 Q.  You did see him because of your
15      allegations that Globe should have
16      paid the claim but did not?
17 A.  Well, just trying to remember.  I know
18      you want a simple yes or no.  I will
19      say no at this time.
20 Q.  Okay.  How about any doctors at
21      Westgate Parkway?
22 A.  That's the address of Dr. Cook and
23      Dr. Paulk.

109

1  Q.  Okay.

2       MR. SANSPREE:  He's asking

3            about any doctors there.

4  Q.  Yeah.  First Med is on Westgate

5       Parkway?

6  A.  Yes.  Yes, sir.

7  Q.  And Dr. Cook and Dr. Paulk work

8       together?

9  A.  Yes, sir.

10  Q.  Okay.  You've seen them for different

11       health-related reasons both before and

12       after your husband passed away?

13  A.  Yes.

14  Q.  Okay.  But as you sit here today,

15       you're not saying that you saw them

16       specifically because of the

17       allegations against Globe Life in your

18       complaint?

19  A.  **Not specifically, no, but the**

20       **allegations against Globe would not**

21       **have come about had it not been linked**

22       **to the fact that Chris died.  Chris**

23       **died, and I was in a really sad state,**

110

1       **so that fed into it.**

2  Q.  Would you agree with me that you saw

3       them because of your having to deal

4       with the death --

5  A.  Yes.

6  Q.  -- rather than because of this lawsuit

7       or the issues around the Globe Life

8       case?

9  A.  **Yes.  It was six months off and on**

10       **that I saw them, if I recall right.**

11       **That's what I'm trying to remember.**

12       **And during which time, the claim was**

13       **denied, if I recall correctly.**

14       MR. SANSPREE:  Listen to his

15            question.

16  Q.  I'm just trying to find out if you saw

17       Dr. Cook, as asked in the question,

18       for medical treatment for the

19       emotional distress alleged in your

20       complaint that you allege was caused

21       by Globe?

22  A.  Yes.

23  Q.  Okay.  And the same for Dr. Paulk?

111

1  A.  **Yes.**

2  Q.  So you saw them for emotional distress

3       allegedly caused by Globe Life?

4  A.  **I'm not sure.**

5  Q.  Okay.  You said you saw Dr. Cook

6       before your husband passed away for

7       depression?  Did I hear that right?

8  A.  **No.**

9  Q.  Never before -- you never were treated

10       for depression --

11  A.  **No.**

12  Q.  -- before --

13  A.  **No.  Never.**

14  Q.  After you saw him for depression?

15  A.  **Never had, no.**

16       MR. SANSPREE:  He's asking you

17            after his death, you saw

18            him for depression;

19            right?

20  A.  Yes.

21  Q.  But not before; you did not see him

22       for depression before the death?

23  A.  No.

112

1  Q.  Got you.  Same question for Dr. Paulk,

2       did you see him for depression-related

3       issues after your husband passed away?

4  A.  **Yes.**

5  Q.  Okay.  And then it says, director of

6       funeral home referred you to a grief

7       counselor.

8  A.  **Yes.**

9  Q.  And you spoke to this person,

10       apparently, over the phone?

11  A.  **Yes.**

12  Q.  Okay.  Did that -- did any discussions

13       with this grief counselor have

14       anything to do with the emotional

15       distress you claim Globe Life has

16       caused you?

17  A.  **No.**

18  Q.  Okay.  Have you talked to or relied on

19       any of your family or friends to help

20       you cope with emotional distress that

21       you claim that Globe Life has caused

22       you?

23  A.  **Repeat that.**

113

1  Q.  Okay. Have you relied on family
2      members or friends to help you cope
3      with the emotional distress that you
       claim Globe Life has caused you?
   A.  Yes.
6  Q.  Okay. Who are those persons?
7  A.  My husband.
8  Q.  Anybody else that you can recall?
9  A.  No.
10 Q.  Okay. Tell me about the emotional
11     distress that you claim Globe Life has
12     caused you.
13 A.  **I don't know how to answer that.**
14     **Honestly.**
15 Q.  Okay. You're claiming mental anguish
16     in this case, or emotional distress?
17 A.  **Yes.**
18 Q.  Okay.
19 A.  **What did I mean by that?**
20 Q.  Sure.
21 A.  **I had a husband of 22 years, and he**
22     **was the bread winner, and he died, and**
23     **I was left with two teenage boys and**

114

1      **no income. And when I -- relying on**
2      **the policies and the financial**
3      **provisions he had made for me should**
4      **anything ever happen to him, and then**
5      **finding that Globe was denying that**
6      **responsibility to fulfill the claim,**
7      **was pretty emotional and left me in a**
8      **pretty bad situation.**
9  Q.  Did you have some savings that you
10     could rely on after he passed away, or
11     how did you make ends meet after he
12     did pass away?
13 A.  **I didn't have any savings. I had**
14     **that -- the amount that I stated that**
15     **CNA paid.**
16 Q.  And the auto insurance?
17 A.  **Yeah. I had to pay for the funeral**
18     **expenses out of that, which was right**
       **at 8,000. I had to pay all of the --**
20     MR. SANSPREE: Just answer
21         what he asked you.
22 Q.  Did -- have you talked to any
23     expert-type witnesses in this case

115

1      about your -- your case or any
2      opinions they may want to make, if you
3      know?
4  A.  **No.**
5  Q.  Never spoken to anybody?
6  A.  **(Shakes head.)**
7  Q.  Tell me in your words what -- you may
8      have already told me; if you want to
9      rely on what you've already told me,
10     that's fine -- but what do you contend
11     that Globe did wrong in this case?
12     MR. SANSPREE: Can we get her
13         some tissue? Would you
14         like a tissue?
15 A.  **Globe didn't pay as they should have.**
16     **They didn't fulfill the claim.**
17 Q.  Other than the doctors that we talked
18     about just a minute ago, are there any
19     other doctors that you have seen
20     because of any of the issues relating
21     to this lawsuit?
22 A.  **No.**
23 Q.  Okay. Do you have any appointments

116

1      scheduled in the future with any
2      doctors or psychiatrists,
3      psychologists, therapists, or any type
4      counselor for any of the issues
5      pertaining to this lawsuit against
6      Globe?
7  A.  **No.**
8  Q.  Okay. It's your testimony under oath
9      here today that you did not send in a
10     check to Globe for the amount of the
11     premium after your husband passed
12     away?
13 A.  **Repeat that.**
14 Q.  It's your testimony here under oath
15     that you did not send in the check
16     that we've looked at here today for
17     the premium after your husband passed
18     away?
19 A.  **It is my testimony that I did not send**
20     **in the premium after my husband passed**
21     **away. No, I did not send in the**
22     **payment after he passed away.**
23 Q.  Okay.

117

1  A.  Did I get that right? Well, you kind
2      of twisted --
3          MR. SANSPREE:  He's not -- he
4              just wants to know
5              whether or not you sent
6              the payment in after he
7              died.
8  A.  No, I did not send the payment in
9      after he died.
10 Q.  All right. If you give me five
11     minutes, I think I'm about through.
12         (Brief recess taken.)
13 Q.  I should have asked you this before
14     when we were talking about your
15     husband's accident, but I forgot to
16     ask you. How did you find out
17     about -- that he had been in a wreck,
18     and when did you find out about it?
19 A.  Strange car pulled up in my driveway,
20     and I didn't know who it was. And I
21     went to the door, and this big tall
22     white-haired man staring at me kind of
23     funny met me at the door. And I said,

118

1      yes; and he said, are you alone? And
2      I said, yes, why? And he said, is
3      Chris your husband? And I said, yes.
4      And he said, well, he's been killed.
5      Just like that. And I hit the ground.
6  Q.  Did -- and then did you go out to the
7      scene or go to the hospital?
8  A.  No. There was no hospital involved,
9      and, no, nobody would let me go. And
10     they said it was so bad.
11 Q.  Okay. Do you have any -- we talked
12     about the funeral expenses -- and I
13     don't know if this is exactly the
14     answer to this question I'm fixing to
15     ask, but do you have any out-of-pocket
16     expenses associated with this case or
17     this claim that you're making against
18     Globe?
19 A.  I don't understand what you --
20 Q.  Do you have any out-of-pocket expenses
21     that you've had to pay yourself as a
22     result of this case and your dispute
23     with Globe?

119

1  A.  I had to pay -- are you speaking of
2      paying off bills, or are you
3      speaking --
4          MR. SANSPREE:  Just -- I mean,
5              I've got her on a
6              contingency-fee basis, so
7              she hasn't had to pay me.
8  Q.  Sometimes when there's a lawsuit and
9      somebody is suing somebody else there
10     will be items that the person suing
11     another will claim she's had to pay
12     because of what somebody else has
13     done, out-of-pocket expenses
14     associated with the wrong alleged in
15     the complaint. And what I'm asking is
16     do you have any of those type
17     out-of-pocket expenses associated with
18     this case of any sort? And it may be
19     something that you don't. I'm just
20     asking if you know of any
21     out-of-pocket expenses you've had to
22     pay because of your dispute with
23     Globe.

120

1  A.  No, not that I recall.
2  Q.  Do you have any expenses that you
3      anticipate having to pay in the future
4      because of what you claim Globe may or
5      may not have done?
6  A.  No.
7  Q.  Okay. In this case, you've sued Globe
8      for breach of contract, and you've
9      also sued them for bad faith. And
10     what I'm asking is, are you alleging
11     that Globe failed to investigate your
12     claim?
13 A.  Repeat that.
14 Q.  Okay. Well, let me ask you this: One
15     of the allegations in your complaint
16     is that Globe Life has intentionally
17     and in bad faith failed and refused to
18     properly pay or investigate
19     plaintiff's claim for accident --
20     accidental death benefits. And let me
21     ask you, do you have any first-hand
22     knowledge or evidence that Globe Life
23     intentionally and in bad faith failed

121

1  to investigate this claim?

2  A.  Yes.

3  Q.  Okay.  What is it?

4  A.  Well, they led me to believe all along
5      that they were going to fulfill this
6      claim, and then told me they were
7      cutting a check.  I said, okay.  And
8      then, in fact, did receive a check,
9      but it was a reimbursement check of my
10     premium.

11  Q.  Okay.  Is that the evidence that you
12      have that Globe intentionally and in
13      bad faith failed to investigate your
14      claim?

15  A.  Yeah.  The payment was made -- the
16      payment was made when it had to be
17      there.  The policy was still in
18      effect, had not lapsed.  And they
19      didn't pay me what they owed me.

20  Q.  Are you alleging in this case that
21      Globe had no arguable reason for re --
22      for refusing to pay the benefits owed
23      to you?

122

1  A.  Rephrase that.

2  Q.  Okay.  Are you saying in your
3      complaint that Globe had no arguable
4      reason for failing or refusing to pay
5      the benefits that you allege are owed
6      to you?

7          MR. SANSPREE:  I'm going to
8              have to object to that.
9              Arguable is legal,
10             George.  I mean, can you
11             rephrase it?

12         MR. PARKER:  Sure.

13  Q.  Are you alleging in your complaint
14      that Globe had no reason for refusing
15      to pay the amounts that you allege
16      were owed?

17  A.  Yes.

18  Q.  If -- if this payment was made
19      after -- I know what you've told me; I
20      know what your testimony has been --
21      but if the payment was made after your
22      husband had passed, would you think
23      that Globe would owe money under this

123

1  policy?

2          MR. SANSPREE:  Same objection.
3              You have to answer, but I
4              was objecting.  It
5              depends on a lot of
6              things.

7  Q.  I'm asking you a hypothetical, but
8      under the facts that we know of -- and
9      I know what you've already testified
10     about -- but under the facts that we
11     know of, if a payment was made by
12     somebody else under the same and
13     similar circumstances after the person
14     on the policy had deceased, would you
15     think that the insurance company would
16     still owe payments under that
17     scenario?

18         MR. SANSPREE:  Object to the
19             form of the question.  Go
20             ahead and answer it.

21  A.  Payment being made or payment being
22      received by Globe?

23  Q.  Payment being sent in and mailed.

124

1          MR. SANSPREE:  After --

2  Q.  The check being written and the check
3      being mailed after that person had
4      died.

5  A.  Mailed in after that person -- written
6      and mailed in after that person died
7      in a hypothetical situation, would I
8      think --

9  Q.  That the insurance company would have
10     to pay the benefits under the policy?

11  A.  In a perfect situation like that, no.
12      But with all other -- you know, people
13      have other...

14  Q.  Okay.  Let's assume that -- that the
15      exact same set of circumstances
16      happened to somebody else, not you,
17      and --

18         (Off-the-record discussion.)

19  Q.  In your case and you've already
20      testified you mailed the check on
21      the -- you wrote the check on the 4th,
22      mailed the check on the 5th.  Let's
23      assume somebody else with the exact

1   same set of facts happened to them,
2   but that person, the widow in that
3   case, mailed the check on the 8th,
4   wrote the check and mailed the check
5   on the 8th to Globe Life -- you follow
6   me?
7   A.  **But it can't be that way.  If you say**
8   **that she wrote the check and mailed**
9   **the check in the same -- like I did,**
10  **in the same situation, before he**
11  **died --**
12  Q.  Right.  I'm saying --
13      MR. SANSPREE: He's asking if
14      it's after.
15  Q.  The only thing difference -- the only
16  thing different would be instead of
17  the way you say it happened, the
18  person in Scenario B wrote the check
19  on the 7th, after somebody had died,
20  and mailed the check on the 7th, after
21  somebody had died, and it was received
22  by the insurance company on the 16th,
23  under those circumstances, would you

126

1   say that the insurance company
2   should -- should pay that claim?
3   A.  **Are you trying to trick me?**
4       MR. SANSPREE: He's just
5       asking you a hypothetical
6       question.
7   Q.  I'm just asking you a hypothetical.
8   A.  **No.  I don't guess.**
9   Q.  Okay.  Did anybody do your -- you and
10  your husband's taxes around the 2003,
11  2004 time frame, or did y'all just do
12  them yourselves?
13  A.  **I did.**
14  Q.  You did them?
15  A.  **I believe, yeah.**
16      (Off-the-record discussion.)
17  Q.  Okay.  I think that's all I have.
18      (Off-the-record discussion.)
19      **EXAMINATION**
20  **BY MR. SANSPREE:**
21  Q.  I'm going to show you what I've marked
22  as Plaintiff's 1.
23      (The referred-to document was

---

1   marked for identification as
2   Plaintiff's Exhibit No. 1.)
3       MR. PARKER: Is that the --
4       MR. SANSPREE: My subpoenas,
5       yeah.
6       MR. PARKER: Can I look at
7       that?  Do you have it
8       marked?
9       MR. SANSPREE: I just took a
10      page out.
11      MR. PARKER: Okay.
12      MR. SANSPREE: What I did is I
13      usually just write a
14      letter -- when you send a
15      subpoena, I just write a
16      letter saying give them
17      to me too.
18  Q.  In Plaintiff's 1, do you see Check No.
19  949 down at the bottom left-hand
20  corner?
21  A.  **Yes, I do.**
22  Q.  And what's the date on 949?
23  A.  **1/4/04.**

128

1   Q.  And then do you see at the top or in
2   the middle of left-hand side, Check
3   No. 951?
4   A.  **Yes, I do.**
5   Q.  And what date is that?
6   A.  **1/8/04.**
7   Q.  I show you what I'm going to mark as
8   Plaintiff's 2.
9       (The referred-to document was
10      marked for identification as
11      Plaintiff's Exhibit No. 2.)
12      MR. PARKER: Can I come behind
13      y'all?
14      MR. SANSPREE: Yeah.
15  Q.  I show you on top of Plaintiff's 2 at
16  the top left-hand corner, do you see
17  where it's Check No. 950, which is the
18  check at issue in this case; do you
19  see that?
20  A.  **Yes.**
21  Q.  And what is the date at the top of the
22  Check 950?
23  A.  **1/4/03.**

129

1  Q.  And, just for the record, again, Check

2      No. 949, which is before 950, is dated

3      what date?

4  A.  1/4/04.

5  Q.  And you mailed -- did you mail 949 at

6      the same time you mailed Check No.

7      950?

8  A.  Yes.

9  Q.  Back to Defendants' Exhibit C, which

10     is Lurie 001, what's the date of that

11     notice -- premium notice?

12 A.  Here?

13 Q.  Yes, ma'am.

14 A.  January 16th, 2004.

15 Q.  Is January 16th, 2004, is that after

16     your husband's death?

17 A.  Yes, it is.

18 Q.  Is that after you and Mr. Matthews

19     notified Mr. Matthews of your

20     husband's death?

21 A.  Yes, it is.

22 Q.  And what date did you notify Globe

23     Life of your husband's death with

130

1      Mr. Matthews?

2  A.  January 12th, 2004.

3  Q.  And what date was Check No. 950 cashed

4      by -- or deposited by Globe Life?

5  A.  January 16th.

6  Q.  Okay. I'm sorry. In Lurie 020 -- and

7      you testified earlier that you

8      received that -- you see where it

9      states that they must -- Globe Life

10     must receive your premium payment by

11     January 17th, 2004?

12 A.  Yes, I do.

13 Q.  Did they receive your premium payment

14     by January 17th, 2004?

15 A.  Yes, they did.

16 Q.  And you received LURIE 1 after that,

17     again; correct?

18 A.  Yes.

19 Q.  And what does LURIE 1 indicate to you,

20     the premium notice of January 16th,

21     2004? What does that indicate to you?

22 A.  It indicates to me that the policy was

23     still in effect.

1  Q.  At any time prior to May 18th, 2004 --

2      you filed the claim with Globe Life on

3      January 12th; you notified them of the

4      death; correct?

5  A.  Right.

6  Q.  At any time between January 12th and

7      May 18th, 2004, were you told by Globe

8      Life that they were going to use the

9      fact that the premium payment was late

10     to deny your claim?

11 A.  No.

12 Q.  And did you ever receive a letter -- a

13     reservation of rights by Globe Life

14     regarding the premium payment being

15     late prior to May 18th, 2004?

16 A.  No.

17 Q.  Do you know why -- do you have any

18     reason to believe or any knowledge

19     why -- not any reason to believe -- do

20     you have any knowledge why Globe Life

21     would send you another premium notice

22     on January 16th, 2004, if your policy

23     had, in fact, elapsed, or your

132

1      husband's policy had lapsed?

2  A.  I wondered why they would do that.

3  Q.  That's all I've got.

4          MR. SANSPREE:  Do you have

5              anything, George?

6          MR. PARKER:  No. Just hold on

7              a second. I don't think

8              I have any more

9              questions. That's it.

10             Thank you.

11 (The deposition of KAREN FRANCES LURIE

12 BRITTON concluded at approximately

13 1:33 p.m. on July 25, 2006.)

