IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KAREN LURIE,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Case No. 1:06-cv-0034MEF |
| | * |
| **GLOBE LIFE AND ACCIDENT** | * |
| **INSURANCE COMPANY, et al.,** | * |
| | * |
| Defendant, | * |

## PLAINTIFF'S STATEMENT AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Mrs. Karen Lurie, in the above-styled action pursuant to Rule 56 of the Federal Rules of Civil Procedure and hereby files this her Statement and Brief in Opposition to Defendant Globe Life and Accident Insurance Company's (hereinafter referred to as "Globe Life") Motion for Summary Judgment. Mrs. Lurie respectfully moves this Court to enter an order denying Defendant's aforesaid motion because there are genuine issues of material fact. When viewed in a light most favorable to Mrs. Lurie, the facts establish that Defendant Globe Life breached its contract with Mrs. Lurie in bad faith. As a result, Mrs. Lurie has been, and continues to be, legally damaged. This Statement and Brief in Opposition to the Defendant's Motion for Summary Judgment is supported by a Narrative Summary of Undisputed Facts, Globe Life Policy, (attached hereto as Exhibit "A"); Deposition of Plaintiff Karen Lurie, (attached as Exhibit "B"); Defendants January 2, 2004 letter to Plaintiff, (attached as Exhibit "C"); an Affidavit of William B. Matthews, Jr., (attached hereto as Exhibit "D"); Deposition of Barbara Hernandez, (attached hereto as Exhibit "E"); Expert Report of

John H. Allen, (attached hereto as Exhibit "F"); Deposition of Sandy Whitaker, (attached hereto as Exhibit "G"); Deposition of Daniel Mendoza, (attached as Exhibit "H"); and Defendant's May 18, 2005 denial letter to Plaintiff's counsel, (attached hereto as Exhibit "I").

## Standard of Review

On a motion for summary judgment, the movant has the burden to make a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. F.R.C.P. 56 (c). Until the moving party has made such a showing, the burden does not shift to the opposing party to establish a genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). If the defendant makes a prima facie showing, the burden then shifts to the plaintiff to present evidence of the existence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a Motion for Summary Judgment, the court must review the facts in the light most favorable to the non-movant and must resolve all reasonable doubts against the movant. F.R.C.P. 56(c). When viewed in a light most favorable to the Plaintiff, there exist genuine issues of material fact, thus precluding judgment as a matter of law.

## STATEMENT OF FACTS

David Lurie obtained a policy of insurance from Defendant Globe Life in the amount of $100,000.00, that was effective April 28, 2003. (Policy, Exhibit "A"). The insurance policy was an accidental death insurance policy with family coverage under certificate number: 14-J522138. Id. The Plaintiff, Karen Lurie, was Davis Lurie's wife and was named as the beneficiary under the aforesaid policy of insurance. Id. The

2

monthly premium payments for David Lurie's accidental death insurance policy was $16.80. Id. Plaintiff Karen Lurie had the responsibility of making the monthly premium payments on David Lurie's policy insurance. (Lurie Depo., Exhibit "B" at 60:20-22). All monthly premium payments were timely made until one was missed for the due date of November 28, 2003. (Exhibit "B" at 71:2-4; 61:2-18). Mrs. Lurie knew she had missed the premium payment due dates, but did so because it was the holiday season and the Luries had fallen behind on some of their bills. (Exhibit "B" at 82:21-23; 83:1-2). After the holiday season, on January 4, 2004, Mrs. Lurie made out a premium payment check to Defendant Globe Life for the months of November and December 2003, and placed the check in her mailbox that very same day, which was the Sunday evening following the New Year. (Exhibit "B" at 75:11-21). On January 6, 2004, David Lurie was killed in an accident on the way to work. (Exhibit "B" at 66:11-19). Mrs. Lurie subsequently received a notice on January 12, 2004, from Globe Life via letter dated January 2, 2004, that stated that David Lurie's insurance policy would be reinstated if the premium payments were received before January 17, 2004, provided Davis Lurie was still in good health. (Exhibit "B" at 93:2-19); (Notice, Exhibit "C"). On that same day, Mrs. Lurie and her attorney contacted Defendant Globe Life via telephone and notified it that David Lurie had been killed in an accident on January 6, 2004. (Exhibit "B" at 78:1-21; 130:2 ): (Matthews Affidavit, Exhibit "D"). Mrs. Lurie and her attorney provided Globe Life with David Lurie's insurance policy number and informed Globe Life that David Lurie's November and December 2003 premium payments were not paid until January 4, 2004, which was two days before he was killed in the accident. (Exhibit "B" at 79:7-14); (Matthews Affidavit, Exhibit "D"). Defendant Globe Life told Mrs. Lurie

