

# John H. Allen, AIC, CFE
## Consultant

Phone (205) 592-4507                                          Fax (205) 595-7832

October 22, 2006

Christopher E. Sanspree, Esquire
PO Box 4160
Montgomery, Alabama 36103-4160

**Re: Karen Lurie v. Globe Life and Accident**

Dear Mr. Sanspree:

Per your request I have reviewed the documents you provided in the above referred matter. Attached as Exhibit "A" is a listing of the documents and Industry Treatises that I reviewed in the formulation of my opinion.

I am a Consultant and Expert Witness on Insurance Claims. Attached as Exhibit "B" is a copy of my CV which reflects my training , education and experience in the field of insurance. I have been admitted as an Expert Witness on Claims and Claims handling in the State and Federal Courts in Alabama and in State Court in Mississippi.

Based on my review of the pertinent information and documents to-date, the following opinions are rendered in evaluation of this claim. It should be noted that these opinions are not legal opinions and I am not a lawyer. The opinions expressed are from a claims handling perspective. If additional documentation is reviewed and examined, it may necessitate the supplementation of the opinions expressed in this report. Once any additional information is reviewed, and if it changes any opinions I have expressed, or results in the need to modify and supplement the expressed opinions, I will do so upon completion of the review of these documents. I have first hand personal knowledge of the matters contained herein and I am competent to affirm and testify to same.

Post Office Box 531166     Mountain Brook, Alabama 35253



PLAINTIFF'S
EXHIBIT

F

Page 2:
Lurie v Globe

David Lurie obtained a policy of Insurance from Globe Life in the amount of $ 100,000.00, that was effective 04-28-03. This was an Accidental Death Policy with family coverage under certificate number - 14-J522138.

All payments were made until a payment was missed for the due date of November 28, 2003. By a letter dated 01-02-04, from Globe Life ( Lurie 0020) to David Lurie it indicated that this was a final notice. The letter stated that if the premium was received by January 17,2004, that the policy would be reinstated. The options for payment were 2,3,6 and 12 months. After receipt of this notice Mrs. Lurie mailed a check in payment on 01-05-04, in the amount of $ 33.60 for two Months of payments that paid the policy to 01-28-04. The check on their joint account was dated 01-04-03, and due to the New Year date change this was an error on the year. The check was written 01-04-04, in the amount of $ 33.60 and the policy number was Correctly provided in the "FOR" section of the check.

The Certificate provisions provide a Grace Period of 31, days (Lurie 14) will be allowed each Insured of each premium after the first, during which period his or her insurance shall continue in force. Since this was not the first payment there was a Grace Period of 31 days for **EACH** premium due.

The Certificate provides for Reinstatement at any time within a "one year after default in premium payments, If:"

    a.  The insured provides Evidence of Insurability satisfactory to Us; and
    b.  All overdue premiums are paid."

Barbara Hernandez, of Globe, indicated in her deposition, page 23, that it was Standard practice of the company to offer reinstatement of the policy in a Premium Notice. She further stated that after 60 days they do not send another offer of reinstatement and there are notices after one year( page 24). The premium on the Lurie policy was processed by Globe on 01-16-04. Processed means that they cashed the check and recorded the transaction in the computer system. On page 18 she states that the system will not allow a payment to process after a certain number of days. The Lurie payment was handled manually by a Clerk that keyed the information into the computer system. The computer allowed the transaction and the Clerk processed the payment into the system. There was no hold or anything on the policy.

Page 3:
Lurie v. Globe

It should be noted that while the Certificate says there is a Grace Period of 31 days for each payment the Reinstatement portion clearly shows that this is available up to **ONE YEAR** after any default in premium.

There is no question that Mr. and Mrs. Lurie intended to reinstate the policy and This was accepted and reinstated by Globe as part of their standard practice to accept premium within one year of a lapsed policy and allow 31 days for each payment due. At the time of the payment there were two payments due to reinstate the policy with a paid to date of 01-28-04.

Ms. Hernandez indicated in her deposition ( page 18) that you know if someone is late on premium and it is part of the account information that comes up on the computer. When you get the screen of information it clearly provides this information and you know by the PAID TO DATE information shown. The Final Notice gave the due by date of 10-17-06, and the payment was processed for two months coverage with a paid to date of 01-28-04.