1  * * * * * * * *

2  REPORTER'S CERTIFICATE

3  * * * * * * * *

STATE OF ALABAMA

6  COUNTY OF ELMORE

7

8  I, Tiffany B. Beasley,

9  Certified Court Reporter and Notary

10  Public in and for the State of Alabama

11  at Large, do hereby certify that on

12  July 25, 2006, pursuant to notice and

13  stipulation and behalf of the

14  Defendants, I reported the deposition

15  of **KAREN FRANCES LURIE BRITTON**, who

16  was first duly sworn by me to speak

17  the truth, the whole truth, and

18  nothing but the truth, in the matter

19  of KAREN LURIE, Plaintiff, versus

20  GLOBE LIFE AND ACCIDENT INSURANCE

21  COMPANY, et al., Defendants, Civil

22  Action Number 1:06-cv-0034MEF, now

23  pending in the United States District

134

1  Court for the Middle District of

2  Alabama, Southern Division; that the

3  foregoing 133 typewritten pages

4  contain a true and accurate

5  transcription of the examination of

6  said witness by counsel for the

7  parties set out herein; that the

8  reading and signing of said deposition

9  was not waived by witness and counsel

10  for the parties.

11  I further certify that I am

12  neither of kin nor of counsel to the

13  parties to said cause, nor in any

14  manner interested in the results

15  thereof.

16  This 8th day of August, 2006

17

18

19

20  Tiffany B. Beasley, CCR
Reporter and Notary Public

21  State of Alabama at Large

22

23

---

1  * * * * * * * *
WITNESS SIGNATURE PAGE

2  * * * * * * * *

3  IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

4  SOUTHERN DIVISION

5  KAREN LURIE,

6  Plaintiff,

7  vs.  CIVIL ACTION NO.
1:06-cv-0034MEF

8

9  GLOBE LIFE ACCIDENT
INSURANCE COMPANY, et al.,

10

11  Defendants.

12  I, KAREN FRANCES LURIE BRITTON,
hereby certify that I have read the
deposition enclosed herein and that it

13  is a true and accurate transcription
of the deposition given by me in this

14  cause with the corrections or

15  additions, if any, indicated by me on
the attached errata sheet.

16

17  _____
Signature of Witness

18  Subscribed and sworn to before me this

19  _____ day of _____, 2006.

20

21

22  _____
Notary Public

23

## IN THE CIRCUIT COURT OF
## HOUSTON COUNTY, ALABAMA

KAREN LURIE,                         *
                                     *
    Plaintiff,                  *
                                     *
                                     *
v.                                   *       Case No. CV-05- 773-Q
                                     *
GLOBE LIFE AND ACCIDENT             *
INSURANCE COMPANY;                   *
and Fictitious Defendants "A", "B",  *
"C", "D", "E", and "F", whether      *
singular or plural, are those other  *
persons, corporations, firms or other *
entities whose wrongful conduct caused *
or contributed to cause the injuries and *
damages to Plaintiff, all of whose true *
and correct names are unknown to     *
Plaintiffs at this time, but will be  *
substituted by Amendment when        *
ascertained,                         *
                                     *
    Defendants.                  *

DEC 14 2005

JUDY BYRD, CLERK
HOUSTON CO., AL

## COMPLAINT

## PARTIES

1.    Plaintiff Karen Lurie is a resident of Houston County, Alabama and over the age of nineteen (19) years.

2.    Globe Life and Accident Insurance Company ("Globe Life") is a foreign corporation that does business by agent in Houston County, Alabama.

3.    Fictitious Defendants "A", "B", "C", "D", "E" and "F", whether singular or plural, are those other persons, firms, corporations, or other entities whose wrongful conduct caused or contributed to cause the injuries and damages to Plaintiff, all of whose true and correct names are unknown to Plaintiff at this time, but will be substituted by amendment when ascertained.


DEFENDANT'S EXHIBIT A

## STATEMENT OF FACTS

4.      In or around April of 2003, David Lurie, deceased husband of the Plaintiff, ("Decedent"), purchased an accidental death insurance policy (Policy Number: 14-J522138) from the Defendants ("the Policy") that would pay accidental death benefits in the amount of $100,000.00 in the event the insured died an accidental death as defined by the aforesaid policy of insurance.

5.      The Decedent/Insured identified as beneficiary of the aforesaid Policy as Karen Lurie, the Plaintiff.

6.      The Decedent died an accidental death on or about January 6, 2004.

7.      A claim for accidental death benefits under the Policy was subsequently filed by Plaintiff Lurie.

8.      Plaintiff's claim for accidental death benefits was denied by the Defendants.

## COUNT ONE – BREACH OF CONTRACT

9.      Plaintiff incorporates paragraphs 1-8 as paragraph 9 of Count One.

10.      The Defendants had a life insurance policy contract with the Decedent in which the Defendants accepted insurance premium payments from the latter in consideration for the promise to pay the death benefits to the beneficiaries designated by the Decedent as of the time of his death as set forth above.

11.      The Defendants accepted premium payments from the Decedent until the date of his death. The Decedent fully performed his end of the contractual agreement.

12.      The Defendants failed to pay the death benefit as stated in the contractual agreement as set forth above.

13.    The Defendants failure to pay death benefits, consistent with the terms of their contractual agreement with the Decedent was a breach of contract for which the Plaintiff is entitled a recovery as beneficiary under the Policy.

14.    Plaintiff has not been provided the death benefits as promised in the aforesaid contract and has been injured by the aforesaid breach.

WHEREFORE, Plaintiff demands judgment against Defendants in such an amount of compensatory damages as a jury deems reasonable and may award, plus costs.

## COUNT TWO-BAD FAITH

15.    Plaintiff incorporates paragraphs 1-14 as paragraph 15 of Count Two.

16.    At all material times herein, Defendant State Farm was under a duty to use good faith in handling Plaintiff's claim.

17.    Defendant Globe Life has intentionally, and in bad-faith, failed and refused to properly pay or investigate Plaintiff's claim for accidental death benefits.

18.    As a proximate consequence, Plaintiff was injured and damaged by not having been provided the death benefits as set forth above and has been caused to suffer mental and emotional distress, from which she will continue to suffer.

WHEREFORE, Plaintiff demands judgment against Defendant Globe Life in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus costs.

_____

CHRISTOPHER E. SANSPREE (SAN048)
Attorney for Plaintiffs

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 Telephone
(334) 954-7555 Facsimile

Mr. William B Matthews, Jr.
**Matthews & Filmore, L.L.C.**
Post Office Box 1145
Ozark, Alabama 36361
(334) 774-8804 telephone


## JURY DEMAND

PLAINTIFF RESPECTFULLY DEMANDS TRIAL BY JURY ON ALL ISSUES
OF THIS CAUSE.

_____

OF COUNSEL



DEFENDANT'S EXHIBIT 13

# January 2004

Parker, George

7/24/2006 1:30 PM

# February 2004

Parker, George.

| | Monday | Tuesday | Wednesday | Thursday | Friday | Sat/Sun |
|---|---|---|---|---|---|---|
| | 2 | 3 | 4 | 5 | 6 | February 1 |
| | 9 | 10 | 11 | 12 | 13 | 7 |
| | 16 | 17 | 18 | 19 | 20 | 14 |
| | 23 | 24 | 25 | 26 | 27 | 21 |
| | | | | | | 8 |
| | | | | | | 15 |
| | | | | | | 22 |
| | | | | | | 28 |
| | | | | | | 29 |

Parker, George

# November 2003

| Monday | Tuesday | Wednesday | Thursday | Friday | Sat/Sun |
|--------|---------|-----------|----------|--------|---------|
| 24 | 25 | 26 | 27 | 28 | 30 / 29 |
| 17 | 18 | 19 | 20 | 21 | 23 / 22 |
| 10 | 11 | 12 | 13 | 14 | 16 / 15 |
| 3 | 4 | 5 | 6 | 7 | 9 / 8 |
|  |  |  |  |  | 2 / November 1 |

November 2003
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |  |  |  |  |  |  |

December 2003
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |  |  |  |

# December 2003

|  | Monday | Tuesday | Wednesday | Thursday | Friday | Sat/Sun |
|---|---|---|---|---|---|---|
|  | December 1 | 2 | 3 | 4 | 5 | 6 |
|  | 8 | 9 | 10 | 11 | 12 | 13 |
|  | 15 | 16 | 17 | 18 | 19 | 14 |
|  | 22 | 23 | 24 | 25 | 26 | 20 |
|  | 29 | 30 | 31 |  |  | 27 |
|  |  |  |  |  |  | 28 |

Parker, George

2

7/24/2006 1:30 PM

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
Globe Life Center ● Oklahoma City, Oklahoma 73184 ● (405) 270-1410

RETURN THIS PORTION
WITH YOUR PAYMENT
DUE DATE 1-28-04

| POLICY NUMBER | INSURED | INS. AMT. | 1 MONTH | 3 MONTHS | 6 MONTHS | 12 MONTHS |
|---|---|---|---|---|---|---|
| 14J522138 | DAVID LURIE | 100,000 | 16.80 | 49.40 | 97.00 | 186.60 |

LIFE    2E

PLEASE MAKE ANY ADDRESS CHANGES BELOW AND PROVIDE YOUR PHONE NUMBER: (_____)_____

14-J522138    A1113
DAVID LURIE
4181 COUNTY ROAD 73
MIDLAND CITY AL 36350-4213

PLEASE
DO NOT
FOLD

GLOBE LIFE AND ACCIDENT
INSURANCE COMPANY
P O BOX 268844
OKLAHOMA CITY, OK 73126-8844

0140522138120128040016800049400097000186660001100001

-----

▲ DETACH HERE ▲   IMPORTANT: RETAIN THIS PORTION FOR YOUR RECORDS

**Globe Life And Accident Insurance Company**
Globe Life Center ■ Oklahoma City, Oklahoma 73184

| DUE DATE | POLICY NUMBER | INSURED | 1 MONTH | 3 MONTHS | 6 MONTHS | 12 MONTHS |
|---|---|---|---|---|---|---|
| 1-28-04 | 14J522138 | DAVID LURIE | 16.80 | 49.40 | 97.00 | 186.60 |

January 16, 2004

Dear David Lurie:

Attached is your premium notice for the premium that is due on January 28, 2004 for your life insurance policy number 14J522138.

Please detach the premium notice and return it with your check or money order in the enclosed envelope.

If the mailing address shown on the notice is not precisely correct or if you will have a new address for future purposes, please make the necessary corrections in the space provided for this purpose.

Anytime we can be of assistance, please call or e-mail us at CS@2701410.com. Thank you for permitting Globe Life to provide your insurance.

Sincerely,

*Mark S. McAndrew*

Mark S. McAndrew
Chairman and
Chief Executive Officer

*received death*
*after death*
*after accepting*
*payment.*

DEFENDANT'S
EXHIBIT

LURIE0001
F116 R5/02

CHRIS OR KAREN LURIE
DL AL3565221 or AL4563777
DOB 4/24/58 or 11/9/61
4181 CO. RD. 73 (334) 983-3887
MIDLAND CITY, AL 36350

950
61-203/621

DATE 11/1-4-03

PAY TO THE ORDER OF  Globe Life                    $ 3360

Thirty Three & 00/100                                DOLLARS

The Headland National Bank
HEADLAND, ALABAMA

FOR  David Lurie Policy# 1452138    Karen Lurie    0950

⑆062102030⑆ 01 058 194⑆ "000000 3360"

Check should be dated '04. My error —
Check dated 03 by habit — New year —
Globe corrected it as you can
see — cashed it — accepted for
the premium due by the
17th of Jan. 2004 —

Karen Lurie

LURIE0002

LURIE0003

## WILLIAM B. MATTHEWS, JR.
### ATTORNEY AT LAW

141 EAST REYNOLDS STREET
P.O. BOX 1145
OZARK, ALABAMA 36361

OZARK OFFICE: 334-774-8804
TOLL FREE:    1-800-627-1631
FAX:          334-445-0830

DOTHAN OFFICE: 334-792-0084
TOLL FREE:     1-877-496-9725
VOICE MAIL:    334-797-8804

January 26, 2004

Globe Life & Accident Insurance Company
Attn: Life Claims
P. O. Box 26400
Oklahoma City, OK   73126

Re: Policy # 14J522138
    David Christopher Lurie

Dear Sirs:

This letter is to inform you that Mr. Lurie was killed in an accident on or about January 6, 2004. Per my telephone conversation with your office, enclosed is a copy of the accident report and death certificate concerning Mr. Lurie. Please send the claim forms to Mr. Lurie's widow, Karen Lurie at 4181 County Road 73, Midland City, Alabama, 36350. I will fax this letter to your office and an original will be mailed to you. Should you have any questions regarding this matter, please direct them to my office.

Trusting this fully advises you with regard to this matter, I remain,

Yours very truly,

William B. Matthews, Jr.
Attorney at Law

WBM,Jr./ds

cc: Karen Lurie

LURIE0004

**GLOBE LIFE**

AND ACCIDENT
INSURANCE CO.

May 18, 2004

RECEIVED

JUN 0 3 2004

BY:_____

William B. Matthews, Jr.
Attorney at Law
PO Box 1145
Ozark AL 36361

RE:  Insured:       David Lurie
     Policy:        14-J522138
     DOD:           January 6, 2004
     Beneficiary:   Karen Lurie

Dear Mr. Matthews:

We are in receipt of your correspondence and related claim forms submitted on behalf of David Lurie for the consideration of benefits under the above referenced accidental death insurance policy. Thank you for your assistance in providing us with this information. However, a problem has arisen in our review of this claim and we want to clearly explain our findings to you.

Our records indicate Policy 14-J522138 lapsed due to non-payment of premium on November 28, 2003. The policy does have a 31-day grace period for receiving a premium payment which expired on December 28, 2003. A further review of our records indicates a premium payment in the amount of $33.60 was received in our office on January 16, 2004. Since this payment was received for processing after the insured's date of death and expiration of the policy's grace period for receiving a premium payment, we are unable to accept this premium. Enclosed, please find a refund of this premium amount payable to the designated beneficiary, Karen Lurie, for the appropriate delivery.

In light of the above findings, a claim under this policy would not be eligible for benefits because the policy was not in force at the time of the insured's death.

Mr. Matthews, we regret we are unable to be of service to you regarding a claim, but trust we have satisfactorily explained the circumstances of the matter. Should you have any questions, please let us know.

Sincerely,

S. J. Whitaker/mjp

S. J. Whitaker
Life Benefits Division

SJW/mjp
Encl: Refund of Premium Check

ᄼ0040ᄼᄃ0ᄃ

# GLOBE LIFE AND ACCIDENT INSURANCE COMPANY

### GLOBE LIFE CENTER
### OKLAHOMA CITY, OK 73184
### (405) 270-1410



RECEIVED

JUN 0 9 2004

BY: _____

KAREN LURIE                    014
4181 COUNTY RD 73
MIDLAND CITY AL 36350-4213


ATTACHED TO THIS CHECK IS A BREAKDOWN OF THE BENEFITS ON
YOUR POLICY.

| AMOUNT | CO | POLICY | CLAIM | INSURED |
|--------|----|--------|-------|---------|
| 33.60 | 14 | J522138 | 02122681 | DAVID LURIE |

FULL PREMIUM REFUND          FROM 01/16/04  TO 01/16/04        33.60

IF WE CAN HELP YOU IN ANY OTHER WAY, PLEASE TELL US.


---

CL02122681 L        DETACH THIS PORTION AT DOTTED LINE BEFORE DEPOSITING CHECK        00223309

---

**GLOBE LIFE AND ACCIDENT
INSURANCE COMPANY**
GLOBE LIFE CENTER
OKLAHOMA CITY, OKLAHOMA 73184

DATE 05/19/04   CHECK NO.  223309
POLICY J522138   CLAIM NO.  02122681
BENEFITS FOR DAVID LURIE
DATE OF LOSS 01/16/04

PAY EXACTLY $******33.60*

*Mark S. McAndrew*
AUTHORIZED SIGNATURE

TO THE ORDER OF:

KAREN LURIE
4181 COUNTY RD 73
MIDLAND CITY AL 36350-4213

Collect through
JPMorgan Chase Bank
Houston, Texas
Texas Controllable Disbursements
For Inquiries Call: 800 457-7191

⑆223309⑆ ⑇111300880⑇ ⑆063000142741⑆            LURIE0006



**GLOBE LIFE**
AND ACCIDENT
INSURANCE CO.

May 18, 2004

RECEIVED

JUN 0 3 2004

BY:_____

William B. Matthews, Jr.
Attorney at Law
PO Box 1145
Ozark AL 36361

RE:  Insured:        David Lurie
     Policy:         14-J522138
     DOD:            January 6, 2004
     Beneficiary:    Karen Lurie

Dear Mr. Matthews:

We are in receipt of your correspondence and related claim forms submitted on behalf of David Lurie for the consideration of benefits under the above referenced accidental death insurance policy. Thank you for your assistance in providing us with this information. However, a problem has arisen in our review of this claim and we want to clearly explain our findings to you.

Our records indicate Policy 14-J522138 lapsed due to non-payment of premium on November 28, 2003. The policy does have a 31-day grace period for receiving a premium payment which expired on December 28, 2003. A further review of our records indicates a premium payment in the amount of $33.60 was received in our office on January 16, 2004. Since this payment was received for processing after the insured's date of death and expiration of the policy's grace period for receiving a premium payment, we are unable to accept this premium. Enclosed, please find a refund of this premium amount payable to the designated beneficiary, Karen Lurie, for the appropriate delivery.

In light of the above findings, a claim under this policy would not be eligible for benefits because the policy was not in force at the time of the insured's death.

Mr. Matthews, we regret we are unable to be of service to you regarding a claim, but trust we have satisfactorily explained the circumstances of the matter. Should you have any questions, please let us know.

Sincerely,

S. J. Whitaker/mjp

S. J. Whitaker
Life Benefits Division

SJW/mjp
Encl: Refund of Premium Check

*√ # 350 for 33.60*
*mailed by me &*
*paid on 1-5-04*
*posted on 1-21-04 (Cleared)* ?

**GLOBE LIFE**
AND ACCIDENT
INSURANCE CO

**Dear Certificateholder:**

I am pleased to enclose your new Globe Accidental Death Insurance certificate. The effective date of this coverage is shown on the attached certificate.

Please read over the terms, coverage and exclusions in this plan. It is a legal contract and should be kept with your other important documents.

We appreciate the opportunity to continue to serve you and your loved ones.

Very truly yours,

*Mark McAndrew*

Mark McAndrew

14-J522138
David Lurie
4181 County Road 73
Midland City AL 36350

GLOBE LIFE CENTER / OKLAHOMA CITY, OKLAHOMA 73184  1-405-270-1410

LURIE0010

# GLOBE LIFE AND ACCIDENT INSURANCE COMPANY

The passage of the federal Gramm-Leach-Bliley Act, requires all financial institutions (insurance companies are a part of this group) to provide periodically Privacy Policy Disclosure Information to their customers. The Privacy Policy Information shown below explains the Information Globe Life And Accident collects and how we use it, as well as how we protect the security and confidentiality of our customer information.