3

and her attorney that there would be no lapse in coverage on David Lurie's policy as long as Globe Life received the premium payments before January 17, 2004. (Exhibit "B" at 79:7-14); (Matthews Affidavit, Exhibit "D"). David Lurie's premium payment check was negotiated and deposited by Globe Life on January 16, 2004, which was before the January 17, 2004, deadline.[1] (Exhibit "B" at 90:7-8);(Hernandez Depo., Exhibit "E" at 17:10-25). Defendant Globe Life did in fact reinstate Mr. Lurie's insurance policy on January 16, 2004, as if there had been no lapse in coverage and without requiring Mr. Lurie to provide any evidence of insurability. (Hernandez Depo., Exhibit "E" at 17:10-25); (Expert Report, Exhibit "F").

     Globe Life began immediately processing Mrs. Lurie's claim as if there had been no lapse in coverage and requested that certain information be provided to Globe Life by Mrs. Lurie and her attorney. (Matthews Affidavit, Exhibit "D"). Mrs. Lurie and her attorney had numerous subsequent telephone conversations with representatives of Globe Life concerning Mrs Lurie's claim and were repeatedly reassured that Mrs. Lurie's claim for benefits was being processed and that there had been no lapse in coverage. (Exhibit "B" at 82:1-11); (Matthews Affidavit, Exhibit "D"). Globe Life continued adjusting Mrs. Lurie's claim for benefits for almost five (5) months and initially approved Mrs. Lurie's claim for benefits and authorized that payment be made. (Whitaker Depo., Exhibit "G" at 5:20-6:4, 7:21-9:9, 22:8-23:2, 57:19-58:6, 83:13-19). However, on or about May 18, 2004, Globe Life decided to deny Mrs. Lurie's claim for benefits and returned her

---

[1] **It is extremely important to note that the premium payments were received and processed by Globe Life after being informed of the insured's death by both Mrs. Lurie and her attorney. Globe Life cannot state that the foregoing did not happen, it simply states that it has no records of it happening. (Whitaker Depo., Exhibit "G" at 11: 7-13; 64:22-25; 65:1-2); (Mendoza Depo., Exhibit "H" at 16:3-25; 17:1-20).**

4

premium payments that it had previously accepted and deposited back in January.[2] (May 18, 2004, letter, Exhibit "I").

### A.     *Breach of Contract / Waiver* [3]

**(i). The Issue of Material Fact**

In the instant case, there is no dispute that a contract of insurance existed between David Lurie and Globe Life, and that Globe Life received, processed and deposited David Lurie's January 4, 2004, premium payment check on January 16, 2004, which was before the January 17, 2004, deadline. (Exhibit "B" at 90:7-8);(Hernandez Depo., Exhibit "E" at 17:10-25; 19:2-5; 24:9-18; ). It is also undisputed that Defendant Globe Life reinstated Mr. Lurie's insurance policy on January 16, 2004, as if there had been no lapse in coverage and without requiring Mr. Lurie to provide any evidence of insurability. (Hernandez Depo., Exhibit "E" at 17:10-25); (Expert Report, Exhibit "F"). There is also no dispute that Globe Life adjusted Mrs. Lurie's claim for benefits for almost five (5) months as if there had in fact been no lapse in coverage. (Matthews Affidavit, Exhibit "D"). It is also undisputed that Globe Life initially approved Mrs. Lurie's claim for

---

[2] **It is also important to note that the May 18, 2004, denial letter from Globe Life was the first notification that a problem existed with the insurability of Mr. Lurie or with the premium payment, and that Mrs. Lurie's claim for benefits was going to be denied. (Exhibit "B" at 131:6-16); (Matthews Affidavit, Exhibit "D"). This is a breach of insurance industry standards in and of itself.   See John Allen's Expert Report attached hereto as Exhibit "F".**

[3] **Defendant Globe Life argues in footnote ten (10) of its Brief in Support of Summary Judgment that the Plaintiff cannot contend that Globe waived its rights under the insurance contract or revised the contract as it relates to the condition that the insured be insurable in order for the policy to be reinstated. Globe Life's argument is based upon a policy provision that states that any revisions to the contract have to be in writing, attached to the certificate, etc.  Globe Life argues that because there is no evidence that the terms of the reinstatement provisions were ever changed in such a manner, Plaintiff cannot now claim that that condition was waived. Waiver, however, has absolutely nothing to do with the revision of insurance policy terms.  Waiver pertains only to rights or conditions under the contract that may be waived by conduct on behalf of a party that is inconsistent with that party's intention to exercise said rights or conditions.  <u>State Farm Mut. Auto. Ins. Co. v. Anderson</u>, 318 So.2d 687 (Ala. 1975).  What's even more compelling is that Globe Life reinstated the policy on January 16, 2004, after receiving the late premium payment from Mr. Lurie without requiring Mr. Lurie to provide any evidence of insurability whatsoever. This was an additional intentional and voluntarily waiver of the "evidence of insurability" requirement by Globe Life.**