Mr. Mendez indicate also in his deposition ( page 10 & 18) that for any call received on a policy that Globe would know immediately if a policy had lapsed or if the premium needed to be paid.

Review of the documents indicate that it is Globe's common practice not to require any Evidence if Insurability on policies less than 60 days past due. This evident by the actions of Globe. The payment was processed and there was no request by Globe to David Lurie to provide any Evidence of Insurability. At the time of the payment being Mailed, January 5,2004, there was absolutely no change in the health condition of Mr. Lurie that would restrict reinstatement. Mrs. Lurie mailed the payment immediately after receipt of the Final Notice and the payment was processed , check cashed, on 01-16-04 and prior to the due date of 01-17-04. The reinstatement was made in accordance with Globe's standard practice and procedure with the policy being effective until 01-28-04.

The documents reflect that Mrs. Lurie retained the services of an Attorney Matthews who made calls and written notification to Globe, in January,2004, concerning the accident and death of Mr. Lurie.

In the deposition of Sandy Whitaker she indicates, (page 149), that Globe has checks and balances to see a claim is not mishandled. On page 81, of her deposition she states that in the Claims Department of Globe there is no procedural manual or anything. Their training is based on one on one training so there is nothing in writing at Globe that Sets out how the claims on any policies are administrated. There is nothing in writing for training an individual( page 83).

Page 4:
Lurie v Globe

Other than the policies everything else is by word of mouth and only known in the minds of the different individuals in the Claims Department. This is a Deviation From Industry Standards to administrate Claims without any written Policies and Procedures to guide the individuals handling the claims nor train the persons that will be handling claims.

Ms. Whitaker admits:

Page 84: She approves the claim and suggest payment of the Claim.

She did not verify the policy was in force.

She did not verify the premiums had been made.

After she approves the claims and Legal approves the claim it is then up to the Claims Examiner to determine what benefits due under the policy.

This is a deviation from Industry Standards where the Manager approves payment, Legal approves payment and then it is left to the Claims Examiner to determine any coverages due. Industry Standards are just the opposite. First you review the policy and determine if it was in effect on the date of loss and if the Company had received and Accepted the premium before or after the due date. The Claims Examiner must explain the coverages afforded under the policy and then Management will approve the payment. Here the payment was initially Approved by the Manager and Corporate Legal and then it was submitted to the Claims Examiner to look for a denial basis. Based on the Training of the Claims Examiner being only oral it is obvious that Globe never considered the ramifications of Acceptance of Premium after lapse and cancellation. It is obvious from the documents reviewed that there is nothing to show that the Claim Manager nor Corporate Legal gave consideration to this **CRITICAL** aspect of coverage.

Review of the Book - **ALABAMA LIABILITY INSURANCE HANDBOOK** - BY: Attorney Bibb Allen ( No relation to me)

He states: on page 509 of his book - 23-7(g). That:

**Acceptance of Premium After Cancellation Waives Cancellation.**

"Where an insurer accepts a premium after knowledge of a breach of policy provision, the insurer waives its right to cancel the policy. - Nationwide Mut.Ins.Co.v. Clay,525So.2d 1339(Ala.1987),cert denied,488 U.S.1040(1989).

Page 5:
Lurie v. Globe

Bates document LURIE 0005 shows that payment was approved with full knowledge that there was a late premium payment. This was correct as Globe routinely accepts overdue premium for up to one year and routinely reinstates policies upon receipt of all the overdue premium. Globe's policy does not show it questions insurability within 60 days and Mr. Lurie died from an accident that had nothing to do with his insurability. There was nothing to contest about Mr. Lurie's death and his policy application. The cause of death was accidental and was specifically covered under the policy. Moreover since the deposition testimony of Mrs. Lurie states , page78, Globe Life was notified of the Insured's death as of 01-12-04, before cashing the premium. On page 79 it shows that even though Globe know of the death they said that this was not a problem with the policy being in force as long as the premium was received by January 17, 2004. The records are undisputed in that the premium was cashed on January 16,2004. In fact there is no dispute that Globe Life was notified of the Insured's death by Attorney Matthews and Mrs. Lurie as of January 12, 2004. This was before the date that Globe Life cashed the check. Give the fact that the above is undisputed Globe Life accepted the risk, reinstated the policy and should have paid the claim. All defenses as to the Insured being deceased were thereby waived and the policy was reinstated. Please refer to Bibb Allen's book on this issue.