Globe Life And Accident Insurance Company cares about protecting its policyholders' privacy. In the process of providing the products and services you requested, we will collect, use and share certain information you provided. This Privacy Policy explains what information we collect and how we use that information. The policy also explains how we protect the security and confidentiality of your information.

### Collection of Information
We collect and retain the information necessary for us to provide the products and services you requested. In that process we may collect non-public information from you as a result of your completion of an insurance application or other forms and information about your transactions and experience with us.

### Sharing Information
We may share information with certain non-affiliated companies or individuals, including providers inquiring about benefits, family or legal representatives acting on your behalf, and to comply with legal or regulatory requirements. We may also share information about you with non-affiliated entities that contract with us to perform marketing and administrative services. We may also disclose your information to our affiliated companies.

### Internal Protection of Information
We restrict access to non-public personal information about you to those employees who need to know that information to provide the products and services you requested. We maintain physical, electronic and procedural safeguards to comply with federal regulations to guard this information.

### Disclosure of Our Privacy Policy
We are sending you this Notice for informational purposes and may amend this policy at any time and will update it as required. We post our current privacy notice at www.globeontheweb.com. No action is necessary if you elect to access this information electronically In that case, we may refrain from sending you this notice annually. However, if you would prefer to receive the notice by mail, please provide your name, address and policy number to Privacy Policy, P.O. Box 268850, Oklahoma City, OK 73126-8850.

### How To Contact Us To Opt-Out
If you prefer that we not share your non-public information with non-affiliated companies or individuals for any purpose other than providing the products and services you requested, please complete the opt-out form provided at www.optoutform.com or, check the box on the form below and return the completed form with your name, address and policy number(s) to Privacy Policy, P.O. Box 268850, Oklahoma City, OK 73126-8850.

IF YOU PREVIOUSLY REQUESTED TO OPT-OUT BY COMPLETING THIS FORM, PLEASE DISREGARD THIS NOTICE.

☐ Opt-Out Request    Name: _____

Address: _____ City: _____ State: _____ Zip: _____

Policy Number(s): _____

F3316



LURIE0011

JUN-21-2004 10:02AM    WILLIAM MATTHEWS 334-445-0--:    No.8007  P. 2

# GLOBE LIFE AND ACCIDENT INSURANCE COMPANY

## GLOBE LIFE CENTER * OKLAHOMA CITY, OKLAHOMA 73184

## ACCIDENTAL DEATH INSURANCE CERTIFICATE

Globe Life And Accident Insurance Company certifies that it has issued the Group Policy GLGRFP, and that the person named in the certificate is insured, subject to the terms and conditions of the group policy.

### 30 DAY RIGHT TO EXAMINE CERTIFICATE

If the Certificate Holder does not want this coverage, the certificate may be returned within 30 days after receiving it. We will then refund all premiums paid and the certificate will never have been in effect.

### ACCIDENTAL DEATH BENEFIT

Upon receipt of due proof of the Accidental Death of the Insured while coverage on such insured is in force, We will pay the Accidental Death Benefit shown in the Certificate Schedule.

### CERTIFICATE SCHEDULE

| | |
|---|---|
| CERTIFICATE NUMBER: | 14-J522138 |
| INSURED: | David Lurie |
| ISSUE AGE: | 44 |
| HOLDER: | GLOBE FAMILY SERVICES TRUST |
| CERTIFICATE EFFECTIVE DATE: | APRIL 28, 2003 |

### ACCIDENTAL DEATH BENEFIT

| | |
|---|---|
| APRIL 28, 2003 TO APRIL 27, 2029: | $100,000 |
| APRIL 28, 2029 FORWARD (AFTER AGE 70 ANNIVERSARY DATE): | $50,000 |

### PREMIUMS

| PREMIUM PERIOD | MONTHLY | QUARTERLY | SEMI-ANNUAL | ANNUAL |
|---|---|---|---|---|
| FIRST MONTH | $1.00 | ---- | ---- | ---- |
| THEREAFTER | 16.80 | 49.40 | 97.00 | 186.60 |

GLGRFC

Page 1

GLGRFC001

LURIE0012

## DEFINITIONS

**ACCIDENT:** A fortuitous event, unforeseen and unintended.

**ACCIDENTAL BODILY INJURY:** Unexpected traumatic damage to the Insured's body, of external origin.

**ACCIDENTAL DEATH:** Death due to Accidental Bodily Injury caused by an Accident occurring while the insurance is in force; the death must occur within 90 days after the date of the Accident, directly and independently of all other causes

**AGE:** The age last birthday of the Insured.

**BENEFICIARY:** A person or entity named, on a form and in a manner approved by Us, to receive insurance benefits.

**CERTIFICATE ANNIVERSARY:** Shall be determined from the Certificate Effective Date.

**EVIDENCE OF INSURABILITY:** Satisfactory proof, as determined by Us, that a person is acceptable for insurance.

**INSURED:** An eligible person who is named in the Certificate Schedule.

**HOLDER:** The legal entity named as the Holder on the cover page of the group policy.

**WE, OUR, US, or COMPANY:** Globe Life And Accident Insurance Company at Our Administrative Office in Oklahoma City, Oklahoma.

**YOU, YOUR, or YOURS:** The person to whom this certificate is issued (Also referred to as the Certificate Holder.)

## EXCLUSIONS

This certificate does not cover death caused by:

1. Disease, sickness, bodily or mental infirmity, or medical or surgical treatment of same;
2. Suicide or intentionally self-inflicted bodily injury, while sane or insane (reference to insane not applicable in Missouri);
3. Being under the influence of any drug, narcotic, poison or gas unless taken on the advice of a physician;
4. Service in the military, naval or air services of any country;
5. Participation in any speed contest;
6. Insured's intoxication (blood alcohol level of .10 percent weight by volume or higher);
7. Air travel as a pilot, student pilot or crew member;
8. Committing or attempting to commit an assault or felony;
9. Taking part in a riot, insurrection or terrorist act; or
10. Skydiving, hang gliding or hot air ballooning.

## CERTIFICATE HOLDER AND BENEFICIARY PROVISIONS

**CERTIFICATE HOLDER:** Unless provided otherwise:

a. The person who completes the enrollment form applying for insurance coverage on an Insured is the Certificate Holder. The Certificate Holder has the right to receive every benefit and exercise every right regarding the insurance under his or her certificate.

b. If the Certificate Holder dies, all rights will be vested in the Insured.

**BENEFICIARY:** The Beneficiary shall be as designated on the enrollment form to receive any Accident Death Benefits payable. If there is no Beneficiary living or named, Accidental Death Benefits will be payable to the Certificate Holder, if living; otherwise to the Certificate Holder's estate. Any payment made by Us in good faith will fully discharge Us to the extent of such payment

**CHANGE OF BENEFICIARY:** Unless You provide otherwise in writing to Us, You may change the Beneficiary during the lifetime of the Insured. Changes must be made by written request filed with Us. The change will take effect on the date the request was received, but it will not apply to payments made by Us before We accept the request in writing. We will have no liability for any action taken by Us before that acceptance.

**TERMINATION OF COVERAGE:** The coverage of any Insured shall terminate at the end of the Grace Period following any premium due date for which the Insured's required premium has not been paid. Any premium paid for any period after the date coverage terminates will not continue the Insured's coverage in force and will be returned, unless accepted by Us under the Reinstatement provision in the certificate.

GLGRFC

Page 2

GLGRFC002

LURIE0013

## PREMIUMS AND REINSTATEMENT

**PAYMENT:** Each premium is payable in advance at Our Administrative Office.

**FREQUENCY:** The first premium for each Insured is due on the Certificate Effective Date. Thereafter, each premium is due at the end of the period for which the preceding premium was paid.

**DEFAULT:** If a premium remains unpaid at the end of the grace period, the Insured's insurance will terminate.

**GRACE PERIOD:** A grace period of 31 days will be allowed each Insured for the payment of each premium after the first, during which period his or her insurance shall continue in force.

**REINSTATEMENT:** Coverage may be reinstated at any time within one year after default in premium payment, if:

    a. The Insured provides Evidence of Insurability satisfactory to Us; and

    b. All overdue premiums are paid.

## GENERAL PROVISIONS

**PAYMENTS BY THE COMPANY:** Payments by the Company are payable from our Administrative Office.

**NOTICE OF CLAIM:** Written notice of claim must be given within 20 days after Accidental Death or as soon as reasonably possible. Written notice can be given to Us at Our Administrative Office in Oklahoma City, Oklahoma. Notice should include Your name and Your Certificate Number.

**CLAIM FORMS:** When We receive the notice of claim, We will send You forms for filing proof of Accidental Death. If these forms are not given to You within 15 days. You will meet proof of Accidental Death requirements by giving Us a written statement of the nature and extent of the Accidental Death within the time limit stated in the Proof of Death provision.

**PROOF OF DEATH:** Written proof of Accidental Death must be given within 180 days after the Accidental Death of the Insured. If it was not reasonably possible to give written proof in the time required, We may not deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year from the time specified unless the claimant was legally incapable of doing so.

**TIME OF PAYMENT OF CLAIMS:** After receiving written proof of Accidental Death, We will pay all benefits then due for such death.

**AUTOPSY:** We may ask for an autopsy unless prohibited by law. We will pay for the autopsy.

**ENTIRE CONTRACT; CHANGES:** This certificate, with the group policy, enrollment form and attached papers, if any, is the entire contract between You and Us. No change in this certificate will be effective until approved by Us. This approval must be noted on or attached to this certificate.

**MISSTATEMENT OF AGE:** If there is a misstatement of age, We will adjust the benefit to reflect the correct age of the Insured

**TIME LIMIT ON CERTAIN DEFENSES:** After two years from the Certificate Effective Date, only fraudulent misstatements and non-payment of premiums may be used to void this certificate or deny any claim for Accidental Death incurred after the 2 year period.

**LEGAL ACTION:** You cannot sue Us for benefits under the group policy sooner than 60 days after We have been provided with written proof of Accidental Death as required. No such action may be brought after 3 years from the time written proof of Accidental Death is required.

**CONFORMITY WITH STATE STATUTES:** Any provision of this certificate, which, on the Certificate Effective Date, is in conflict with the laws of the state in which You reside on that date is amended to conform to the minimum requirements of such laws.

**NONPARTICIPATING:** The group policy is nonparticipating and does not share in the profits or surplus of the Company.

**NO EFFECT ON WORKER'S COMPENSATION:** The group policy does not alter any requirement for coverage by Worker's Compensation Insurance.

LURIE0014

### ENROLLMENT FOR GROUP ACCIDENTAL DEATH BENEFIT INSURANCE
#### UNDERWRITTEN BY GLOBE LIFE AND ACCIDENT INSURANCE COMPANY * OKLAHOMA CITY, OKLAHOMA

**Coverage Amount (check one)**
☒ **$100,000**
☐ Individual Plan        ☒ Family Plan (Check One)

**Name**   David Lurie

**Address**   4181 County Road 73

**City**   Midland City        **State**   AL   **Zip**   36350

**Date of Birth**  04/24/58     **Male** ☒   **Female** ☐

**Phone Number**  (334) 983-3887

**Name of Beneficiary**   Karen Lurie

**Relationship**   Wife

Please enroll the person named above for Accidental Death Coverage. I am enclosing the initial premium and understand the coverage will become effective on the date stated in the Schedule of Benefits on my Certificate. Should the enrollment form be declined, no charges will be incurred.

I also understand that the benefits will decrease by 50% on the Certificate Anniversary following the insured's 70th birthday with no change in premium.

**Signed**   *David C Lurie*                    **Date**   04/11/03
_____Applicant-Owner Signature_____

G400

LURIE0015

# GLOBE LIFE AND ACCIDENT INSURANCE COMPANY
### GLOBE LIFE CENTER * OKLAHOMA CITY, OKLAHOMA 73184

This Rider amends and is made a part of the certificate to which it is attached. It is subject to all provisions, conditions, exclusions and limitations of the certificate which are not in conflict with this Rider.

Rider Effective Date:     APRIL 28, 2003

Rider Premium:     $53.40

## FAMILY COVERAGE RIDER

If this is a Family Certificate, the following provisions apply:

### DEFINITIONS

**DEPENDENT CHILD:** Each unmarried Child under 23 years of age who is dependent on the Primary Insured for support and has the same permanent address. Child includes a step-child; a foster child; a legally adopted child; a child legally placed in the Primary Insured's home for adoption; and a child under the Primary Insured's legal guardianship. If this is an individual certificate, You must notify the Company within 60 days after the birth or adoption of a child that You want covered under this certificate so that We can change Your certificate to a Family certificate and arrange for the payment of the appropriate Family premium. A child shall cease being a Dependent Child on the first Certificate Anniversary Date following the earliest of (a) the child's 23rd birthday; (b) the child's marriage or (c) the date the child is no longer dependent on the Primary Insured. However, if a dependent child is incapable of self-sustaining employment by reason of mental retardation or physical handicap, and if such disability occurred prior to the first Certificate Anniversary following the Dependent Child's 23rd birthday, then the Dependent Child will continue to be covered under this rider for as long as such disability continues. Proof of such incapacity or disability must be furnished upon Our request, but not more often than annually.

**SPOUSE:** The Primary Insured's legal spouse, while covered under the attached certificate.

### FAMILY COVERAGE

The Accidental Death Benefit for the Spouse and any Dependent Child will be equal to a percentage of the Primary Insured's Accidental Death Benefit as of the date of the Accident, based on the Primary Insured's family composition on the date of the Accident, as set forth below:

A.  For the Spouse, the Accidental Death Benefit will be equal to: 60% of the Primary Insured's Accidental Death Benefit if there is no Dependent Child; or 50% of the Primary Insured's Accidental Death Benefit if there is one (or more) Dependent Child(ren).

B.  For each Dependent Child, the Accidental Death Benefit will be equal to: 10% of the Primary Insured's Accidental Death Benefit if there is a Spouse; or 20% of the Primary Insured's Accidental Death Benefit if there is no Spouse.

On the Certificate Anniversary following the Primary Insured's 70th birthday, the Accidental Death Benefit for each Insured will decrease by 50%.

**FAMILY COVERAGE EFFECTIVE DATE:** Coverage for the Spouse and each Dependent Child begins on the later of: (a) the Certificate Effective Date; (b) the date the Spouse or Dependent Child becomes eligible for coverage under the rider.

**TERMINATION OF FAMILY COVERAGE:** Coverage for the Spouse and each Dependent Child will end on the earliest of the following:

A.  The date the appropriate premium is not paid when due, subject to the Grace Period provision in the attached certificate;

B.  The date the individual no longer meets the definition of Spouse or Dependent Child; or

C.  The date the Primary Insured's coverage under this certificate ends.

Upon receiving notification that the Primary Insured is the sole remaining Insured under a Family Certificate, We will change the certificate to an Individual Certificate providing coverage not greater than the prior coverage and arrange for an individual premium. The individual premium will become effective on the premium due date following Our receipt of such notification.

Secretary

President

GFAMRD

LURIE0016

JAN-21- 2004 10:08AM    WILLIAM MATTHEWS 334-445-055.                  NO-807   P. 12

payment made on Jan. 4 — 33.60 V # 950
mailed on Jan. 5th, 2004
Alice Chris was killed on Jan 6th, 2004.
Received Notice from Globe on Jan.
on around 12th

( Notice generated on
Jan. 2 but not
postmarked
until Jan 7th. )

{ Check written
on Jan 4th.
mailed out
Jan 5th.
Postmark?

LURIE0017

JUL-21-2004 10:05AM    WILLIAM MATTHEWS 334-445-0850    No.900?  P. 16

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
Globe Life Center ● Oklahoma City, Oklahoma 73184 ● (405) 270-1410

RETURN THIS PORTION WITH YOUR PAYMENT

DUE DATE  11-28-03

| POLICY NUMBER | INSURED | INS.AMT. | 2 MONTHS | 3 MONTHS | 6 MONTHS | 12 MONTHS |
|---|---|---|---|---|---|---|
| 14-J522138 | DAVID LURIE | 100.000 | 33.60 | 49.40 | 97.00 | 186.60 |

CREDIT CARD PAYMENT OPTION. Charge $ 16.80 each month to my VISA/MasterCard

CARD # ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Expiration Date ☐☐☐

CARDHOLDER NAME (PRINT) _____    CARDHOLDER SIGNATURE _____

```
14-J522138    C 185
DAVID LURIE
4181 COUNTY ROAD 73
MIDLAND CITY AL 36350-4213
```

PLEASE
DO NOT
FOLD

```
GLOBE LIFE AND ACCIDENT
INSURANCE COMPANY
P C BOX 268844
OKLAHOMA CITY, OK 73126-8844
```

1140522138121128030016800044000970001866C0001100001

LURIE0018

Jur-21- 2004 10:01AM    WILLIAM MATTHEWS 334-445-0030,    Nı 8007    P. 2

792-0084 Will Phone



GLOBE LIFE AND ACCIDENT INSURANCE COMPANY

GLOBE LIFE CENTER • OKLAHOMA CITY, OKLAHOMA 73184



# This is your Globe Life coverage. Read carefully.

14-J522138
David Lurie
4181 County Road 73
Midland City AL 36350

LURIE0019

A DETACH HERE A    IMPORTANT: RETAIN THIS PORTION FOR YOUR RECORDS

## Globe Life And Accident Insurance Company
Globe Life Center ■ Oklahoma City, Oklahoma 73184

### F I N A L   N O T I C E !

| DUE DATE | POLICY NUMBER | INSURED | 2 MONTHS | 3 MONTHS | 6 MONTHS | 12 MONTHS |
|----------|---------------|---------|----------|----------|----------|-----------|
| 11-28-03 | 14J522138 | DAVID LURIE | 33.60 | 49.40 | 97.00 | 186.60 |

January 2, 2004

Dear David Lurie:

Our records show that we have not received the premium that was due on November 28, 2003. That is why we are sending this friendly reminder.

The reasons for starting this plan are the same good reasons for keeping it. Your insurance provides valuable protection and we want to make sure it is there when you need it. If you have already mailed in your payment, please accept our thanks.

If you have not had a chance to do so, please send in your payment along with the attached notice and the benefits of your policy will be reinstated provided the insured is still in good health. We must receive your payment by January 17, 2004.

*Mailed Jan. 5th, 2004*

*received by Globe Jan 16'04*

For your convenience your premiums can be charged to your VISA or MasterCard. To choose this option, please complete the Credit Card Payment Option above, sign it, and return it in the enclosed envelope. We will charge your credit card for the total amount of premium due to keep your policy in force. After that, we will charge your credit card on the due date for the amount shown above.

Anytime we can be of assistance, please call or e-mail us at CS@27014l0.com. Thank you for permitting Globe Life to provide your insurance.