5

benefits and authorized that payment be made. (Whitaker Depo., Exhibit "G" at 5:20-6:4, 7:21-9:9, 22:8-23:2, 57:19-58:6, 83:13-19). There is also no dispute that on or about May 18, 2004, Globe Life decided to cancel the contract and deny Mrs. Lurie's claim for benefits and returned the premium payments that it had previously accepted and deposited back in January. The only dispute is whether Globe Life was justified doing so. If Globe Life had notice of David Lurie's death before it accepted, negotiated and deposited the January 4, 2004, premium payment check, then it waived its right to cancel the insurance and deny Mrs. Lurie's claim for benefits. (Exhibit "F"). The law, and insurance industry standards, are well settled on this issue. *See* <u>Nationwide Mutual Insurance Company v. Clay</u>, 525 So. 2d 1339 (Ala. 1987)(holding that when an insurer accepts a premium after knowledge of a breach of a policy provision, the insurer waives its right to cancel the policy); <u>State Farm Mutual Automobile Insurance Company v. Anderson</u>, 318 So.2d 687 Ala. 1975)(holding that the acceptance by State Farm of a premium after a loss, with knowledge of the prior loss, constituted a waiver and amounted to an intentional relinquishment of any right State Farm might have had to deny coverage); *See also* <u>Alabama Farm Bureau Mutual Casualty Insurance Company v. Hicks</u>, 133 So.2d 221, (holding that "[t]he retention by an insurer of a past due premium payment, with knowledge that a loss was sustained during the defaulting period, constituted a waiver of the condition that premiums paid late did not cover losses sustained during the period of default and rendered the insurer liable for such loss"); (Expert Report, Exhibit "F").

6

**(ii). The Evidence**

As stated above, Mrs. Lurie and her attorney contacted Defendant Globe Life via telephone on January 12, 2004, and notified it that David Lurie had been killed in an accident on January 6, 2004.  (Exhibit "B" at 78:1-21; 130:2 ): (Matthews Affidavit, Exhibit "D").  Mrs. Lurie and her attorney provided Globe Life with David Lurie's insurance policy number and informed Globe Life that David Lurie's November and December 2003 premium payments were not paid until January 4, 2004, which was two days before he was killed in the accident.  (Exhibit "B" at 79:7-14); (Matthews Affidavit, Exhibit "D").  Defendant Globe Life told Mrs. Lurie and her attorney that there would be no lapse in coverage on David Lurie's policy as long as Globe Life received the premium payments before January 17, 2004.[4]  (Exhibit "B" at 79:7-14); (Matthews Affidavit, Exhibit "D").  David Lurie's premium payment check was negotiated and deposited by Globe Life on January 16, 2004, which was before the January 17, 2004, deadline. (Exhibit "B" at 90:7-8);(Hernandez Depo., Exhibit "E" at 17:10-25).  Defendant Globe Life did in fact reinstate Mr. Lurie's insurance policy on January 16, 2004, as if there had been no lapse in coverage and without requiring Mr. Lurie to provide any evidence of insurability.  (Hernandez Depo., Exhibit "E" at 17:10-25); (Expert Report, Exhibit "F"). Globe Life began immediately processing Mrs. Lurie's claim as if there had been no lapse in coverage and requested that certain information be provided to Globe Life by Mrs. Lurie and her attorney.  (Matthews Affidavit, Exhibit "D").  Mrs. Lurie and her attorney had numerous subsequent telephone conversations with representatives of Globe Life concerning Mrs Lurie's claim and were repeatedly reassured that Mrs. Lurie's claim

---

[4] This is corroborated by the Mrs. Hernandez's testimony wherein she stated that the January 4, 2004, premium payment was used to "update" the policy.  (Hernandez Depo., Exhibit "E" at 17:10-25).

7

for benefits was being processed and that there had been no lapse in coverage. (Exhibit "B" at 82:1-11); (Matthews Affidavit, Exhibit "D"). Globe Life continued adjusting Mrs. Lurie's claim for benefits for almost five (5) months and initially approved Mrs. Lurie's claim for benefits and authorized that payment be made. (Whitaker Depo., Exhibit "G" at 5:20-6:4, 7:21-9:9, 22:8-23:2, 57:19-58:6, 83:13-19). However, on or about May 18, 2004, Globe Life decided to deny Mrs. Lurie's claim for benefits and return her premium payments that it had previously accepted and deposited back in January. (May 18, 2004, letter, Exhibit "I").