Globe elected not to reject the premium payment full well knowing of the Insured's death, and that the crediting of the past due premium from a lapse, a breach of policy conditions, would reinstate coverage and provide coverage forward of the dates in arrears.

Globe knew that the policy had lapsed, a breach of policy conditions, Globe knew of the Insured's death and then accepted the premium payment from the Insured. The requirement that the payment had to be manually input reflected on the knowledge of Globe that they were accepting payment after the known breach of policy conditions. This is within the standard Company procedure to reinstate any policy up to one year when the payment is made for all amounts due and to not require any evidence of insurability within 60 days. Based on the Globe procedures the policy was correctly reinstated as the payment was credited to the Policy before the due date stated in the final notice, there was no requirement for evidence of insurability, and all overdue premiums had been paid. The policy was effective and paid up to 01-28-06. Based upon Globe's own testimony, the claim should have therefore been paid.

Page 6:
Lurie v. Globe

It has been my experience that the date anything is mailed is considered as the date the item was transferred to the addressee. Example: Taxes are Due on the 15th of April. As long as the item is mailed by that date it is considered as having been received for delivery to the IRS/State. Mrs. Lurie mailed the payment on the 5th of January for the policy to be reinstated and this was accepted and done by Globe on 01-16-04. When the payment was mailed there was no conceivable way that Ms. Lurie could have known of the impending accidental doom that was facing her husband. The payment was made in Good Faith and was appropriately credited to the policy in accordance with Globe's accepted and usual procedure on accepting past due premiums and reinstating a lapsed policy without evidence of insurability within 60 days of a lapsed policy.

After Globe knew of the breach of the policy condition and the Insured's death they elected to waive the breach and reinstate the policy. It is a Deviation of Industry Standards to have knowledge of the Insured's death, accept the premium, acknowledge and accept the late payment, reinstate the policy in accordance with accepted and standard practice of the Company and then deny the claim with coverage in full force and effect.

Bates document Lurie - 0019, Policy information screen shows that :

The last premium was cash.

The policy was paid to 01-28-04

The policy was billed to 01-28-05

The last bill was 01-18-04.

There is no question the policy was reinstated and in fact had been billed again after the payment was posted on 01-16-04, and the policy was paid to 01-28-04.

Bates document Lurie-0047 also shows the policy is paid to 01-28-04. This is a different document from Lurie -0019.

There is no question that Globe accepted the premium, waived the lapse and reinstated the policy back to 11-28-03 and recorded that the policy was paid to 01-28-04. This was accepted and normal Company procedure.

Page 7;
Lurie v Globe.

The Claims Examiner for Globe only started to look for a denial basis after payment was approved and the claim was recommended to be paid by the Claim Manager and Corporate Legal.Claim Manager Whitaker said it was the Claims Examiners role to go in behind her and bring anything that appears inappropriate to her attention. This is a Deviation from Industry Standards. Based on Globe having no written procedures and the Claims Examiners only receiving limited verbal training it is obvious that neither the Claims Examiner nor anyone at Globe properly understood that Globe waived any lapse/cancellation by accepting the premium on 01-16-04, and within the time limit set by Globe of 01-17-04.

Claim Manager Whitaker further acknowledged ( page 90 of depo.) that She doesn't know if she verified that the system indicated that the policy was paid up to January 28, 2004. On page 94 she further indicated that Globe did not verify any payments before starting an investigation. This is also a Deviation from Industry Standards.