Sincerely,

*Mark S. McAndrew*

Mark S. McAndrew
Chairman and
Chief Executive Officer

F-116 R5/02

LURIE0020

JUN 21 2004 10:05AM    WILLIAM MATTHEWS 334-445-0651                    NO. 9602    P. 12





LURIE0022



DATE 03/23/04     AND ACCIDENT
                  INSURANCE CO          862 05

WILLIAM B MATTHEWS JR
ATTORNEY AT LAW
P O BOX 1145
OZARK AL 36361

                    IN RE:14J522138
                    DAVID LURIE

DEAR CLAIMANT,

WE APOLOGIZE FOR THE DELAY IN BRINGING THE ABOVE INSURED'S
CLAIM TO A CONCLUSION.

IN ORDER TO EXPEDITE THE PROCESSING OF THIS CLAIM, WE HAVE
ASSIGNED THIS FILE TO AN OUTSIDE FIELD REPRESENTATIVE FOR
HANDLING.  THIS INDIVIDUAL WILL BE IN YOUR AREA SHORTLY IN
ORDER TO PERSONALLY OBTAIN THE INFORMATION NEEDED TO EVALUATE
THIS CLAIM.

YOUR PATIENCE AND UNDERSTANDING ARE APPRECIATED.

                    SINCERELY,

                    LIFE BENEFITS DIVISION

L82

LURIE0023

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
Globe Life Center ● Oklahoma City, Oklahoma 73184 ● (405) 270-1410

RETURN THIS PORTION
WITH YOUR PAYMENT
DUE DATE  1-28-04

| POLICY NUMBER | INSURED | INS. AMT. | 1 MONTH | 3 MONTHS | 6 MONTHS | 12 MONTHS |
|---|---|---|---|---|---|---|
| 14J522138 | DAVID LURIE | 100,000 | 16.80 | 49.40 | 97.00 | 186.60 |

LIFE    2E

PLEASE MAKE ANY ADDRESS CHANGES BELOW AND PROVIDE YOUR PHONE NUMBER: (___ )_____

```
14-J522138    A1113
DAVID LURIE
4181 COUNTY ROAD 73
MIDLAND CITY AL 36350-4213
```

PLEASE
DO NOT
FOLD

```
GLOBE LIFE AND ACCIDENT
INSURANCE COMPANY
P O BOX 268844
OKLAHOMA CITY, OK 73126-8844
```

01405221381201280400168000474000970001866000011000001

▲ DETACH HERE ▲  IMPORTANT: RETAIN THIS PORTION FOR YOUR RECORDS

## Globe Life And Accident Insurance Company
Globe Life Center ■ Oklahoma City, Oklahoma 73184

| DUE DATE | POLICY NUMBER | INSURED | 1 MONTH | 3 MONTHS | 6 MONTHS | 12 MONTHS |
|---|---|---|---|---|---|---|
| 1-28-04 | 14J522138 | DAVID LURIE | 16.80 | 49.40 | 97.00 | 186.60 |

January 16, 2004

Dear David Lurie:

Attached is your premium notice for the premium that is due on January 28, 2004 for your life insurance policy number 14J522138.

Please detach the premium notice and return it with your check or money order in the enclosed envelope.

If the mailing address shown on the notice is not precisely correct or if you will have a new address for future purposes, please make the necessary corrections in the space provided for this purpose.

Anytime we can be of assistance, please call or e-mail us at CS@2701410.com.  Thank you for permitting Globe Life to provide your insurance.

Sincerely,

*Mark S. McAndrew*

Mark S. McAndrew
Chairman and
Chief Executive Officer

LURIE0024

△ DETACH HERE △    IMPORTANT: RETAIN THIS PORTION FOR YOUR RECORDS.

## Globe Life And Accident Insurance Company
Globe Life Center ■ Oklahoma City, Oklahoma 73184

## F I N A L   N O T I C E !

| DUE DATE | POLICY NUMBER | INSURED | 2 MONTHS | 3 MONTHS | 6 MONTHS | 12 MONTHS |
|----------|---------------|---------|----------|----------|----------|-----------|
| 11-28-03 | 14J522138 | DAVID LURIE | 33.60 | 49.40 | 97.00 | 186.60 |

January 2, 2004

Dear David Lurie:

Our records show that we have not received the premium
that was due on November 28, 2003. That is why we are
sending this friendly reminder.

The reasons for starting this plan are the same good
reasons for keeping it. Your insurance provides valuable
protection and we want to make sure it's there when you
need it. If you have already mailed in your payment,
please accept our thanks.

If you have not had a chance to do so, please send in your
payment along with the attached notice and the benefits of
your policy will be reinstated provided the insured is
still in good health. We must receive your payment by
January 17, 2004.

For your convenience your premiums can be charged to your
VISA or MasterCard. To choose this option, please
complete the Credit Card Payment Option above, sign it,
and return it in the enclosed envelope. We will charge
your credit card for the total amount of premium due to
keep your policy in force. After that, we will charge
your credit card on the due date for the amount shown
above.

Anytime we can be of assistance, please call or e-mail us
at CS@2701410.com. Thank you for permitting Globe Life to
provide your insurance.

Sincerely,

*Mark S. McAndrew*

Mark S. McAndrew
Chairman and
Chief Executive Officer

F1116 05AU2

LURIE0025

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
Globe Life Center ● Oklahoma City, Oklahoma 73184 ● (405) 270-1410

RETURN THIS PORTION
WITH YOUR PAYMENT
DUE DATE  11-28-03

| POLICY NUMBER | INSURED | INS.AMT. | 2 MONTHS | 3 MONTHS | 6 MONTHS | 12 MONTHS |
|---|---|---|---|---|---|---|
| 14-J522138 | DAVID LURIE | 100,000 | 33.60 | 49.40 | 97.00 | 186.60 |

CREDIT CARD PAYMENT OPTION. Charge $16.80 each month to my VISA/MasterCard
CARD #                                      Expiration Date

CARDHOLDER NAME (PRINT)

CARDHOLDER SIGNATURE

14-J522138    C 185
DAVID LURIE
4181 COUNTY ROAD 73
MIDLAND CITY AL 36350-4213

GLOBE LIFE AND ACCIDENT
INSURANCE COMPANY
P O BOX 268844
OKLAHOMA CITY, OK 73126-8844

PLEASE
DO NOT
FOLD

11405221381211280300164000494000700018660001100001

LURIE0026

Policy Number: ~~CLAIM #~~
CLAIM #
C04012253

## STATEMENT OF PHYSICIAN

*is statement should be completed by the Family Physician only if any coverage was in effect less than two years prior to the Insured's 'ath*

| | |
|---|---|
| ll name of deceased? | Name David Christopher Lurie Age 45 |
| ow long have you treated the deceased? | Since January 13, 2003 |
| ere you the deceased's medical attendant or adviser fore last illness or infirmity? If so, when and for what sease? | TYPE 1 DIABETES MELLITUS |
| nen were you first consulted by deceased for the condition ich either directly or indirectly caused death? | Date: N/A By Whom: |
| as deceased referred to you by another physician within past two years? If so, name and address of referring ysician | Physician Name: C. TED PAULK MD Address: 1812 EAST MAIN ST DOTHAN AL 36301 |
| death occur in a hospital or institution? If so, give name location | N/A |
| s the deceased confined to a hospital during the past 3 rs? If so, provide name and address of the hospital | No |
| long, in your opinion, did deceased suffer from the ase or impairment that resulted in death? | N/A |

| at were the contributory causes of death? (Give as many ou can, by dates, and the duration of each.) | Disease or Impairment | Duration |
|---|---|---|
| | | |

| what other disease or impairment has the deceased red. and when? | Disease or Impairment NEUROFIBROMATOSIS HYPERLIPIDEMIA | Duration N/A 01/14/03 |

names and addresses of all other physicians or other practitioners who, to your knowledge, attended the deceased g the past five years.

| Name | Address | Disease or Impairment |
|---|---|---|
| TED PAULK MD | | PRIMARY CARE PHYSICIAN |

AKIN. O. AYODEJI                          M.D.
Physician's Name (PRINT)

Physician's Signature

1118 ROSS CLARK CIRCLE, #100
Street Address

DOTHAN                    AL                    36301
City                      State                 Zip

( 334 )  794  1148
Phone Number

LURIE0027

**EAST ALABAMA MEDICAL CENTER TOXICOLOGY DEPARTMENT**
122 North 20th Street, Opelika, AL 36801-3201, (334)741-8170

Donor Name: TOX, LURIE, DAVID C.
Date Collected: 01/06/04
Date Received: 01/09/04
Date Reported: 01/09/04
Reason For Testing: POST-ACCID.
MRO: BANKSTON, EARL (CORONER)
Client #/SS #: (3065)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

Specimen ID #: 0000
Laboratory Accession No: 04-009-0408
Client: DALE COUNTY CORONER
872 COUNTRY CLUB DRIVE
OZARK       AL 363600000
CONTACT: EARL BANKSTON
3347744551

## FORENSIC DRUG TESTING RESULTS

| | |
|---|---|
| AMPHETAMINES | NEGATIVE |
| COCAINE | NEGATIVE |
| OPIATES | NEGATIVE |
| PHENCYCLIDINE | NEGATIVE |
| MARIJUANA | NEGATIVE |
| BARBITURATES | NEGATIVE |
| BENZODIAZEPINES | NEGATIVE |
| METHADONE | NEGATIVE |
| PROPOXYPHENE | NEGATIVE |
| | SeeTable |

--------------------------------------------------------------------
FDS9 DRUG CUTOFF CONCENTRATIONS

| DRUG | SCREEN | CONFIRM |
|---|---|---|
| AMPHETAMINES | 1000 ng/mL | |
|     Amphetamine | | 500 ng/mL |
|     Methamphetamine | | 500 ng/mL |
|     MDMA | | 100 ng/mL |
|     MDA | | 100 ng/mL |
| COCAINE | 300 ng/mL | |
|     Benzoylecgonine | | 150 ng/mL |
| OPIATES | 300 ng/mL | |
|     Codeine | | 300 ng/mL |
|     Morphine | | 300 ng/mL |
|     6-acetyl-Morphine | | 10 ng/mL |
|     Hydrocodone | | 300 ng/mL |
|     Hydromorphone | | 300 ng/mL |
| PHENCYCLIDINE | 25 ng/mL | 25 ng/mL |
| MARIJUANA | 50 ng/mL | |
|     11-nor-9-carboxy-delta-9-THC | | 15 ng/mL |
| BARBITURATES | 300 ng/mL | |
|     Butabarbital | | 150 ng/mL |
|     Butalbital | | 150 ng/mL |
|     Amobarbital | | 150 ng/mL |
|     Pentobarbital | | 150 ng/mL |
|     Secobarbital | | 150 mg/mL |
|     Phenobarbital | | 150 mg/mL |
| BENZODIAZEPINES | 300 ng/mL | |
|     Nordiazepam | | 150 ng/mL |
|     Oxazepam | | 150 ng/mL |
|     Temazepam | | 150 ng/mL |
|     Lorazepam | | 150 ng/mL |
|     Flurazepam metabolite | | 150 ng/mL |
|     Alprazolam metabolite | | 75 ng/mL |
|     Triazolam metabolite | | 75 ng/mL |
| METHADONE METABOLITE | 100 ng/mL | 75 ng/mL |
| PROPOXYPHENE | 300 ng/mL | |
|     Propoxyphene metabolite | | 150 ng/mL |

CERT SCIENTIST: ALLEN VALAER

*CLAIM # CO 4012253*

**EAST ALABAMA MEDICAL CENTER TOXICOLOGY DEPARTMENT**
122 North 20th Street, Opelika, AL 36801-3201, (334)741-8170

Donor Name: TOX, LURIE, DAVID C.
Date Collected: 01/06/04
Date Received: 01/09/04
Date Reported: 01/09/04
Reason For Testing: POST-ACCID.
MRO: BANKSTON, EARL (CORONER)
Client #/SS #: (3065)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

Specimen ID #: 0000
Laboratory Accession No: 04-009-0407
Client: DALE COUNTY CORONER
872 COUNTRY CLUB DRIVE
OZARK          AL 363600000
CONTACT: EARL BANKSTON
3347744551

## FORENSIC DRUG TESTING RESULTS

BLOOD ETHANOL     NONE DETECTED
                SeeTable

------------------------------------------------------------
             BLOOD ETHANOL INTERPRETATION
------------------------------------------------------------

ETHANOL
    Reporting Limit                    0.01 g/dL
    Intoxicated(varies by state)       0.08 g/dL
    Critical Value                     >/= 0.03 g/dL

CERT SCIENTIST: ALLEN VALAER

*CLAIM # CO 4012253*

FINAL REPORT

END OF CHART     **LURIE0029**

District Attorney _DAVID EMERY_     **ALABAMA DEPARTMENT OF FORENSIC SCIENCES**     Case No. _____

Coroner _EARL BANKSTON_     **REPORT OF DEATH INVESTIGATION**     County _Dale_

DECEDENT _DAVID_  _Christopher_  _LURIE_     DOB _4-24-58_  A/R/S _45-W-M_
First          Middle          Last

Address _4181 CO. RD. 73_     _Midland city_     _36350_  (M) W S D
(Number and Street)          (City or County)          (Zip)

Occupation _Master Machinist_     Time Spent _____  Employer _____

Next of Kin _KAREN KENNEDY LURIE_     Address/Phone _4181 CO RD 73  Midland city, Al. 36350_

Relationship _WIFE_     Time Notified _9:10 A/m_ By _EARL Bankston_     Funeral Home _Southern Heritage_

Date/Time Pronounced Dead _1-6-04_     _8:40 A/m_     Death Certificate DFS _Earl Bankston_     MD/Coroner

Type of Death     Sudden in apparent good health  ✓     Violent or Unnatural  ✓     In prison, jail or police custody ____
                  Unattended by physician ____     Suspicious ____     Unusual ____
N/A S H U

| | Last Seen Alive Heard | Injury/Illness | Death/Found | DOA | DFS Notified | Police Notified | Vehicle Indicate |
|---|---|---|---|---|---|---|---|
| Date | | | | | | | Driver ____ |
| Time | | | | | | | Passenger ____ |
| | | | | | | | Where Seated ____ |
| | | | | | | | Pedestrian ____ |

| | Location | City or County | Premises (Home Work Street Etc) |
|---|---|---|---|
| Injury or Onset of Illness | _Dale Co 25_ | _Midland C'y (Del)_ | _Street._ |
| Death | | | |
| Body Found | _Dale CO 25_ | " " | " " |

Medical History (operations, illnesses, alcoholism, drug abuse, suicide attempts, etc.; birth records (infants))

| Institution and/or Physician | Address, Phone | Diagnosis |
|---|---|---|
| | | |
| | | |

DFS at Scene _NO_ _____ at _____ Hrs.     DFS L__ _____  _CLAIM # C0401 2253_     _____ Hrs.

Photos _yes_ _____ By _D.C. McGOWAN  Ast. 38_     First Officer at Scer. _____  _____ Hrs.

1° Investigator _D.C. McGOWAN_     Agency _Ast. 38_     Phone _____

2° Investigator _J. ANDERSON_     Agency _Ast. 38_     Phone _____

Suspect(s), DOB, A/R/S _____

Witnesses _____     Scene Temp _____ Humidity _____ Weather _____

Resuscitation Attempted _NO_ by EMT ____ ER ____ of _____ Drugs Given _____

Person Removing Body from Scene _Newton Rosau to Co. Morgue_  Body now (to be picked up) at _____

Description of Body

Clothed ____  Unclothed ____  Partly Clothed ✓
Body Heat ____  Body Position: On Back (circled)
R. Side ____  L. Side ____  On Front ____
Sitting ____  Arms:  Straight Flexed ____
Legs: Straight (Flexed)  Neck: Straight (Flexed)
Describe: _Body had been removed from_
_Wind Shield of Veh._

| | Nose | Mouth | Ears | Rigor | | Livor | |
|---|---|---|---|---|---|---|---|
| Blood | ✓ | ✓ | ✓ | Too Soon ____ | | None ____ | |
| Froth | | | | Jaw (1+, 2+, 3+) ____ | | Color ____ | |
| Other (sand, dirt, water, etc.) | | | | Neck ____ | | Anterior ____ | |
| | | | | Arms R ____ L ____ | | Posterior ____ | |
| Rectal temperatures at ____ min. | | | | Legs R ____ L ____ | | Lateral R ____ L ____ | |
| intervals ____ ____ ____ | | | | Inappropriate ____ | | Face R ____ L ____ | |
| | | | | Passing ____ | | Inappropriate ____ | |
| | | | | Passed ____ | | Fixed ____ | |

Means/Weapon     Revolver ____ Semi-auto ____ Shotgun ____ Rifle ____ Cal./Ga./Make/Model ____
Barrel Length ____  How Loaded ____  Shots Fired ____  Ammo Brand ____
Jacketed ____ Semi-jacketed ____ Plated ____ Bare Lead ____ Knife ____ Blade Length ____ Width (max) ____ Broken ____
Other Weapon(s) _____  Weapon(s) Found ____
Vehicle (color/year/make/model/damage) _See Accident Report_ ____  Where ____

Form DFS-18     _____  LURIE0030.

CLAIM #
C04012253

**Dothan Medical Associates, P.C.**

1118 ROSS CLARK CIRCLE, SUITE 100
DOTHAN, ALABAMA 36301-3027

*Address Service Requested*

AIM 2/27/04

Mrs. Karen Lurie
4181 County Rd. 73
Jackland City, Al 36350

363504243

Policy Number: *CLAIM #*
*CO4012253*

# STATEMENT OF PHYSICIAN

This statement should be completed by the Family Physician only if any coverage was in effect less than two years prior to the insured's death.

| | |
|---|---|
| Full name of deceased? | Name *David Christopher Lurie* Age *45* |
| How long have you treated the deceased? | *one and Half years 1½* |
| Were you the deceased's medical attendant or adviser before last illness or infirmity? If so, when and for what disease? | *last visit march 26, 03 for upper Respiratory Inf.* |
| When were you first consulted by deceased for the condition which either directly or indirectly caused death? | Date: *NO —* <br> By Whom: |
| Was deceased referred to you by another physician within the past two years? If so, name and address of referring physician. | Physician Name: *NA   NO* <br> Address: |
| Did death occur in a hospital or institution? If so, give name and location. | *NA* |
| Was the deceased confined to a hospital during the past 3 years? If so, provide name and address of the hospital. | *NO* |
| How long, in your opinion, did deceased suffer from the disease or impairment that resulted in death? | *NA* |

| What were the contributory causes of death? (Give as many as you can, by dates, and the duration of each.) | Disease or Impairment | Duration |
|---|---|---|
| | *None* | — |

| From what other disease or impairment has the deceased suffered, and when? | Disease or Impairment | Duration |
|---|---|---|
| | *None* | — |

The names and addresses of all other physicians or other practitioners who, to your knowledge, attended the deceased during the past five years.

| Name | Address | Disease or Impairment |
|---|---|---|
| *Dr. AKIN O. Ayodeji* | *Dothan Medical Assoc* <br> *1118 Ross Clark Cir-Suite 100* <br> *Dothan, AL 36301* | *Type 1 DM* |

*DR. C. TED PAULK M.D.*
Physician's Name (PRINT)

*C Ted Paulk*
Physician's Signature

*1245 Westgate Pkwy*
Street Address

*Dothan     AL     36301*
City                State          Zip

*(334) 793-9545*
Phone Number

# _____

LURIE0032

CLAIM # CO4012253



MONTICELLO AL 36? FRI 21 FEB

**FAMILY PRACTICE CLINIC OF DOTHAN, P.A.**
1812 East Main Street
Dothan, Alabama 36301-3000
dba **FIRST MED OF DOTHAN**
1245 Westgate Parkway
Dothan, Alabama 36303-2151

*ADDRESS SERVICE REQUESTED*

Karen Gwen
4181 Co Rd 73
Midland City, Al.
36350

363504+0213

LURIE0033

*√ # 350 for 33-60*
*mailed by me &*
*paid on 1-5-04 received/accepted 1-16-04*
*posted on 1-21-04 (Cleared?)*

AND ACCIDENT
INSURANCE CO

**Dear Certificateholder:**

**I am pleased to enclose your new Globe Accidental Death insurance certificate. The effective date of this coverage is shown on the attached certificate.**

**Please read over the terms, coverage and exclusions in this plan. It is a legal contract and should be kept with your other important documents.**

**We appreciate the opportunity to continue to serve you and your loved ones.**

**Very truly yours,**

*Mark McAndrew*

**Mark McAndrew**

```
14-J522138
David Lurie
4181 County Road 73
Midland City AL 36350
```

**LURIE0034**



GLOBE LIFE AND ACCIDENT INSURANCE COMPANY
GLOBE LIFE CENTER • OKLAHOMA CITY, OKLAHOMA 73184



# This is your Globe Life coverage. Read carefully.

```
14-J522138
David Lurie
4181 County Road 73
Midland City AL 36350
```

LURIE0035



# GLOBE LIFE AND ACCIDENT INSURANCE COMPANY

The passage of the federal Gramm–Leach–Bliley Act, requires all financial institutions (insurance companies are a part of this group) to provide periodically Privacy Policy Disclosure information to their customers. The Privacy Policy information shown below explains the information Globe Life And Accident collects and how we use it, as well as how we protect the security and confidentiality of our customer information.