As stated in footnote one (1) above, the above facts are undisputed and Globe Life simply states that it has no record of it happening, but admits that it is possible.[5] (Whitaker Depo., Exhibit "G" at 11: 7-13; 64:22-25; 65:1-2); (Mendoza Depo., Exhibit "H" at 16:3-25; 17:1-20). Based upon the substantial evidence set forth above, Globe

---

[5] **Although Globe Life cannot dispute that it was notified of Mr. Lurie's death prior to negotiating and depositing his January 4, 2004, premium payment check, Globe Life attempts to justify its denial of Mrs. Lurie's claim for benefits by stating that the policy was reinstated erroneously on January 16, 2004, and that it only realized this error after approving the claim and just before issuing a check for the payment of benefits to Mrs. Lurie. Again, this denial is after Globe Life was notified of Mr. Lurie's death, after it accepted Mr. Lurie's premium, and after it reinstated Mr. Lurie's policy without requiring any evidence of insurability whatsoever. (Expert Report, Exhibit "F"). Globe Life's attempt at justification is contradicted by its own witnesses' testimony. Sandy Whitaker first testified that when a claim is first received, the claims clerk first verifies that premium payments have been made and the policy is in-force. (Whitaker Depo, 79,:7-8; 80:16-21). Sandy Whitaker later changed her testimony and claimed that the premium payment history wasn't checked in the beginning as she had previously testified, but that the premium payment history is checked instead at the end just before payment is issued. (Whitaker Depo, 82: 8-17; 83: 13-17; 84: 5-16). She explained that this is why the policy was erroneously reinstated. Mrs. Whitaker then changed her testimony again and testified that Mr. Lurie's file actually did go to the claims examiner first who did not check to verify that the premiums had been paid and did not check to see whether the policy was in force as she was supposed to do. Mrs. Whitaker testified that the claims examiner should have checked this and she "did not know what Ms. Knudson was thinking" and that "I don't know what was in her mind or if she didn't realize it". (Whitaker Depo. 94: 7-11).**
  **Mr. Mendoza, however, testified truthfully and corroborated Mrs. Lurie's and William Mathews' testimony, as well as Mrs. Whitaker's initial testimony when he stated under oath that when Globe Life is first notified of a claim via telephone (as it was in the instant case), it immediately checks the premium payment history and whether or not the policy is still in force and notifies the claimant whether or not the policy is in force, or has lapsed. (Mendoza Depo, Pg 10, lines 4-9; Pg 18, lines 19-24). Mr. Mendoza's testimony actually corroborates everything that Mrs. Lurie and Mr. Mathews testified that said to them on their initial call to report the death of David Lurie on January 12, 2004.**

Life waived its right to deny Mrs. Lurie's claim for benefits when it negotiated and deposited Mr. Lurie's January 4, 2004, premium payment check after being informed that he had been killed in an accident. (Expert Report, Exhibit "F"). Summary Judgment as to Mrs. Lurie's breach of contract cause of action should therefore be denied.

**B.**   *Bad Faith*

Alabama has recognized two types of bad faith failure to pay insurance benefits cases; the "normal" bad faith case, and the "abnormal" bad faith case. See National Insurance Ass'n v. Sockwell, 2002 WL 399041, pg 16; Aetna Life Ins. Co. v. Lavoie, 505 So.2d 1050 (Ala. 1987); Blackburn v. Fidelity & Deposit Co., 667 so.2d 661, 669 (Ala. 1995). The elements of a "normal" bad faith action are as follows:

> (a) An insurance contract between the parities and the breach thereof by the Defendant.
>
> (b) An intentional refusal to pay the claim.
>
> (c) The absence of any reasonable, legitimate, or arguable reason for that refusal.
>
> (d) The insurers actual knowledge of the absence of any legitimate or arguable reason.
>
> (e) If the intentional failure to determine the existence of a lawful basis is relied upon, the Plaintiff must prove the insurers intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. Cincinnati Insurance vs. Little, 413 So. 2d 891 (Ala. 1983).