The first thing Claims Examiner should do is verify the coverages and the effective dates. Had this been done then, CM Whitaker would have known that coverage was in force for the date of loss and that Globe had accepted the reinstatement in accordance with the usual and customary practice of the Company and within the stated time frame. Since there are no Claims procedures or Claim manuals, this is an Unfair Claims Practice , to guide to people in Claims or Corporate Legal no one understood that once the company had been notified of the Insured's death, the premium was accepted and posted that there was an absolute waiver of the cancellation/lapse. No one at Globe recognized that the claim was undeniable due to their knowledge and actions. The policy provides for reinstatement, the policy was reinstated and then when the claim arrived Globe did not administrate the policy in accordance with the written and accepted conditions providing coverage for this loss.

Even after recognition of a coverage problem there was no notice sent to the Insured of any coverage problem. Industry Standards call for the Insured to be notified for any coverage problem in the form of a Reservation of Rights or a Non-Waiver letter. On page 44 of the Whitaker deposition she indicates that she does not even know what a Reservation of Rights is and she has had 30 years in claims. Any experienced claims examiner who has had proper Industry Training would know what a Reservation of Rights is and that it needed to be sent on any issue of coverage. There is nothing in place to keep Globe from making up the rules as they go along in handling claims.

Page 8:
Lurie v Globe

     This reflects further how Globe cannot follow Industry Standards as they have no written procedures to inform and train people of what the Industry Standards are and only rely on word of mouth from 2 people to train their personnel. The Management has nothing to guide anyone in the administration of claims and this is why this claim was wrongfully denied . No one at Globe knew that Based on Industry Standards and Alabama Legal Opinions- See Bibb Allen's book- that Globe had waived its cancellation/lapse rights based on acceptance of the premium. Apparently, it was an intentional act on the part of Globe not to have any written policies and procedures and Globe acted in a Deviation from Industry Standards by failing to have any written guidelines to administer their policies. This is an Unfair Claims Practice. ( see Loyal American v. Mattiace 679 So.2nd 229 Ala.1996).

     Ms. Whitaker and the Legal Department were correct in their initial approval of the claim and authorized payment of benefits  based on the facts as of May 6, 2004, Whitaker Depo Page 73. After this a Globe Claims Examiner apparently brought forth a conceived reason for a denial of benefits that was erroneous from it's inception. Since no one has any written guidelines, procedures, understanding of Industry Standards, or an understanding of Alabama Law the claim was wrongfully denied.

     In sum it is my expert opinion that the denial of benefits in this case  was inconsistent with Industry Standards and  deviated from Industry Standards.

     If you have any further questions - please advise.

          Sincerely,

          John H. Allen

EXHIBIT "A"

1).     Deposition of Barbara Hernandez.

2).     Deposition of Daniel Mendoza

3).     Deposition of Sandy Whitaker

4).     Bates Documents - Laurie 0001 to 0062

5).     Multiple Industry Treatises-
        **Alabama Liability Insurance Handbook - Attorney Bibb Allen**

        **Liability Claims Practices - 1ˢᵗ Edition -American Institute for Chartered
        Property Casualty Underwriters/Insurance Institute of America.**

        **Personal Insurance - 1ˢᵗ Edition -Launie,Rejda and Oakes.**

6).     Attorney Matthews correspondence of 10-17-06 to Attorney Poundstone.

7).     Deposition of Karen Lurie.

8).     Case Law - Loyal American Life Ins. v. Mattiace. Ala.1996

*Exhibit "B"*

## CURRICULUM VITAE

    JOHN H. ALLEN, A I C, C F E    
P. O. BOX 531166
MOUNTAIN BROOK, ALABAMA 35253
OFFICE (205) 592-4507
FAX (205) 595-7832

### EDUCATION:

University of Alabama – B. S. – Commerce and Business Administration – 1971
Aetna Advanced Claim School – 1984
Insurance Institute of America – Associate in Claims – 1991
Multiple Seminars conducted in Proper Claims Handling
Society of Certified Insurance Counselors – Agency Management Institute – 1994
Association of Certified Fraud Examiners – Certified Fraud Examiner – 1996

### EMPLOYMENT:

#### John H. Allen Consulting – January 1993 to Present

Consultant and expert witness in insurance claims coverage and claims handling
involving commercial lines, bonds, personal lines, health, life, workers
compensation, and disability policies for Bad Faith, Fraud and Tort of Outrage in
claims handling.

Stockholder audits of carrier claims practices and sales.