Globe Life And Accident Insurance Company cares about protecting its policyholders' privacy. In the process of providing the products and services you requested, we will collect, use and share certain information you provided. This Privacy Policy explains what information we collect and how we use that information. The policy also explains how we protect the security and confidentiality of your information.

### Collection of Information
We collect and retain the information necessary for us to provide the products and services you requested. In that process we may collect non-public information from you as a result of your completion of an insurance application or other forms and information about your transactions and experience with us.

### Sharing Information
We may share information with certain non-affiliated companies or individuals, including providers inquiring about benefits, family or legal representatives acting on your behalf, and to comply with legal or regulatory requirements. We may also share information about you with non-affiliated entities that contract with us to perform marketing and administrative services. We may also disclose your information to our affiliated companies.

### Internal Protection of Information
We restrict access to non-public personal information about you to those employees who need to know that information to provide the products and services you requested. We maintain physical, electronic and procedural safeguards to comply with federal regulations to guard this information.

### Disclosure of Our Privacy Policy
We are sending you this Notice for informational purposes and may amend this policy at any time and will update it as required. We post our current privacy notice at www.globeontheweb.com. No action is necessary if you elect to access this information electronically. In that case, we may refrain from sending you this notice annually. However, if you would prefer to receive the notice by mail, please provide your name, address and policy number to Privacy Policy, P.O. Box 268850, Oklahoma City, OK 73126-8850.

### How To Contact Us To Opt-Out
If you prefer that we not share your non-public information with non-affiliated companies or individuals for any purpose other than providing the products and services you requested, please complete the opt-out form provided at www.optoutform.com or, check the box on the form below and return the completed form with your name, address and policy number(s) to Privacy Policy, P.O. Box 268850, Oklahoma City, OK 73126-8850.

IF YOU PREVIOUSLY REQUESTED TO OPT-OUT BY COMPLETING THIS FORM, PLEASE DISREGARD THIS NOTICE.

☐ Opt-Out Request    Name: _____

Address: _____ City: _____ State: _____ Zip: _____

Policy Number(s): _____

F331

LURIE0036

# GLOBE LIFE AND ACCIDENT INSURANCE COMPANY

## GLOBE LIFE CENTER · OKLAHOMA CITY, OKLAHOMA 73184

## ACCIDENTAL DEATH INSURANCE CERTIFICATE

Globe Life And Accident Insurance Company certifies that it has issued the Group Policy GLGRFP, and that the person named in the certificate is insured, subject to the terms and conditions of the group policy.

### 30 DAY RIGHT TO EXAMINE CERTIFICATE

If the Certificate Holder does not want this coverage, the certificate may be returned within 30 days after receiving it. We will then refund all premiums paid and the certificate will never have been in effect.

### ACCIDENTAL DEATH BENEFIT

Upon receipt of due proof of the Accidental Death of the Insured while coverage on such Insured is in force, We will pay the Accidental Death Benefit shown in the Certificate Schedule.

---

## CERTIFICATE SCHEDULE

| | |
|---|---|
| CERTIFICATE NUMBER: | 14–J522138 |
| INSURED: | David Lurie |
| ISSUE AGE: | 44 |
| HOLDER: | GLOBE FAMILY SERVICES TRUST |
| CERTIFICATE EFFECTIVE DATE: | APRIL 28, 2003 |

### ACCIDENTAL DEATH BENEFIT

| | |
|---|---|
| APRIL 28, 2003 TO APRIL 27, 2029: | $100,000 |
| APRIL 28, 2029 FORWARD (AFTER AGE 70 ANNIVERSARY DATE): | $50,000 |

---

## PREMIUMS

| PREMIUM PERIOD | MONTHLY | QUARTERLY | SEMI–ANNUAL | ANNUAL |
|---|---|---|---|---|
| FIRST MONTH | $1.00 | ----- | ----- | ----- |
| THEREAFTER | 16.80 | 49.40 | 97.00 | 186.60 |

LURIE0037



## DEFINITIONS

**ACCIDENT:** A fortuitous event, unforeseen and unintended.

**ACCIDENTAL BODILY INJURY:** Unexpected traumatic damage to the Insured's body, of external origin.

**ACCIDENTAL DEATH:** Death due to Accidental Bodily Injury caused by an Accident occurring while the Insurance is in force; the death must occur within 90 days after the date of the Accident, directly and independently of all other causes.

**AGE:** The age last birthday of the Insured.

**BENEFICIARY:** A person or entity named, on a form and in a manner approved by Us, to receive insurance benefits.

**CERTIFICATE ANNIVERSARY:** Shall be determined from the Certificate Effective Date.

**EVIDENCE OF INSURABILITY:** Satisfactory proof, as determined by Us, that a person is acceptable for Insurance.

**INSURED:** An eligible person who is named in the Certificate Schedule.

**HOLDER:** The legal entity named as the Holder on the cover page of the group policy.

**WE, OUR, US, or COMPANY:** Globe Life And Accident Insurance Company at Our Administrative Office in Oklahoma City, Oklahoma.

**YOU, YOUR, or YOURS:** The person to whom this certificate is issued (Also referred to as the Certificate Holder.)

## EXCLUSIONS

This certificate does not cover death caused by:

1. Disease, sickness, bodily or mental infirmity, or medical or surgical treatment of same;
2. Suicide or intentionally self-inflicted bodily injury, while sane or insane (reference to insane not applicable in Missouri);
3. Being under the influence of any drug, narcotic, poison or gas unless taken on the advice of a physician;
4. Service in the military, naval or air services of any country;
5. Participation in any speed contest;
6. Insured's intoxication (blood alcohol level of .10 percent weight by volume or higher);
7. Air travel as a pilot, student pilot or crew member;
8. Committing or attempting to commit an assault or felony;
9. Taking part in a riot, insurrection or terrorist act; or
10. Skydiving, hang gliding or hot air ballooning.

## CERTIFICATE HOLDER AND BENEFICIARY PROVISIONS

**CERTIFICATE HOLDER:** Unless provided otherwise:

    a. The person who completes the enrollment form applying for insurance coverage on an Insured is the Certificate Holder. The Certificate Holder has the right to receive every benefit and exercise every right regarding the insurance under his or her certificate.

    b. If the Certificate Holder dies, all rights will be vested in the Insured.

**BENEFICIARY:** The Beneficiary shall be as designated on the enrollment form to receive any Accidental Death Benefits payable. If there is no Beneficiary living or named, Accidental Death Benefits will be payable to the Certificate Holder, if living; otherwise to the Certificate Holder's estate. Any payment made by Us in good faith will fully discharge Us to the extent of such payment.

**CHANGE OF BENEFICIARY:** Unless You provide otherwise in writing to Us, You may change the Beneficiary during the lifetime of the Insured. Changes must be made by written request filed with Us. The change will take effect on the date the request was received, but it will not apply to payments made by Us before We accept the request in writing. We will have no liability for any action taken by Us before that acceptance.

**TERMINATION OF COVERAGE:** The coverage of any Insured shall terminate at the end of the Grace Period following any premium due date for which the Insured's required premium has not been paid. Any premium paid for any period after the date coverage terminates will not continue the Insured's coverage in force and will be returned, unless accepted by Us under the Reinstatement provision in the certificate.

LURIE0038

## PREMIUMS AND REINSTATEMENT

**PAYMENT:** Each premium is payable in advance at Our Administrative Office.

**FREQUENCY:** The first premium for each Insured is due on the Certificate Effective Date. Thereafter, each premium is due at the end of the period for which the preceding premium was paid.

**DEFAULT:** If a premium remains unpaid at the end of the grace period, the Insured's insurance will terminate.

**GRACE PERIOD:** A grace period of 31 days will be allowed each Insured for the payment of each premium after the first, during which period his or her insurance shall continue in force.

**REINSTATEMENT:** Coverage may be reinstated at any time within one year after default in premium payment, if:

    a. The Insured provides Evidence of Insurability satisfactory to Us; and

    b. All overdue premiums are paid.

## GENERAL PROVISIONS

**PAYMENTS BY THE COMPANY:** Payments by the Company are payable from our Administrative Office.

**NOTICE OF CLAIM:** Written notice of claim must be given within 20 days after Accidental Death or as soon as reasonably possible. Written notice can be given to Us at Our Administrative Office in Oklahoma City, Oklahoma. Notice should include Your name and Your Certificate Number.

**CLAIM FORMS:** When We receive the notice of claim, We will send You forms for filing proof of Accidental Death. If these forms are not given to You within 15 days, You will meet proof of Accidental Death requirements by giving Us a written statement of the nature and extent of the Accidental Death within the time limit stated in the Proof of Death provision.

**PROOF OF DEATH:** Written proof of Accidental Death must be given within 180 days after the Accidental Death. If it was not reasonably possible to give written proof in the time required, We may not deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year from the time specified unless the claimant was legally incapable of doing so.

**TIME OF PAYMENT OF CLAIMS:** After receiving written proof of Accidental Death, We will pay all benefits then due for such death.

**AUTOPSY:** We may ask for an autopsy unless prohibited by law. We will pay for the autopsy.

**ENTIRE CONTRACT, CHANGES:** This certificate, with the group policy, enrollment form and attached papers, if any, is the entire contract between You and Us. No change in this certificate will be effective until approved by Us. This approval must be noted on or attached to this certificate.

**MISSTATEMENT OF AGE:** If there is a misstatement of age, We will adjust the benefit to reflect the correct age of the Insured.

**TIME LIMIT ON CERTAIN DEFENSES:** After two years from the Certificate Effective Date, only fraudulent misstatements and non-payment of premiums may be used to void this certificate or deny any claim for Accidental Death incurred after the 2 year period.

**LEGAL ACTION:** You cannot sue Us for benefits under the group policy sooner than 60 days after We have been provided with written proof of Accidental Death as required. No such action may be brought after 3 years from the time written proof of Accidental Death is required.

**CONFORMITY WITH STATE STATUTES:** Any provision of this certificate, which, on the Certificate Effective Date, is in conflict with the laws of the state in which You reside on that date is amended to conform to the minimum requirements of such laws.

**NONPARTICIPATING:** The group policy is nonparticipating and does not share in the profits or surplus of the Company.

**NO EFFECT ON WORKER'S COMPENSATION:** The group policy does not alter any requirement for coverage by Worker's Compensation Insurance.

LURIE0039



**ENROLLMENT FOR GROUP ACCIDENTAL DEATH BENEFIT INSURANCE
UNDERWRITTEN BY GLOBE LIFE AND ACCIDENT INSURANCE COMPANY * OKLAHOMA CITY, OKLAHOMA**

**Coverage Amount (check one)**
☒ **$100,000**
☐ **Individual Plan**     ☒ **Family Plan (Check One)**

**Name**    David Lurie

**Address**    4181 County Road 73

**City**    Midland City              **State** **AL**    **Zip**    36350

**Date of Birth** 04/24/58    **Male** ☒    **Female** ☐

**Phone Number** (334) 983-3887

**Name of Beneficiary** Karen Lurie

**Relationship** Wife

**Please enroll the person named above for Accidental Death Coverage. I am enclosing the initial
premium and understand the coverage will become effective on the date stated in the Schedule
of Benefits on my Certificate. Should the enrollment form be declined, no charges will be
incurred.**

**I also understand that the benefits will decrease by 50% on the Certificate Anniversary following
the Insured's 70th birthday with no change in premium.**

**Signed**    *David C. Lurie*                **Date**    04/11/03
**Applicant-Owner Signature**

**G400**

LURIE0040

# GLOBE LIFE AND ACCIDENT INSURANCE COMPANY
## GLOBE LIFE CENTER * OKLAHOMA CITY, OKLAHOMA 73184

This Rider amends and is made a part of the certificate to which it is attached. It is subject to all provisions, conditions, exclusions and limitations of the certificate which are not in conflict with this Rider.

Rider Effective Date:    APRIL 28, 2003

Rider Premium:    $53.40

## FAMILY COVERAGE RIDER

If this is a Family Certificate, the following provisions apply:

### DEFINITIONS

**DEPENDENT CHILD:** Each unmarried Child under 23 years of age who is dependent on the Primary Insured for support and has the same permanent address. Child includes a step-child; a foster child; a legally adopted child; a child legally placed in the Primary Insured's home for adoption; and a child under the Primary Insured's legal guardianship. If this is an Individual certificate, You must notify the Company within 60 days after the birth or adoption of a child that You want covered under this certificate so that We can change Your certificate to a Family certificate and arrange for the payment of the appropriate Family premium. A child shall cease being a Dependent Child on the first Certificate Anniversary Date following the earliest of (a) the child's 23rd birthday; (b) the child's marriage or (c) the date the child is no longer dependent on the Primary Insured. However, if a dependent child is incapable of self-sustaining employment by reason of mental retardation or physical handicap, and if such disability occurred prior to the first Certificate Anniversary following the Dependent Child's 23rd birthday, then the Dependent Child will continue to be covered under this rider for as long as such disability continues. Proof of such incapacity or disability must be furnished upon Our request, but not more often than annually.

**SPOUSE:** The Primary Insured's legal spouse, while covered under the attached certificate.

### FAMILY COVERAGE

The Accidental Death Benefit for the Spouse and any Dependent Child will be equal to a percentage of the Primary Insured's Accidental Death Benefit as of the date of the Accident, based on the Primary Insured's family composition on the date of the Accident, as set forth below:

A.  For the Spouse, the Accidental Death Benefit will be equal to: 60% of the Primary Insured's Accidental Death Benefit if there is no Dependent Child; or 50% of the Primary Insured's Accidental Death Benefit if there is one (or more) Dependent Child(ren).

B.  For each Dependent Child, the Accidental Death Benefit will be equal to: 10% of the Primary Insured's Accidental Death Benefit if there is a Spouse; or 20% of the Primary Insured's Accidental Death Benefit if there is no Spouse.

On the Certificate Anniversary following the Primary Insured's 70th birthday, the Accidental Death Benefit for each Insured will decrease by 50%.

**FAMILY COVERAGE EFFECTIVE DATE:** Coverage for the Spouse and each Dependent Child begins on the later of: (a) the Certificate Effective Date; (b) the date the Spouse or Dependent Child becomes eligible for coverage under the rider.

**TERMINATION OF FAMILY COVERAGE:** Coverage for the Spouse and each Dependent Child will end on the earliest of the following:

A.  The date the appropriate premium is not paid when due, subject to the Grace Period provision in the attached certificate;

B.  The date the individual no longer meets the definition of Spouse or Dependent Child; or

C.  The date the Primary Insured's coverage under this certificate ends.

Upon receiving notification that the Primary Insured is the sole remaining Insured under a Family Certificate, We will change the certificate to an Individual Certificate providing coverage not greater than the prior coverage and arrange for an Individual premium. The Individual premium will become effective on the premium due date following Our receipt of such notification.

*Parry M Hutchison*
**Secretary**

*Mark M<sup>c</sup>Andrew*
**President**

GFAMRD

LURIE0041



## Xpand your coverage ith our Family Plan.

you choose the Family Plan, the principal nefit for the spouse and any dependent ild will be equal to a percentage of the imary insured's principal benefit as of the te of the accident. This is based on the sured's family composition on the same te. It works like this ...

For the spouse, the principal benefit will be equal to 60% of the primary insured's principal benefit if there is no dependent child; or 50% if there is one or more dependent children.

For each dependent child, the principal benefit will be equal to 10% of the primary insured's principal benefit if there is a spouse, or 20% if there is no spouse.

---

### The Power Behind Every Globe Life Plan

Globe Life And Accident Insurance Company has been providing affordable life and health insurance since 1951. Today, Globe has over $30 billion of life insurance in force and over 1.4 billion in assets. With over 2.5 million policies in force, Globe Life is dedicated to providing the very best policyholder service available.

Globe continues to receive a national rating of an A+ Superior from independent insurance analysts. A.M. Best Company. This rating is the second-highest awarded out of thirteen possible rates based on Globe's financial strength, management skill and integrity.




Globe Life And Accident Insurance Company
Globe Life Center
Oklahoma City, Oklahoma 73184
405-270-1410

Policy Form # GLCRFC
May not be available in some states.

F3/31 R1/03

---



Accidental Death Protection Plan

Up to $25,000 of Added Financial Security



LURIE0042

E. 1

# Are You Financially Prepared?

*If a fatal accident takes your life or the life of a family member, are you prepared? Death from accidents are sudden and unexpected. They cause tremendous emotional and financial grief for the surviving family members.*

## Up To $250,000 Of Added Security

The Accidental Death Protection Plan is an accidental death plan that provides up to $250,000 for a covered accidental death.

Your coverage is guaranteed, regardless of health or occupation, if you are between the ages of 18 and 69. There are no long forms to fill out and no medical exams are required. Protecting your family is that easy.