"Abnormal" bad faith cases have been recognized by the Supreme Court of Alabama in instances where the plaintiff has produced substantial evidence that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or

9

review; (3) <u>created its own debatable reason for denying the plaintiff's claim</u>; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim. <u>National Insurance Ass'n v. Sockwell</u>, 2002 WL 399041, pg. 16 (emphasis added). The instant case is an "abnormal" bad faith type of case. As set forth above, the undisputed facts are as follows:

> 1). Globe Life knew of Mr. Lurie's death prior to receiving, negotiating and subsequently processing Mr. Lurie's premium payment check on January 16, 2004.
>
> 2). Globe Life waived its right to deny Mrs. Lurie's claim for benefits when it negotiated and deposited Mr. Lurie's January 4, 2004, premium payment check after being informed that he had been killed in an accident.
>
> 3). Globe Life reinstated Mr. Lurie's insurance policy on January 16, 2004, as if there had been no lapse in coverage and without requiring Mr. Lurie to provide any evidence of insurability, even though it had been made aware of Mr. Lurie's death.
>
> 4). Globe Life began adjusting Mrs. Lurie's claim for benefits for almost five (5) months as if there had in fact been no lapse in coverage and initially approved Mrs. Lurie's claim for benefits and authorized that payment be made.
>
> 5). And that for some reason, on or about May 18, 2004, Globe Life decided to deny Mrs. Lurie's claim for benefits and return her premium payments that it had previously accepted and deposited back in January.
>
> 6). That Globe Life breached its contract with Mrs. Lurie when it did so.

The disputed evidence is the reason why Globe Life decided to deny Mrs. Lurie's claim for benefits. As set forth in footnote five (5) above, Globe Life attempts to justify

its denial of by stating that the policy was reinstated erroneously on January 16, 2004, and that it only realized this error after approving the claim and just before issuing a check for the payment of benefits to Mrs. Lurie.  Mrs. Whitaker testified that a policyholder's premium payment history and policy status is not checked until after the claim has been approved and benefit checks have been approved and just before the checks are issued to the beneficiary.  (Whitaker Depo, 82: 8-17; 83: 13-17; 84: 5-16).  This testimony is contradicted, however, by Mrs Whitaker's own prior testimony wherein she stated that when a claim is first received, the claims clerk first verifies that premium payments have been made and the policy is in-force. (Whitaker Depo, 79,:7-8; 80:16-21).  When questioned a little more, Mrs. Whitaker finally admitted the initial claims examiner (Mrs. Knudson) should have checked this and she "did not know what Ms. Knudson was thinking" and that "I don't know what was in her mind or if she didn't realize it". (Whitaker Depo. 94: 7-11).  Globe Life's attempts at justifying for its denial is also contradicted by another one of its employees' testimony, that of a Mr. Daniel Mendoza.  Mr. Mendoza testified that when Globe Life is first notified of a claim via telephone (as it was in the instant case), it immediately checks the premium payment history and whether or not the policy is still in force and notifies the claimant whether or not the policy is in force, or has lapsed.  (Mendoza Depo, Pg 10, lines 4-9; Pg 18, lines 19-24).  Mr. Mendoza's testimony actually corroborates Mrs. Lurie's and Mr. Matthews' testimony as it relates to what was said to them on their initial call to report the death of David Lurie on January 12, 2004.

   At the summary judgment stage of litigation, all of the evidence must be viewed in the light most favorable to Mrs. Lurie, and a reasonable inference that one

could draw from the above evidence and contradicting statements when viewed in the light most favorable to Mrs. Lurie is that Globe Life created its own debatable reason to deny Mrs. Lurie's claim for benefits. An insurer cannot create its own debatable reason to deny a claim and avoid bad faith liability. *See* National Insurance Ass'n v. Sockwell, 2002 WL 399041; State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303-307 (Ala. 1999). Summary Judgment as to Mrs. Lurie's bad faith claim is also due to be denied.

## CONCLUSION

Mrs. Lurie has submitted sufficient evidence to establish his breach of contract and bad faith causes of action against Globe Life. As a consequence, Globe Life is not entitled to judgment as a matter of law because there are genuine issues of material fact. Therefore, Defendant Globe Life's motion for summary judgment as to these causes of action should be denied.

*/s/Christopher E. Sanspree*
CHRISTOPHER E. SANSPREE
Attorney for the Plaintiff

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama  36103-4160
(334) 269-2343 Telephone/(334) 954-7555 Facsimile

Mr. William B Matthews, Jr.
**Matthews & Filmore, L.L.C.**
Post Office Box 1145
Ozark, Alabama 36361
(334) 774-8804 telephone

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing document upon all counsel of record as listed below by placing a copy of the same in the United States Mail, first class, postage prepaid on this the **2** day of **October,** 2006.

          **s/Christopher E. Sanspree**
          OF COUNSEL


Robert E. Poundstone IV
**Bradley Arant Rose & White, LLP**
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104
(334) 956-7700
(334) 956-7701 fax