Investigations of claims and accidents involving, but not limited to: trucks, autos,
general liability, dram shop, commercial liability, personal liability, professional
liability, workers compensation, real and personal property, products liability,
uninsured/underinsured motorist, fire loss, accidental shootings, and witness
locations. Disability Coverage, Indemnity Coverage, Agent Fraud, Agent E&O.
Carrier liabilities to other carriers in policy coverage. Pattern and Practice. Group
Policies. Life Insurance Fraud.

Service of Process.

#### Aetna Casualty and Surety – July 1983 to December 1992

Responsible for the complete development and disposition of complex and unique
claims / catastrophic cases / lawsuits within Alabama. Technical advisor on technical
claim related matters. Counsel and assisted in training of claims personnel.
Coordinator of departments technical training.
Reclamation, Fidelity, and Surety Bonds. All hazardous Waste claims for the state.
Commercial auto, trucking, property, medical malpractice claims. Extra-contractual
suits for state involving bad faith, fraud and tort of outrage. Workmen's
compensation claims. Large account consultations of pending claims.

-2-

<u>Stonewall/Dixie Insurance Companies 1979 – 1983</u>

Claims Manager – Personal lines. Supervised Auto and Property Unit, Subrogation Unit of handling of claims in 26 states.

Responsible for training and supervision of claims examiners for each unit, granting of authority for settlement of claims in each unit. Coverage approval for acceptance and denial of claim.

Coordination of defense for cases.

Claims Examiner – Liquor Liability Unit. Handling of investigations and directing independent investigations on Dram Shop cases in Michigan and Minnesota. Evaluated and negotiated settlements of claims, coordination of defense.

Claims Examiner – Auto Unit

<u>National Producers Life Insurance Company 1978 – 1979</u>

Consultant for litigation and accounting systems.

<u>Alabama Power Company 1971 – 1978</u>

Resident Claims Agent – Responsible for investigation, evaluation and settlement or defense of product liability, general liability, auto, truck, and electrical contact claims.

Workmen's compensation claims, employee dishonesty investigations, and power theft investigation.

Court Trials

1. Paul Turner v. Liberty National Fire Ins.
   A. Plaintiff Attorney Don Word
   B. Defense Attorney Tom Ellis
   Circuit Court of Jefferson County, Alabama
   Trial in Butler, Alabama

2. Susie Palmer v. State Farm Insurance
   A. Plaintiff Attorney James Thompson
   B. Defense Attorney Bert Nettles
   Circuit Court of Tuscaloosa County, Alabama
   Trial in Tuscaloosa, Alabama

3. Pennsylvania National Mutual Ins. Co. v. The Tape-Craft
   Corporation, Aetna Casualty and Surety Co.,Liberty Mutual Ins.
   Co.
   A. Plaintiff Attorney Susan S. Hayes
   B. Defense Attorney Christopher M. Hopkins
   Circuit Court of Calhoun County, Alabama
   Trial in Anniston, Alabama

4. Danny & Cheryl Nixon v. Norman Wilder and Fire Insurance
   Exchange.

   A. Plaintiff Attorney Terrell Wynn
   B. Defense Attorney Robert Mckenzie
   Circuit Court of St. Clair County, Alabama
   Trial in Pell City, Alabama

5. Karen Shelby v. Safeway Insurance Company

   A. Plaintiff Attorney Roger K. Fuston
   B. Defense Attorney Tom Ellis
   Circuit Court of Jefferson County, Alabama
   Trial in Birmingham, Alabama

6. Luellin Wagner v. National Security Fire and Casualty Co. Inc.
   A. Plaintiff Attorney Tom Willingham
   B. Defense Attorney Rod Nelson
   Circuit Court of Jefferson County, Alabama
   Trial in Birmingham, Alabama

7. CCEDC v. National Security Fire and Casualty Co. Inc.
   A. Plaintiff Attorney Chris Hopkins & Virginia Hopkins
   B. Defense Attorney Charlie Gaines

Court Trials

8.  Carolin Marie Barton v. Shelter Mutual Insurance Company
    A. Plaintiff Attorney – Jonathan Lowe
    B. Defense Attorney – Nicholas J. Steles

9.  Ava Jackson vs. Crossroads Insurance et al.

    A. Plaintiff Attorney – Deborah McDonald
    B. Defense Attorney – Richard Edmonson

Page 2:

1.  Insurance Claims Handling in bad faith:
    A.  Plaintiff Attorney Tim Donahoo
    B.  Defense Attorney Nat Bryan

2.  Medical Coverage on pre—exis~ing condition:
    A.  Plaintiff Attorney Gary Hooper
    B.  Defense Attorney Cecil H. Mccoy Jr.