## Can You Afford To Be Without This Plan?

The premiums are shown below.

| Amount Of Coverage* | Monthly Premium Individual Plan | Family Plan |
|---|---|---|
| $50,000 | $ 6.00 | $8.40 |
| $100,000 | 12.00 | 16.80 |
| $150,000 | 18.00 | 25.20 |
| $200,000 | 24.00 | 33.60 |
| $250,000 | 30.00 | 42.00 |

These affordable premiums are guaranteed to never increase. The benefits are also guaranteed to never be reduced until age 70–at which time, they are reduced 50%.

*The coverage amount or principal benefit refers to the Primary Insured's accidental death benefit.



## Look At These Facts...

According to the National Safety Council's 2001 Injury Facts, there are some important statistics you should know about.

➤ One American dies every five minutes as the result of an accident.

➤ Accidents are the fifth leading cause of death in the United States.

➤ Accidents are the leading cause of death for people ages 1 to 34.

➤ One death occurs every 12 minutes as the result of a motor vehicle accident.

➤ Accidents claim the lives of 11 Americans every hour, every day of the year.

LURIE0043



**Globe Life And Accident Insurance Co.**
Globe Life Center
Oklahoma City, Oklahoma 73184

David, up to $30,000 of security is available to you
at rates not available to the general public!

☑ $1* begins coverage          ☑ No physical exam
☑ Benefits are paid tax-free   ☑ No-risk money-back guarantee

```
************** AUTOCR ** R-003
    A 72   1675
David Lurie
4181 County Road 73
Midland City   AL   36350-4213
```





**Globe Life And Accident Insurance Co.**
Globe Life Center
Oklahoma City, Oklahoma 73184

**CHANGE SERVICE REQUESTED**

## *Now Available ... $30,000 Of Guaranteed Protection!*

```
#BVNMKQK ***AUTO** 3-DIGIT 363
#9510070007711440# U 65   944
David Lurie
4181 County Road 73
Midland City   AL   36350-4213
```

LURIE0044



Globe Life And Accident Insurance Company
Globe Life Center
Oklahoma City, Oklahoma 73184

\*\*\*\*\*\*\*\*\*\*\*\*\*AUTO\*\* 3-DIGIT 363
A 101  2395
David Lurie
4181 County Road 73
Midland City  AL  36350-4213

PRES
STAN

LURIE0045



GLOBE LIFE

AND ACCIDENT
INSURANCE CO.



PRESORTED
STANDARD

JUL 1 '04

U.S. POSTAGE
= 0.145

# YOU'RE INVITED!

```
************** AUTOCR ** R-003
     A 85   5517
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0046

 **Globe Life And Accident Insurance Co.**
Globe Life Center
Oklahoma City, Oklahoma 73184



David, up to $30,000 of security is available to you
at rates not available to the general public!

☑ $1* begins coverage            ☑ No physical exam
☑ Benefits are paid tax-free      ☑ No-risk money-back guarantee

************** AUTOCR ** R-003
   A 136    8493
David Lurie
4181 County Road 73
Midland City  AL  36350-4213

---

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
GLOBE LIFE CENTER, OKLAHOMA CITY, OKLAHOMA 73184

**CHANGE SERVICE REQUESTED**





**GLOBE LIFE AND ACCIDENT INSU**

* * * * * * * * * * * *
You are one of a select group nationwide
who can take advantage of this
opportunity ... please reply today.
* * * * * * * * * * * * * *

#BYNMKQK ***AUTO** 3-DIGIT 363
#972107000746266#  A 131   1708
David Lurie
4181 County Road 73
Midland City  AL  36350-4213

LURIE0047



Globe Life And Accident Insurance Company
Globe Life Center
Oklahoma City, Oklahoma 73184

\*\*\*\*\*\*\*\*\*\*\*\*AUTO\*\* 3-DIGIT 363
      A 115      3327
David Lurie
4181 County Road 73
Midland City AL 36350-4213



STANDARD

LURIE0048



**GLOBE LIFE** AND ACCIDENT INSURANCE CO.



PRESORTED STANDARD

# YOU'RE INVITED!

```
************AUTO** 3-DIGIT 363
   X 113    126
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0049

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
GLOBE LIFE CENTER, OKLAHOMA CITY, OKLAHOMA 73184

PRESORTED
STANDARD

U S POSTAGE
$ 0 1 4 5



**GLOBE LIFE AND ACCIDENT IN**

\* \* \* \* \* \* \* \* \* \* \* \* \*
You are one of a select group nationwide
who can take advantage of this
opportunity ... please reply today.
\* \* \* \* \* \* \* \* \* \* \* \* \*



\*\*\*\*\*\*\*\*\*\*\*\*AUTO\*\* 3-DIGIT 363
A 123    5257
David Lurie
4181 County Road 73
Midland City  AL  36350-4213

LURIE0050



Globe Life And Accident Insurance Co.
Globe Life Center
Oklahoma City, Oklahoma 73184



**CHANGE SERVICE REQUESTED**

# *Now Available ... $30,000 Of Guaranteed Protection!*

```
************** AUTOCR ** R-003
      A 96   2727
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

---



Globe Life And Accident Insurance Co.
Globe Life Center
Oklahoma City, Oklahoma 73184



*example of Globe correspondance I am still recieving.*

```
    David, up to $30,000 of security is available to you
    at rates not available to the general public!
```
☑ **$1* begins coverage**          ☑ **No physical exam**
☑ **Benefits are paid tax-free**   ☑ **No-risk money-back guarantee**

```
***********AUTO** 3-DIGIT 363
      A 108   3350
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0051

☐ **$5,000,** ☐ **$10,000,** ☐ **$20,000 or** ☐ **$30,000**

**The Choice Is Yours.**



PRESORTED
STANDARD

U.S. POSTAGE

```
***********AUTO** 3-DIGIT 363
     A 120    5375
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

**LURIE0052**



# Up To $250,000
## Now Available!

PRESORTED
STANDARD

U.S. POSTAGE
$0.148

OKLAHOMA CITY
JAN '05
OK

************AUTO** 3-DIGIT 363
A 125    1198
David Lurie
4181 County Road 73
Midland City, AL  36350-4213

Globe Life Center
Oklahoma City, OK 73184

## IMPORTANT FINANCIAL DOCUMENTS

☑ $1* Application

**Reply within 30 days**

☑ Tax-Free Benefits

☑ Money-Back Guarantee

☑ Signature Required

Express Delivery

```
**************AUTO** 3-DIGIT 363
      W 39    1138
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```





PRESORTED STANDARD

U.S POSTAGE

# YOU'RE INVITED!

```
**************AUTO** 3-DIGIT 363
     A 109    3337
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0054



**Globe Life And Accident Insurance Co.**
Globe Life Center
Oklahoma City, Oklahoma 73184



PRESORTED
STANDARD

U.S. POSTAGE
= 0 . 1 4 5

## *Now Available ... $30,000 Of Guaranteed Protection!*

```
***********AUTO** 3-DIGIT 363
    A 110   3689
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0055



Globe Life And Accident Insurance Company
Globe Life Center
Oklahoma City, Oklahoma 73184

*************** AUTOCR ** R-003
A 75 4583
David Lurie
4181 County Road 73
Midland City   AL   36350-4213

PRESORTED
STANDARD



LURIE0056

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
GLOBE LIFE CENTER, OKLAHOMA CITY, OKLAHOMA 73184.





***********AUTO** 3-DIGIT 363
   A 106   3328
David Lurie
4181 County Road 73
Midland City, AL  36350-4213

□ $5,000, □ $10,000, □ $20,000 or □ $30,000

## The Choice Is Yours.

************ AUTOCR ** R-003
   A 115   5458
David Lurie
4181 County Road 73
Midland City  AL  36350-4213

LURIE0057



Globe Life Center
Oklahoma City, OK 73184

PRESORTED
STANDARD

U.S. POSTAGE
= 0.145
OKLAHOMA CITY
OK
APR 2 '05

IMPORTANT FINANCIAL DOCUMENTS

Reply within
30 days

☑ $1* Application
☑ Tax-Free Benefits
☑ Money-Back Guarantee
☑ Signature Required

Express
Delivery

****************AUTO** 3-DIGIT 363
A 105    3043
David Lurie
4181 County Road 73
Midland City AL  36350-4213

LURIE0058



PRESORTED
STANDARD

U.S. POSTAGE
20145

**************AUTO** 3-DIGIT 363
Z  81    945
David Lurie
4181 County Road  73
Midland City  AL  36350-4213



Globe Life And Accident Insurance Company
Globe Life Center
Oklahoma City, Oklahoma 73184

GLOBE LIFE



$30,000

LURIE0059

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
GLOBE LIFE CENTER, OKLAHOMA CITY, OKLAHOMA 73184

**CHANGE SERVICE REQUESTED**



# YOU'RE INVITED!

```
‖BYNMKQK ***** AUTOCR ** R-003
‖A107070006831781‖   Z 73   2837
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

---



**Globe Life And Accident Insurance Company**
Globe Life Center
Oklahoma City, Oklahoma 73184



David, up to $30,000 of security is available to you
at rates not available to the general public!

☑ $1* begins coverage      ☑ No physical exam
☑ Benefits are paid tax-free  ☑ No-risk money-back guarantee

```
***********AUTO** 3-DIGIT 363
     A 106   3340
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0060

Globe Life And Accident Insurance Co.
Globe Life Center
Oklahoma City, Oklahoma 73184

GLOBE LIFE



PRESORTED
STANDARD

U.S.POSTAGE
≡ 0 . 1 4 5

*Now Available ... $30,000 Of Guaranteed Protection!*

```
************AUTO** 3-DIGIT 363
     A 114    3313
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

---

Globe Life Center
Oklahoma City, OK 73184



PRESORTED
STANDARD

U.S.POSTAGE
≡ 0 . 1 4 5

**IMPORTANT FINANCIAL DOCUMENTS**

☑ **$1* Application**

☑ **Tax-Free Benefits**

☑ **Money-Back Guarantee**

☑ **Signature Required**

**Reply within 30 days**

Express
Delivery

```
************AUTO** 3-DIGIT 363
     A 113    3045
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

**LURIE0061**

☐$5,000, ☐$10,000, ☐$20,000 or ☐$30,000

## The Choice Is Yours.



```
************** AUTOCR ** R-003
    A 126    5453
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```





# YOU'RE INVITED!

```
***********AUTO** 3-DIGIT 363
    A 113    3347
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0062

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
GLOBE LIFE CENTER, OKLAHOMA CITY, OKLAHOMA 73184





## GLOBE LIFE AND ACCIDENT I

* * * * * * * * * * * *

You are one of a select group nationwide
who can take advantage of this
opportunity ... please reply today.

* * * * * * * * * * * *



```
************** AUTOCR ** R-003
     A 120    4954
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```



Globe Life And Accident Insurance Company
Globe Life Center
Oklahoma City, Oklahoma 73184



Millions of parents and grandparents have responded to this
valuable offer featuring these guaranteed benefits ...

☑ $1* easy enrollment          ☑ Rates never increase
☑ Up to $25,000 of coverage    ☑ No-risk money-back guarantee

```
************AUTO** 3-DIGIT 363
     A 168    9817
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0063



**Globe Life And Accident Insurance Co.**
Globe Life Center
Oklahoma City, Oklahoma 73184



PRESORTED
STANDARD

U.S. POSTAGE

# *Now Available ... $150,000 Of Guaranteed Protection!*

### *Rates as low as $3.59 per month*

```
************AUTO** 3-DIGIT 363
    Y 55    1348
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

---



**Globe Life And Accident Insurance Company**
Globe Life Center
Oklahoma City, Oklahoma 73184



PRESORTED
STANDARD

U.S. POSTAGE

David, up to $150,000 of security is available to
you at rates not available to the general public!

☑ **$1\* begins coverage**      ☑ **No-risk money-back guarantee**
☑ **Benefits are paid tax-free**   ☑ **Rates as low as $3.59 a month**

```
************AUTO** 3-DIGIT 363
    A 99    2602
David Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0064



Globe Life And Accident Insurance Co.
Globe Life Center
Oklahoma City, Oklahoma 73184

PRSRT STD
U.S. POSTAGE
PAID
OKLA. CITY, OK
PERMIT 447

David, because of your association with Globe Life
since 1998, you are one of a select group nationwide
who can now enroll for up to $30,000 of guaranteed
financial protection at an affordable rate!

***************** AUTOCR ** R-003
A 78    5999
David Lurie
4181 County Road 73
Midland City AL  36350-4213

LURIE0065



**Globe Life And Accident Insurance Co.**
Globe Life Center
Oklahoma City, Oklahoma 73184

PRESORTED STANDARD

Millions of parents and grandparents have responded to this
valuable offer featuring these guaranteed benefits ...

☑ $1* easy enrollment              ☑ Rates never increase
☑ Up to $25,000 of coverage        ☑ No-risk money-back guarantee

```
************* AUTOCR ** R-003
   A 110    4337
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213
```



**Globe Life And Accident Insurance Company**
Globe Life Center
Oklahoma City, Oklahoma 73184



PRESORTED STANDARD

Millions of parents and grandparents have responded to this
valuable offer featuring these guaranteed benefits ...

☑ $1* easy enrollment              ☑ Rates never increase
☑ Up to $25,000 of coverage        ☑ No-risk money-back guarantee

```
************* AUTOCR ** R-003
   A 131    8385
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0066



Globe Life And Accident Insurance Company
Globe Life Center
Oklahoma City, Oklahoma 73184

**MILLIONS OF PARENTS AND GRANDPARENTS**
**CAN'T BE WRONG ... FIND OUT HOW THIS**
**VALUABLE INFORMATION CAN**
**BENEFIT YOUR CHILDREN AND GRANDCHILDREN**
**FOR THE REST OF THEIR LIVES!**

```
*************** AUTO*CR ** R-003
    A 140   8599
Mr. and Mrs Lurie
4181 County Road 73
Midland City, AL  36350-4213
```



PRSRT STD
U.S. POSTAGE
**PAID**
WACO, TX
PERMIT 363

LURIE0067





PARENTS & GRANDPARENTS
# YOU'RE INVITED!

```
*************** AUTOCR ** R-003
   A 115    6207
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213
```





**GLOBE LIFE AND ACCIDENT**

```
*  *  *  *  *  *  *  *  *  *  *  *  *
   Parents and Grandparents, here is
important information for your children
 or grandchildren that millions of
    families have responded to ...
*  *  *  *  *  *  *  *  *  *  *  *  *
```



```
************AUTO** 3-DIGIT 363
   A 111    3301
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0068





# PARENTS & GRANDPARENTS
# YOU'RE INVITED!

```
***********AUTO** 3-DIGIT 363
    A 122   5097
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213
```





* * * * * * * * * * * *
Parents and Grandparents, here is
important information for your childre
or grandchildren that millions of
families have responded to ...
* * * * * * * * * * * * *



```
***********AUTO** 3-DIGIT 363
    A 126   5797
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0069



Globe Life And Accident Insurance Co.
Globe Life Center
Oklahoma City, Oklahoma 73184



MILLIONS of parents and grandparents have responded to this
valuable offer featuring these guaranteed benefits ...

☑ $1* easy enrollment                    ☑ Rates never increase
☑ Up to $25,000 of coverage             ☑ No-risk money-back guarantee

A 136    9293
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213

---

GLOBE LIFE AND ACCIDENT INSURANCE COMPANY
GLOBE LIFE CENTER, OKLAHOMA CITY, OKLAHOMA 73184



* * * * * * * * * * * * * * * *
Parents and Grandparents, here is
important information for your children
or grandchildren that millions of
families have responded to ...
* * * * * * * * * * * * * * * *



*************** AUTOCR ** R-003
A 135    9624
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213

LURIE0070



# FREE Child Safe Kit
# Offer Enclosed!

PRESORTED
STANDARD



U.S POSTAGE
$0.145



* * * * * * * * * * * * * *
Parents and Grandparents, here is
important information for your children
or grandchildren that millions of
families have responded to ...
* * * * * * * * * * * * * *

*************** AUTOCR ** R=003
A 101   4232
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213

**Globe Life And Accident Insurance Co.**
Globe Life Center
Oklahoma City, Oklahoma 73184

PRSRT STD
U.S. POSTAGE
**PAID**
WACO, TX
PERMIT 363

David, because of your association with Globe
Life, up to $250,000 of valuable coverage is now
available to you. Complete details are inside.
Please take a few minutes to reply today!

************AUTO** 3-DIGIT 363
A 123   1490
David Lurie
4181 County Road 73
Midland City  AL  36350-4213

LURIE0071



Globe Life And Accident Insurance Company
Globe Life Center
Oklahoma City, Oklahoma 73184

Have you heard?
Find out what millions
of parents and grandparents
have discovered ...

************* AUTOCR ** R-003
A 113   6127
Mr. and Mrs. Lurie
4181 County Road 73
Midland City   AL   36350-4213
llllllllllllllllllllllllllllllllllllllllllllllllll



Example
of
additional
Globe offers
AFTER my
husband's death.
Kay



PRESORTED
STANDARD

LURIE0072



**Child Safe Kit**

# FREE Child Safe Kit
# Offer Enclosed!



PRESORTED STANDARD



## GLOBE LIFE AND ACCIDENT I

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Parents and Grandparents, here is
important information for your children
or grandchildren that millions of
families have responded to ...
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

```
*************** AUTOCR ** R-003
  A 104   4190
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213
```





PRESORTED STANDARD

Up to $25,000 of protection is now available for
your children or grandchildren. $1* is all you
need to start a lifetime of protection with
guaranteed premiums that never increase.

```
*************** AUTOCR ** R-003
WQX4KL1812 #0000 0380 3325   A 143
Mr. and Mrs. Lurie
4181 County Road 73
Midland City  AL  36350-4213
```

LURIE0073





Discover why millions of parents and grandparents have
chosen the Young American Plan for their children and
grandchildren. It is now available to you with up to $25,000
of security at rates that are locked in for life!

*************AUTO** 3-DIGIT 363
    A 102   598
Mr. and Mrs. Lurie
4181 County Road 73
Midland City   AL   36350-4213





Discover why millions of parents and grandparents have
chosen the Young American Plan for their children and
grandchildren. It is now available to you with up to $25,000
of security at rates that are locked in for life!

************** AUTOCR ** R-003
    A 125   2866
Mr. and Mrs. Lurie
4181 County Road 73
Midland City   AL   36350-4213

LURIE0074

# ☐$5,000, ☐$10,000, ☐$20,000 or ☐$30,000
# The Choice Is Yours.



```
***********AUTO** 3-DIGIT 363
    A 117    5101
David Lurie
4181 County Road 73
Midland City   AL   36350-4213
```



**Globe Life And Accident Insurance Co.**
Globe Life Center
Oklahoma City, Oklahoma 73184



PRSRT STD
U.S. POSTAGE
**PAID**
OKLA. CITY, OK
PERMIT 447

David, because of your association with Globe Life
since 1998, you are one of a select group nationwide
who can now enroll for up to $30,000 of guaranteed
financial protection at an affordable rate!