3.  Automobile Insurance Coverage question on policy cancellation:
    A.  Plaintiff Attorney Alva Caine
    B.  Defense Attorney Paul Miller

4.  Denial of Health Benefits:
    A.  Plaintiff Attorney K. Summerall
    B.  Defense Attorney J. Allen Schreiber

5.  Accident Policy Denial of Benefits:
    A.  Plaintiff Attorney Tom Methvin
    B.  Defense Attorney Sam Franklin

6.  Home owners denial of defense in libel suit:
    A.  Plaintiff Attorney Billy Underwood
    B.  Defense Attorney J. Michael Tanner

7.  Health Policy denial of benefits:
    A.  Plaintiff Attorney C. Delaine Mountain
    B.  Defense Attorney Wilbur J. Hust Jr.

8.  Denial of Life Insurance benefits:
    A.  Plaintiff Attorney Dee Miles
    B.  Defense Attorney Bill Wood

9.  Denial of Defense for property damaged caused by product:
    A.  Plaintiff Attorney Joel Williams
    B.  Defense Attorney John M. Fraley

10. Denial of benefits on Cancer policy:
    A.  Plaintiff Attorney Archie Lamb
    B.  Defense Attorney (Unknown)

11. Boardman Petroleum v. Firemans Fund
    A.  Plaintiff Attorney Raymond Chadwick
    B.  Defense Attorney Bridget A. Kelly

Page 2:

12. Joseph Moorer v. Republic American Life.

    A. Plaintiff Attorney : Dee Miles
    B. Defense Attorney : David Allred

13. John Carton v. Casualty Reciprocal Exchange
    A. Plaintiff Attorney .Richard D. Stratton
    B. Defense Attorney .      J. Michael Tanner

14. Campbell v. Golden Rule Insurance
    A. Plaintiff Attorney .Tom Dutton
    B. Defense Attorney .Ben Albritton

15. Paul Turner v. Liberty National Fire Ins.
    A. Plaintiff Attorney .Don Word
    B. Defense Attorney .     Tom E. Ellis

16. Williams v. Ford Motor Credit
    A. Plaintiff Attorney .Tom Methvin
    B. Defense Attorney .Unknown

17. Alfa v.Alabama City Church of God
    A. Plaintiff Attorney .Jim Sasser
    B. Defense Attorney .     Tony Hebson

18. Ava Greene v. Washingtin National Insurance Co.
    A. Plaintiff Attorney .Banks Herndon
    B. Defense Attorney .Bo Perry and Frank Lankford

19. Colonial Life and Accident Ins. Co. v. Home Insurance Co
    A. Plaintiff Attorney .Ross Forman,Robert Given
    B. Defense Attorney .S. Allen Baker Jr.

20. Susie Palmer v. State Farm Insurance
    A. Plaintiff Attorney .James Thompson
    B. Defense Attorney .Bert Nettles

21 Murrell Campbell v. Central Reserve Life Insurance
    A. Plaintiff Attorney .Houston Howard
    B. Defense Attorney .Joe Carpenter

22. Pennsylvania National Mutual Insurance Co. v.
    The Tape- Craft Corporation,Aetna Casualty &
    Surety Co., Liberty Mutual Insurance Co.
    A. Plaintiff Attorney .Susan S. Hayes
    B. Defense Attorney .Christopher M. Hopkins

Page 2:

23. Industrial Dist::ibution Services v. U.S.F. & C.
    A. Plaintiff Attorney .Richard. D. Stratton
    B. Defense Attorney .Rod Nelson

24. Missouri Electric Works, et al. v. U.S.F. & C.
    A. Plaintiff Attorney .John Cowling
    D. Defense Attorney .Lon A. Berk

25. J.A. Faircloth & Co. Inc. v. U.S.F. & G.
    A. Plaintiff Attorney .Randall B. James
    B. Defense Attorney .James J. Bushnell, Jr.