```
***********AUTO** 3-DIGIT 363
    X 68    975
David Lurie
4181 County Road 73
Midland City   AL   36350-4213
```

LURIE0075

# WILLIAM B. MATTHEWS, JR.
## ATTORNEY AT LAW

141 EAST REYNOLDS STREET
P.O. BOX 1145
OZARK, ALABAMA 36361

OZARK OFFICE: 334-774-8804
TOLL FREE:    1-800-627-1631
FAX:         334-445-0830

DOTHAN OFFICE: 334-792-0084
TOLL FREE:    1-877-496-9725
VOICE MAIL:   334-797-8804

March 2, 2004

L. S. Lawson
Life Benefits Division
Globe Life & Accident Insurance Company
Globe Life Center
Oklahoma City, OK    73184-0001

MAR 0 8 2004

CLAIMS

Re: 14J522138
    David Lurie

Dear Sir:

Enclosed are the doctor's statements you requested as well as the claimants's statement by the beneficiary. Should you need anything further, please contact me at the above address.

Trusting this fully advises you with regard to this matter, I remain,

Yours very truly,

William B. Matthews, Jr.
Attorney at Law

WBM,Jr./ds



DEFENDANT'S EXHIBIT

Globe Life/Lurie, Karen
0004

**Coverage Amount** (*check one*)

☐ $50,000   ☒ $100,000   ☐ $150,000   ☐ $200,000   ☐ $250,000

☐ **Individual Plan**   ☒ **Family Plan** (*check one*)

David Lurie
4181 County Road 73
Midland City  AL  36350-4213

Date of Birth  4/24/58   Male ☒  Female ☐
Phone Number ( 334 )  983-3887
Name Of Beneficiary  Karen Lurie
Relationship  Wife

Please enroll the person named above for Accidental Death Coverage. I am enclosing the initial premium and understand the coverage will become effective on the date stated in the Schedule of Benefits on my Certificate. Should the enrollment form be declined, no charges will be incurred.

I also understand that the benefits will decrease by 50% on the Certificate Anniversary following the Insured's 70th birthday with no change in premium.

Signed  David C. Lurie                     Date  4-11-03

G400                    Applicant Owner Signature

Please see reverse side for three easy payment options

†2001 National Safety Council Injury Facts.                    #0700 0680 8649 APC3KL2904

Globe Life/Lurie, Karen
0015

*...a true and exact copy of the record on file with the Dale County Health Department.*

*Vickie Haynes*
Signature of Local Registrar

*Jan 16, 2004*
Date of Issue

# ALABAMA
## CERTIFICATE OF DEATH

State File Number **101**

| | | |
|---|---|---|
| 1. DECEASED—NAME First Middle Last (Type/print name all capitals) David Christopher LURIE | 2. DATE OF DEATH (Month, Day, Year) January 6, 2004 | 3. COUNTY OF DEATH Dale |
| 4. CITY, TOWN, OR LOCATION OF DEATH AND ZIP CODE Dothan 36303 | 5. INSIDE CITY LIMITS (Specify Yes or No) No | 6. PLACE OF DEATH—HOSPITAL OR OTHER INSTITUTION—(If not in either, give street and number) Dale County Road 25 (Denton Road) |
| 7. IF HOSPITAL (Specify Inpatient, ER or Outpatient, DOA) | 8. OF HISPANIC ORIGIN (Specify Yes or No) If Yes, Specify Cuban, Mexican, Puerto Rican, etc. No | 9. RACE—(Specify American Indian, Black, White, etc.) White | 10. SEX Male |

| 11. AGE 45 | 12. UNDER 1 YEAR MOS. DAYS | UNDER 1 DAY HOURS MINS. | 13. DATE OF BIRTH (Month, Day, Year) April 24, 1958 | 14. DECEASED'S SOCIAL SECURITY NUMBER 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 |
|---|---|---|---|---|

| 15. EDUCATION (Specify ONLY highest grade completed below) Elementary or High School (0-12) College (1-4 or 5+) | 16. MARITAL STATUS (Specify Married, Never Married, Widowed, Divorced) Married | 17. SURVIVING SPOUSE (If wife, give maiden name) Karen Kennedy | 18. Was Decedent ever in Armed Forces (Specify Yes or No) No |
|---|---|---|---|

| 19. STATE OR BIRTH (If not a USA name country) Alabama | 20. RESIDENCE—STATE Alabama | 21. COUNTY Dale | 22. CITY, TOWN, OR LOCATION AND ZIP CODE Midland City 36350 |
|---|---|---|---|

| 23. INSIDE CITY LIMITS (Specify Yes or No) | 24. STREET AND NUMBER 4181 County Road 73 | 25. INFORMANT—Name and Address Karen Lurie 4181 County Road 73-Midland City, AL 36350 |
|---|---|---|

| 26. USUAL OCCUPATION (Give kind of work done during most of working life even if retired) Master Machinist | 27. KIND OF BUSINESS OR INDUSTRY Metal Fabrication |
|---|---|

| 28. FATHER—NAME First Middle Last Charles Joseph Lurie | 29. MAIDEN NAME OF MOTHER First Middle Last Beth Glawson |
|---|---|

| 30. DISPOSITION OF BODY (Specify Burial, Cremation, Medical Donation, Hospital Disposal, Other) Burial | 31. DATE OF DISPOSITION (Month, Day, Year) January 9, 2004 | 32. CEMETERY OR CREMATORY—Name Sylvan Grove Methodist Church Cemetery | 33. LOCATION—(City or Town—State) Midland City, Alabama |
|---|---|---|---|

| 34. FUNERAL HOME—Name and Address Southern Heritage Funeral Home 1000 Hodgesville Road, Dothan, AL 36301 | 35. FUNERAL DIRECTOR—Signature | 36. DATE SIGNED BY FUNERAL DIRECTOR 1-15-04 |
|---|---|---|

| 37. Certifying Physician / Medical Examiner / Coroner (certifying cause of death) Signature: Earl Bankston | 38. DATE SIGNED (Month, Day, Year) January 15, 2004 |
|---|---|

| 39. TIME AND DATE OF DEATH January 6, 2004 | 40. DATE AND TIME PRONOUNCED DEAD (For Coroner/M.E. use only) 8:40 a.m. | 41. NAME AND TITLE OF PERSON WHO COMPLETED CAUSE OF DEATH (Item 46) Earl Bankston Dale County Coroner |
|---|---|---|

| 42. ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH (Item 46) 872 Country Club Drive, Ozark, Alabama 36360 | 43. CERTIFIER LICENSE NUMBER |
|---|---|

| 44. REGISTRAR—Signature *Vickie Haynes* | For State or County use only | 45. DATE FILED (Month, Day, Year) *Jan 16, 2004* |
|---|---|---|

## MEDICAL CERTIFICATION

| 46. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. LIST ONLY ONE CAUSE ON EACH LINE. | | APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. Blunt force injuries | DUE TO (OR AS A CONSEQUENCE OF) | |
| Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST | b. Motorcyle/Van accident | |
| | DUE TO (OR AS A CONSEQUENCE OF) | Globe Life/Lurie, Karen 0020 |
| | c. | |
| | DUE TO (OR AS A CONSEQUENCE OF) | |

| 47. PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. | |
|---|---|

| 49. MANNER OF DEATH (Specify Accident, Homicide, Suicide, Undetermined Circumstances, Pending Investigation, Natural Cause) Accident | 50. AUTOPSY (Specify Yes or No) No | 51. If yes, were findings considered in determining cause of death? (Specify Yes or No) | 48. WAS THERE A PREGNANCY IN LAST 42 DAYS (Specify Yes, No, or Unk.) |
|---|---|---|---|

| 52. HOW INJURY OCCURRED (Enter nature of injury in item 46, Part I or item 47, Part II) | | 53. DATE OF INJURY (Month, Day, Year) | 54. HOUR OF INJURY M. |
|---|---|---|---|

| 55. INJURY AT WORK (Specify Yes or No) | 56. PLACE OF INJURY—(Specify at home, farm, street, factory, office building, etc.) | 57. LOCATION OF INJURY (Street or RFD No., City or Town, State) |
|---|---|---|

This is a legal record and must be filed within five (5) days after death.

ADPH-HS 2/Rev. 11-93

OF THIS DOCUMENT IS PINK - THE BACK OF THIS DOCUMENT IS BLUE AND HAS AN ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW

TYPE IN PERMANENT BLACK INK. DO NOT USE GREEN, RED, OR BLUE INK

# GLOBE LIFE AND ACCIDENT INSURANCE COMPANY



## INSTRUCTIONS FOR FILING A DEATH CLAIM

1. Beneficiary must complete and sign Part A.
2. Submit this form with a certified Death Certificate and other information indicated.
3. If the policy was in effect less than two years, complete Part B at the bottom of this page and have the family physician complete the enclosed Physician's Statement.

======================================================================

**PART A**

Deceased's Name in Full: _David Lurie_
(List any other names by which the deceased may have been known such as maiden name, hyphenated name, nick name, alias, or derivative forms of first and/or middle name.)

List all policy numbers: _14J 522138_

Claimant's Signature _Karen Lurie_ Age _42_ Relationship To Deceased _wife_

Date: _2-18-04_ Social Security Number: _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_

Claimant's Signature _____ Age _____ Relationship To Deceased _____

Date: _____ Social Security Number: _____

Address Correspondence and Benefits to: _4181 County Rd. 73, Midland City, AL. 36350_
                      Street           City           State         Zip Code

======================================================================

**PART B**

## MEDICAL STATEMENT

You should complete this Statement only if any coverage was in effect less than two years prior to the insured's death.

| NAMES AND ADDRESSES OF ALL PHYSICIANS/HOSPITALS WHO TREATED THE DECEASED IN THE PAST 5 YEARS. | | | |
|---|---|---|---|
| **Name** | **Address** | **Date** | **Reason** |
| N/A | | | |
| | | | |

The family physician most familiar with the medical history should complete the enclosed Statement of Physician.

### (Sign and date Authorization on back of form.)

Globe Life/Lurie, Karen
0021

## Authority to Release Protected Health Information:

I hereby authorize any physician, health care professional, hospital, clinic, laboratory, pharmac medical facility, or other health care provider that has provided payment, treatment, or services on th insured's behalf, to release the medical records indicated below to Globe Life And Accident Insuranc Company.

## Information To Be Released:

Medical Records from (date) _____ to (date) _____

Type of Information to be released:

|   | | X | Consultation Reports. |
|---|---|---|---|
|   | Complete Medical Records for above period. | X | Consultation Reports. |
| X | History, Physical & Discharge Summaries. | X | X-ray Reports (including CT scan, MRI, etc.) |
| X | Laboratory and/or Pathology test results. | X | Progress Notes. |
|   | Diagnosis (ICD-9) and Treatment (CPT) codes. |   | Nursing Notes. |
|   | Itemized bill for dates specified. |   | Complete Billing record. |

_____ Other (Specify): _____

## Purpose of the Requested Disclosure of Protected Health Information:

I authorize the release of the above referenced Personal Health Information and any other protecte health information to Globe Life And Accident Insurance Company for the purpose of determining th eligibility of or administration of claims. This includes information on the diagnosis or treatment c Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also include information on the diagnosis and treatment of mental illness and the use of alcohol and drugs. understand that any information disclosed pursuant to this authorization may be redisclosed and n longer covered by federal rules governing privacy and confidentiality of health information. Thi authorization shall remain in force 30 months following the date of my signature below, and a copy c this authorization is as valid as the original. I understand that I have the right to revoke thi authorization at any time in writing.

_DAVID LURIE_
**Name of Insured**

_Karen Lurie - wife_
**Signature of Insured/Patient/Beneficiary or Personal Legal Representative**

_wife_
**Relationship to Patient**

14J522138
**Policy Number**

2/18/04
**Date**

Globe Life/Lurie, Karen
0022

Policy Number: 143522158

# STATEMENT OF PHYSICIAN

This statement should be completed by the Family Physician only if any coverage was in effect less than two years prior to the insured's death.

| | |
|---|---|
| Full name of deceased? | Name David Christopher Lurie  Age 45 |
| How long have you treated the deceased? | One and Half years 1½ |
| Were you the deceased's medical attendant or adviser before last illness or infirmity?  If so, when and for what disease? | last visit March 26, 03 for Upper Respiratory Sny |
| When were you first consulted by deceased for the condition which either directly or indirectly caused death? | Date: NO — <br> By Whom: |
| Was deceased referred to you by another physician within the past two years?  If so, name and address of referring physician. | Physician Name: NA  NO <br> Address: NA |
| Did death occur in a hospital or institution?  If so, give name and location. | NA |
| Was the deceased confined to a hospital during the past 3 years?  If so, provide name and address of the hospital. | NO |
| How long, in your opinion, did deceased suffer from the disease or impairment that resulted in death? | NA |

| | Disease or Impairment | Duration |
|---|---|---|
| What were the contributory causes of death?  (Give as many as you can, by dates, and the duration of each.) | None | None |

| | Disease or Impairment | Duration |
|---|---|---|
| From what other disease or impairment has the deceased suffered, and when? | None | |

Give names and addresses of all other physicians or other practitioners who, to your knowledge, attended the deceased during the past five years.

| Name | Address | Disease or Impairment |
|---|---|---|
| Dr. Akin O. Ayodeji | Dothan Medical Assoc <br> 1118 Ross Clark Cr-Suite 100 <br> Dothan, AL 36301 | Type 1 DM |

Physician's Name (PRINT)  DR. C. Ted Paulk M.D.

Physician's Signature  C Ted Paulk

Street Address  1245 Westgate Pkwy

City  Dothan  State  AL  Zip  36301

Phone Number  (334) 793-9595

Globe Life/Lurie, Karen <br> 0024

Dothan Medical Associates, P.C.

118 ROSS CLARK CIRCLE, SUITE 100
DOTHAN, ALABAMA 36301-3027

*Address Service Requested*

FAMILY PRACTICE CLINIC OF DOTHAN, P.A.
1812 East Main Street
Dothan, Alabama 36301-3000
dba FIRST MED OF DOTHAN
1245 Westgate Parkway
Dothan, Alabama 36303-2151

ADDRESS SERVICE REQUESTED

Mrs. Karen Lurie
4181 County Rd 73
Midland City, Al 36350

Karen Lurie
4181 Co Rd 73
Midland City, Al.
36350

MONTGOMERY
PM
21 FEB
2004

Globe Life/Lurie, Karen
0025

# Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

JERE LOCKE BEASLEY
J. GREG ALLEN
MICHAEL J. CROW
COLE PORTIS
W. DANIEL MILES, III
R. GRAHAM ESDALE, JR.
JULIA ANNE BEASLEY
RHON E. JONES
LABARRON N. BOONE
ANDY D. BIRCHFIELD, JR.
RICHARD D. MORRISON
C. GIBSON VANCE
J. P. SAWYER
C. LANCE GOULD
JOSEPH H. AUGHTMAN

DANA G. TAUNTON
J. MARK ENGLEHART
CLINTON C. CARTER
BENJAMIN E. BAKER, JR.
DAVID B. BYRNE, III
TED G. MEADOWS
GERALD B. TAYLOR, JR.
FRANK WOODSON
KENDALL C. DUNSON
J. PAUL SIZEMORE
SCARLETTE M. TULEY
CHRISTOPHER E. SANSPREE
ROMAN ASHLEY SHAUL
W. ROGER SMITH, III
P. LEIGH O'DELL
D. MICHAEL ANDREWS

*Attorneys at Law*
218 COMMERCE STREET
POST OFFICE BOX 4160
MONTGOMERY, ALABAMA
36103-4160
(334) 269-2343

TOLL FREE
(800) 898-2034

TELECOPIER
(334) 954-7555

BEASLEYALLEN.COM

April 10, 2006

LARRY A. GOLSTON, JR.
MELISSA A. PRICKETT
JOHN E. TOMLINSON
KIMBERLY R. WARD
NAVAN WARD, JR.
WESLEY CHADWICK COOK
WILLIAM H. ROBERTSON, V

OF COUNSEL:
BENJAMIN L. LOCKLAR

ALSO ADMITTED IN ARIZONA
ALSO ADMITTED IN ARKANSAS
ALSO ADMITTED IN FLORIDA
ALSO ADMITTED IN GEORGIA
ALSO ADMITTED IN KENTUCKY
ALSO ADMITTED IN LOUISIANA
ALSO ADMITTED IN MINNESOTA
ALSO ADMITTED IN MISSISSIPPI
ALSO ADMITTED IN MISSOURI
ALSO ADMITTED IN NEW YORK
ALSO ADMITTED IN OHIO
ALSO ADMITTED IN OKLAHOMA
ALSO ADMITTED IN SOUTH CAROLINA
ALSO ADMITTED IN TENNESSEE
ALSO ADMITTED IN TEXAS
ALSO ADMITTED IN WASHINGTON, D.C.
ALSO ADMITTED IN WEST VIRGINIA

JAMES W. TRAEGER
1953-1987

RONALD AUSTIN CANTY
1963-2004

## VIA U.S. MAIL

Robert E. Poundstone IV
**Bradley Arant Rose & White, LLP**
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104

     *Re:*    *Karen Lurie v. Globe Life & Accident Insurance Company, et al.,*

Dear Mr. Poundstone:

     Enclosed, please find Plaintiffs Response to Defendants Interrogatories, Request for Production and Request for Admissions. Feel free to call me if you should have any questions regarding the above.

     Sincerely,

     **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**

     Bilinda Hines
     Legal Assistant to Christopher E. Sanspree

bfh
cc:   William B. Matthews



IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

KAREN LURIE,              *

                            *

     Plaintiff,          *

                            *

v.                       *      Case No. 1:06-cv-0034MEF

                            *

GLOBE LIFE AND ACCIDENT    *

INSURANCE COMPANY, et al.,   *

                            *

     Defendant,        *

## PLAINTIFFS RESPONSE TO DEFENDANTS INTERROGATORIES AND REQUEST FOR PRODUCTION

COMES NOW, the Plaintiff, and hereby responds to Defendant Globe Life and

Accident's First Interrogatories and Request for Production as follows:

1.     Please state you full, name, age, date of birth, social security number, residence

address, name of employer, and business address.

**RESPONSE: Karen Britton**
                 **4181 County Road 73**
                 **Midland City, Alabama 36350**
                 **DOB: 11-9-1961; 44 years old**
                 **SSN:  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**

2.     State the name, address, and telephone number of each person which has

knowledge of any of the allegations contained in the Complaint.

**RESPONSE: The Defendant and the Defendant's employee that denied the Plaintiff's claim for benefits.  Philip Christopher Lurie, who lives in Dothan, Alabama. Karen & Michael Britton (current spouse) - 4181 County Road 73 Midland City, Alabama 36350.**

3.     Identify by name, address and telephone number each and every person whom

you believe may have discoverable information relating to the issues surrounding the

claims by Plaintiff in this lawsuit and provide a summary of the extent of the knowledge provided by each person identified.

**RESPONSE: Plaintiff – Karen Lurie Britton, Plaintiffs son – Chris Lurie, Plaintiffs spouse – Michael Britton, Defendants – Globe Life**

4.    With regard to any and all persons whom you expect to call or may call as an expert witness upon the trial of this case, please state for each:

      a.    his/her full name, address and current telephone number;

      b.    the specific subject matter on which you expect such expert to testify;

      c.    the substance of the facts, opinions and/or conclusions to which you expect the expert to testify;

      d.    a summary of the factual basis for each such opinion or conclusion;

      e.    whether each person has prepared or provided you with a written or recorded statement or report concerning his/her investigation, and if so, the name and address of all persons who have a copy of each such report or statement.

**RESPONSE: None at this point.  However, all expert witnesses intended for use at trial will be exchanged in accordance with the scheduling order entered by the Court and in accordance with the Federal Rules of Civil Procedure.**

5.    Please state each and every fact upon which you contend that Globe acted in bad faith in failing and refusing to pay your claim for accidental death benefits.

**RESPONSE: Defendant Globe Life intentionally created its own reason to deny the Plaintiff's claim for benefits after investigating the same by subsequently returning the Plaintiff's premium payment for coverage after it had already accepted by Globe Life and deposited into its account.**

6.    Please state each and every fact upon which you contend that accidental death benefits exist under a policy issued by Globe for your claim in this issue.