26. Al. Central Credit Union v. J. and B. Padgett v. CUNA Mutual
    A. Plaintiff/Counterdefendant .Al. Central .
    B. Defendant/3RD Party Plaintiff J&B Padgett.Dawn W. Hare
    C. Third Party Defendant .CUNA Mutual .Ben Brooks

27. Danny and Cheryll Nixon v. Norman Wilder and Fire Ins.Exch.
    A. Plaintiff Attorney .Terrell Wynn
    B. Defense Attorney .Robert Mckenzie

28. Jerry Bell v. Nationwide Insurance
    A. Plaintiff Attorney .Tom Willingham
    B. Defense Attorney .Edgar Elliott IV

29. Wilburn v. Illinois National Insurance
    A. Plaintiff Attorney .Joey James
    B. Defense Attorney .Tony Fox

30. Swinney v. Empire Fire and Marine
    A. Plaintiff Attorney .Joey James
    B. Defense Attorney .Woody Sanderson

31. Swinney v. General Agents Insurance Company of America
    A. Plaintiff Attorney .Joey James
    B. Defense Attorney .Joe Stott

32. Michael E. Chadwell vs. American States Insurance
    A. Plaintiff Attorney Desmond Tobias
    B. Defense Attorney : Larry Bradford

Page 2:

33.    Safeway Insurance Company vs. David Mann and Estate
                                          of Shawn Mann
       A.  Plaintiff Attorney : Deborah Braden
       B.  Defense Attorney : Philip K. Seay.

34.    Shady Grove Baptist Church vs. State Farm Ins.
       A.  Plaintiff Attorney : Patrick Patronas
       B.  Defense Attorney Bert Nettles

35.    Ted Thrift vs. UNUM Life Insurance Co.
       A.  Plaintiff Attorney; Thomas P. Willingham
       B.  Defense Attorney : Carter H. Dukes

36.    Luellin Wagner vs. National Security Fire and Casualty Co.,
                                    Inc.
       A.  Plaintiff Attorney: Thomas P. Willingham
       B.  Defense Attorney:; Rod Nelson

37.    Planet Insurance vs. C & C Riggers

       A.  Plaintiff Attorney : Taz Shepard
                                   Vernon Wells
       B.  Defense Attorney      Robert Potter

38.    CCEDC vs. National Security Fire and Casualty CO. Inc.

       A.  Plaintiff Attorney : Chris Hopkins Virginia Hopkins
       B.  Defense Attorney : Charlie Gaines

39.    Ava Jackson vs. Crossroads Ins. et al.

       A.  Plaintiff Attorney : Deborah McDonald

       B.  Defense Attorney: Richard Edmonson

40.    Carolin Marie Barton v. Shelter Mutual Insurance company

       A.  Plaintiff Attorney : Jonathan Lowe

       B.  Defense Attorney : Nicholas J. Steles

Page 2:

41.   Thompson Tractor Comnpany vs. U. S. F. & G.

      A. Plaintiff Attorney : Blane H. Crutchfield

      B. Defense Attorney : Tom Coleman


42.   Mary Pelt, et al. Vs. Liberty National Life Insurance Company

      A. Plaintiff Attorney : Booker T. Forte Jr.

      B. Defense Attorney : Bill Donald


43.   Southern Cleaning Service vs. C N A and R L Insurance
      Companies

      A. Plaintiff Attorney - Alan C. Furr

      B. Defense Attorney - C N A - Bryan S. Tyra

      C. Defense Attorney - R L I - Brenen G. Ely


44.   Joan Palmer vs. New York Life

      A. Plaintiff Attorney - Joey James

      B. Defense Attorney - John N. Bolus


45.   Mr. And Mrs. Barakat vs. Nationwide Insurance

      A. Plaintiff Attorney - Jason Shamblin

      B. Defense Attorney - Lynn Hare