**RESPONSE: It says so in the policy.**

7.    Please state each and every fact concerning your allegations that Globe has committed a breach of contract.

**RESPONSE: The Defendant did not pay the benefits owed.**

8.    Please state the names of all persons, as completely as possible, who either saw or have knowledge of each and every event set forth in your Complaint, including in your answer a specific and thorough description of what knowledge the particular individual has.  If for some reason you do not know the name of a person who may fit within this category, then please state do and describe that as completely as possible, stating age, sex, race, height, weight, hair color, any other distinguishing characteristic, and position or job held.

**RESPONSE:  See response to Interrogatory number two (2) above.**

9.    Give the name and address of each doctor, hospital, pharmacist, medical provider or health care provider that provided you with medical treatment for the emotional distress alleged in your complaint.

**RESPONSE: First Med – Dr. Cook, Dr. Faulk, Westgate Parkway, Dothan, Alabama**

**      Plaintiff also states that the director of the funeral home referred her to a grief counselor.  He gave her a number to call and speak with someone.  This was only over the phone.  She also states that she relied on her family members and close friends to help her through such a difficult time.**

10.    Give the name, address and place of employment of each person whom you propose to call or may call as a witness at the trial of this case, stating for each such person the question or issue you propose to cal or may call each witness listed and substance of the testimony you expect to be given by each witness listed.

**RESPONSE: As of the time of the answering of these interrogatories, just the individuals and entities listed above. However, all witnesses intended for use at trial will be exchanged in accordance with the scheduling order entered by the Court and in accordance with the Alabama Rules of Civil Procedure.**

11.    State the name and address of each and every person, or agency to whom you have given a statement (oral or written) with respect to the events described in your Complaint. If you have given a written statement, attach a copy of the same.

**RESPONSE: Plaintiff states that she has never given a statement in this matter other than to her attorneys, which is privileged.**

12.    State whether you or anyone acting on your behalf has obtained a written or oral statement concerning any of the events described in the Complaint, and, if so, state the name and address of each and every person from whom the statement was taken, the date each such statement was taken, the name and address of the person who obtained each such statement, whether a transcript or written record of each such statement exists, who has possession of such transcript or written record (if no such transcript or written record exists, describe the contents of each such statement), and, if written, attach a copy of same.

**RESPONSE: See response to Interrogatory number eleven (11) above. Plaintiff further states that she is unaware of anyone else acting on her behalf that has ever given a statement.**

13.    Identify each item of compensatory damage you claim against Globe, provide the amount of the damage claimed, and describe fully the manner in which such item of damage was the proximate result of Globe's alleged wrongful conduct.

**RESPONSE: Obviously, Plaintiff is seeking breach of contract damages totaling the amount of benefits owed. Plaintiff is also seeking mental anguish and emotional distress damages that are properly left for the jury to calculate. In addition, Plaintiff is seeking punitive damages for bad faith. This amount is also properly left for the jury to calculate.**

14.    Do you acknowledge that the premium which was due on policy 14-J522138 on November 28, 2003, was not paid until after the death of David Christopher Lurie?  If you disagree, please state you basis for disagreement.

**RESPONSE: No.  It was paid on January 5, 2004.**

15.    Do you dispute that Globe policy number 14-J522138 lapsed prior to David Christopher Lurie's death?  If you do, please explain every basis for you contention.

**RESPONSE:  Yes.  I paid the premium payment amount requested for coverage, Globe Life accepted the premium in exchange for coverage and deposited the check into its account.**

## REQUEST FOR PRODUCTION

1.    Any and all document and things, including but not limited to internal memorandum, letters, insurance policies, notes, an electronic communications, relating in any way to the claims for accidental death benefits made by Plaintiff.

**RESPONSE: All documents in Plaintiffs possession responsive to this request will be produced.**

2.    Any and all documents or notes relating to Plaintiff's claims for accidental death benefits.

**RESPONSE: All documents in Plaintiffs possession responsive to this request will be produced.**

3.    A copy of any and all insurance policies that have ever been issued by Globe to Karen Lurie and/or David Lurie.

**RESPONSE:  Plaintiff states that she has been issued other policies from Globe Life but they are not in her possession.**

4.    Any and all documents related in any way to correspondence between you or any of your representatives and any employees or representative of Globe.  This request

includes, bit is not limited to, any correspondence between any attorney for the above mentioned individuals.

**RESPONSE: All documents in Plaintiffs possession responsive to this request will be produced.**

5.    Any and all documents concerning any investigation of your claims in this lawsuit and/or the accident that allegedly caused the death of David Lurie.

**RESPONSE: All documents in Plaintiffs possession responsive to this request will be produced.**

6.    Copies of any and all documents which, in any way, support or relate to your responses to his Defendant's interrogatories.

**RESPONSE: All documents in Plaintiffs possession responsive to this request will be produced.**

7.    A copy of any and all documents in your possession that relate in any way to Globe and /or the claim that is the subject of this lawsuit.

**RESPONSE: All documents in Plaintiffs possession responsive to this request will be produced.**

8.    Please provide a copy of any and all statements from any witness to the accident which allegedly caused David Lurie's death.

**RESPONSE: These documents are not in Plaintiffs possession.**

9.    Please provide a copy of any and all documents evidencing or relating to investigations that you or any of your representatives have made into the claim that is the subject of this lawsuit and/or the death of David Lurie.

**RESPONSE: All documents Plaintiffs possession responsive to this request will be produced.**

10.    Produce the original of each and every document received by the Plaintiff from Defendant Globe or any of its agents, employees, or representatives concerning the

events referenced in the Complaint, including but not limited to sales brochures, marketing materials, correspondence, contracts, payment notices, and reports of any kind.

**RESPONSE: Copies of all documents in Plaintiffs possession will be produced.**

11.    Produce copies of each and every documents evidencing payment made by you or someone else on the Globe policy referenced in the Complaint, including but not limited to, credit card statements, receipts, bank statements, checks or other records.

**RESPONSE: All documents Plaintiffs possession responsive to this request will be produced.**

12.    Produce copies of any and all written statements obtained by the Plaintiff, Plaintiff's attorneys, or anyone acting on behalf of the Plaintiff from current or former employees or current or former employees.

**RESPONSE: There are no such documents.**

13.    Produce copies of any and all tape recorded statements, including transcriptions or the tape recorded statements, obtained by the Plaintiff, Plaintiff's attorneys, or anyone acting on behalf of the Plaintiff of any current or former employee or any current or former customer of Globe.

**RESPONSE: There are no such documents.**

14.    Produce the curriculum vitae of any expert witness identified in the Plaintiffs interrogatory answers.

**RESPONSE: Please see response to Interrogatory number 4.**

15.    All correspondence either sent by you or your agents (including you attorneys) or received by you or your agents (including your attorneys) regarding any insurance policy issued to you and/or David Lurie by Globe or any claims that has been made on any such policy

**RESPONSE: All documents in Plaintiffs possession will be produced.**

16.    Copies of all documents of any kind which relate, pertain, or refer to expenses or damages of any kind whatsoever which you contend were incurred as a result of the claims made the basis of your complaint.

**RESPONSE: All documents in Plaintiffs possession will be produced.**

17.    Please identify and produce each and every document which you allege substantiates any claim or contention in your Complaint, including those on which you intend to rely at trial.

**RESPONSE: All documents in Plaintiffs possession will be produced.**

18.    Please identify and produce a copy of each and every communication whatsoever between you and any physician, hospital, or other medical provider of any kind, who treated you for the emotional distress referenced in the Complaint, and/or any and all documents relating in any way to any such treatment, including but not limited to all medical reports, notes, discharge summaries, memoranda, and/or disability evaluations.

**RESPONSE: All documents in Plaintiffs possession will be produced.**

19.    Produce a copy of each and every claim for insurance benefits that you have ever submitted to Globe.

**RESPONSE: All documents in Plaintiffs possession will be produced.**

20.    All documents or records which purport to be generated by or on behalf of Globe which you, your counsel, or anyone acting on your behalf have obtained from any source other that through discovery in this case.

**RESPONSE: All documents in Plaintiffs possession will be produced.**

21.    All calendars, notes, telephone notes, memoranda, messages, recordings, diaries, or other documents which evidence or relate to times and dates of events made the basis of or relating to this lawsuit in any way.

**RESPONSE: All documents Plaintiffs possession responsive to this request will be produced.**

22.    Produce all documents that relate to, pertain to, otherwise support or refute in any way your claims in this litigation.

**RESPONSE: All documents Plaintiffs possession responsive to this request will be produced.**

23.    Produce documents which evidence, relate to or otherwise pertain to conversations or other communications with, or statements by Globe or any of its representatives, relating to any manner to any alleged wrong committed against you, or to any and all other matter encompassed by the Complaint or other pleadings herein.

**RESPONSE: All documents Plaintiffs possession responsive to this request will be produced.**

24.    Any and all documents which constitute, relate to, or in any manner pertain to notes or other writings made by you for you use that relate in any manner to any alleged wrong committed against you, or to any and all matters encompassed by the Complaint or other pleadings herein.

**RESPONSE: All documents in Plaintiffs possession will be produced.**

25.    Any and all documents that pertain to the transaction or transactions in which you and/or David Lurie obtained the policy that is the subject of this lawsuit.

**RESPONSE: All documents in Plaintiffs possession will be produced.**

*Karen Lurie Britton*

**KAREN LURIE (BRITTON)**

**STATE OF ALABAMA)**

**COUNTY OF** )

I, the undersigned Notary Public in and for the State of Alabama at Large, hereby certify that *Karen Lurie Britton*, whose name is signed to the foregoing, and who is known to me and who being by me first duly sworn, acknowledged before me on this day that being informed of the contents of the said document, she executed the same voluntarily on the day the same bears date.

SWORN to and SUBSCRIBED before me this the 7th day of *April*, 2006.

NOTARY PUBLIC
My Commission Expires: 6-8-08

CHRISTOPHER E. SANSPREE
Attorney for the Plaintiff

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama  36103-4160
(334) 269-2343 Telephone/(334) 954-7555 Facsimile

Mr. William B Matthews, Jr.
**Matthews & Filmore, L.L.C.**
Post Office Box 1145
Ozark, Alabama 36361
(334) 774-8804 telephone

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon all counsel of record as listed below by placing a copy of the same in the United States Mail, first class, postage prepaid on this the ___10___ day of ___April___, 2006.


_____
OF COUNSEL


Robert E. Poundstone IV
**Bradley Arant Rose & White, LLP**
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104
(334) 956-7700
(334) 956-7701 fax

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

KAREN LURIE,                          *
                                       *
    Plaintiff,                     *
                                       *
v.                                     *          Case No. 1:06-cv-0034MEF
                                       *
GLOBE LIFE AND ACCIDENT                *
INSURANCE COMPANY, et al.,             *
                                       *
    Defendant,                     *

## PLAINTIFFS RESPONSE TO DEFENDANTS REQUEST FOR ADMISSIONS

COMES NOW, the Plaintiff, and hereby responds to Defendant Globe Life and Accident's First request for Admissions as follows:

1.    Admit that the premium which was due on Globe policy number 14-J22138 on November 28, 2003, was not paid on or before November 28, 2003.

**RESPONSE: Admitted**

2.    Admit that the premium which was due on Globe policy number 14-J22138 on November 28, 2003, was not paid on or before December 29, 2003.

**RESPONSE: Admitted**

3.    Admit that the premium which was due on Globe policy number 14-J22138 on November 28, 2003, was not paid on or before January 6, 20040

**RESPONSE: Denied**

4.    Admit that David Christopher Lurie died on January 6, 2004.

**RESPONSE: Admitted**

5.    Admit that the premium which was due on Globe policy number 14-J22138 on November 28, 2003, was not paid on or before David Christopher Lurie's death.

**RESPONSE: Denied**

6.      Admit that neither you nor any of your representatives informed Globe Life of David Christopher Lurie's death until after the premium which was due on Globe policy number 14-J22138 on November 28, 2003, was submitted to Globe for payment.

**RESPONSE: Denied**

7.      Admit that Globe policy number 14-J22138 lapsed prior to the death of David Christopher Lurie.

**RESPONSE: Denied**

8.      Admit that Globe policy number 14-J22138 was lapsed at the time of David Christopher Lurie's death.

**RESPONSE: Denied**

9.      Admit that Globe policy number 14-J22138 had not been reinstated at the time of David Christopher Lurie's death.

**RESPONSE: Denied**

_____
CHRISTOPHER E. SANSPREE
Attorney for the Plaintiff

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 Telephone/(334) 954-7555 Facsimile

Mr. William B Matthews, Jr.
**Matthews & Filmore, L.L.C.**
Post Office Box 1145
Ozark, Alabama 36361
(334) 774-8804 telephone

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon all counsel of record as listed below by placing a copy of the same in the United States Mail, first class, postage prepaid on this the ___ day of _____, 2006.


_____
OF COUNSEL


Robert E. Poundstone IV
**Bradley Arant Rose & White, LLP**
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104
(334) 956-7700
(334) 956-7701 fax

CHRIS OR KAREN LURIE
DL AL3565221 or AL4563777
DOB 4/24/58 or 11/9/61
4181 CO. RD. 73 (334) 983-3887
MIDLAND CITY, AL 36350
945
61-203/621
DATE 1-2-03
PAY TO THE ORDER OF  Dale Co. Solid Waste  $ 11.00
Eleven + 00/100  DOLLARS
The Headland National Bank
FOR #001560  Karen Lurie
⑆062102030⑆ 01 058 194⑈ 0945  ⑇00000011000⑈

CHRIS OR KAREN LURIE
DL AL3565221 or AL4563777
DOB 4/24/58 or 11/9/61
4181 CO. RD. 73 (334) 983-3887
MIDLAND CITY, AL 36350
952
61-203/621
DATE 1-11-04
PAY TO THE ORDER OF  Walmart  $ 7.46
Seven + 46/100  DOLLARS
The Headland National Bank
FOR  Karen Lurie
⑆062102030⑆ 01 058 194⑈ 0952  ⑇0000000746⑈

Ivory Checks - 01/13/2004

Ivory Checks - 01/13/2004

CHRIS OR KAREN LURIE
DL AL3565221 or AL4563777
DOB 4/24/58 or 11/9/61
4181 CO. RD. 73 (334) 983-3887
MIDLAND CITY, AL 36350
951
61-203/621
DATE 1-8-04
PAY TO THE ORDER OF  Dale County Revenue  $ 25.84
Twenty five + 84/100  DOLLARS
The Headland National Bank
FOR Tag for 1989 bmw  Karen Lurie
⑆062102030⑆ 01 058 194⑈ 0951  ⑇0000002584⑈

CHRIS OR KAREN LURIE
DL AL3565221 or AL4563777
DOB 4/24/58 or 11/9/61
4181 CO. RD. 73 (334) 983-3887
MIDLAND CITY, AL 36350
944
61-203/621
DATE 1-2-03
PAY TO THE ORDER OF  Angela M. Efford  $ 13.90
Thirteen + 90/100  DOLLARS
The Headland National Bank
FOR paper  Karen Lurie
⑆062102030⑆ 01 058 194⑈ 0944  ⑇0000001390⑈

Ivory Checks - 01/12/2004

Ivory Checks - 01/09/2004

CHRIS OR KAREN LURIE
DL AL3565221 or AL4563777
DOB 4/24/58 or 11/9/61
4181 CO. RD. 73 (334) 983-3887
MIDLAND CITY, AL 36350
948
61-203/621
DATE 1-2-04
PAY TO THE ORDER OF  Post Master  $ 7.40
Seven + 40/100  DOLLARS
The Headland National Bank
FOR 1 bx 37¢ Stamps  Karen Lurie
⑆062102030⑆ 01 058 194⑈ 0948  ⑇0000000740⑈

CHRIS OR KAREN LURIE
DL AL3565221 or AL4563777
DOB 4/24/58 or 11/9/61
4181 CO. RD. 73 (334) 983-3887
MIDLAND CITY, AL 36350
942
61-203/621
DATE 1/2/04
PAY TO THE ORDER OF  Countrywide  $ 522.67
Five hundred twenty two + 67/100  DOLLARS
The Headland National Bank
FOR mt m #036735483  Karen Lurie
⑆062102030⑆ 01 058 194⑈ 0942  ⑇0000052267⑈

Ivory Checks - 01/08/2004

Ivory Checks - 01/07/2004

CHRIS OR KAREN LURIE
DL AL3565221 or AL4563777
DOB 4/24/58 or 11/9/61
4181 CO. RD. 73 (334) 983-3887
MIDLAND CITY, AL 36350
949
61-203/621
DATE 1-4-04
PAY TO THE ORDER OF  CBC  $ 25.00
Twenty five dollars + 00/100  DOLLARS
The Headland National Bank
FOR  Karen Lurie
⑆062102030⑆ 01 058 194⑈ 0949  ⑇0000002500⑈

CHRIS OR KAREN LURIE
DL AL3565221 or AL4563777
DOB 4/24/58 or 11/9/61
4181 CO. RD. 73 (334) 983-3887
MIDLAND CITY, AL 36350
947
61-203/621
DATE 1-2-04
PAY TO THE ORDER OF  Gas  $ 27.43
Twenty seven + 43/100  DOLLARS
The Headland National Bank
FOR C34N  Karen Lurie
⑆062102030⑆ 01 058 194⑈ 0947  ⑇0000002743⑈

Ivory Checks - 01/07/2004

Ivory Checks - 01/06/2004

PLAINTIFF'S
EXHIBIT
2



Ivory Checks - 01/21/2004

Ivory Checks - 01/21/2004





Ivory Checks - 01/21/2004

Ivory Checks - 01/20/2004





Ivory Checks - 01/16/2004

Ivory Checks - 01/15/2004



Ivory Checks - 01/15/2004                    Ivory Checks - 01/14/2004