**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **KAREN LURIE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CASE NO. 1:06-cv-00034-MEF** |
| ) | |
| **GLOBE LIFE AND ACCIDENT** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S MOTION TO EXCLUDE
### OPINION TESTIMONY OF WITNESS JOHN H. ALLEN

### PRELIMINARY STATEMENT

Defendant, Globe Life and Accident Insurance Company, (hereinafter referred to as "Globe Life") files this motion to exclude opinion testimony pursuant to FED.R.EVID. 702 and Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U. S. 579, 113 S.Ct. 2786, 125 L.Ed 2d 469 (1993).

### STATEMENT OF FACTS

Mr. John H. Allen has been identified by Plaintiff as her "expert" witness to address issues in this action pertaining to reinstatement of life insurance and industry accepted standards relating to procedures of processing and adjusting claims under life insurance coverage. However, Mr. Allen has little to no training or education in the field of life insurance (Allen depo. at 19:1-9, 59:14-61:11)[1]. The only life insurance training that Mr. Allen may have had would have come in a portion of one of the four courses that he took in order to receive his

---

[1] The transcript of John Allen's deposition in this case, along with exhibits thereto which are pertinent to this motion, are attached hereto as Exhibit A.

Associate in Claims ("AIC") designation. (Allen depo. at 59:14-61:11). In fact, he cannot even recall whether or not there was any life insurance issues discussed in that course. (Allen depo. at 59:14-61:11).

Additionally, he has no employment experience with regard to any aspect of life insurance, including but not limited to life insurance claims processing. (Allen depo. at 28:1-2; 31:1-10; 45:6-7; 50:7-22). Rather his experience in the insurance industry is limitied to: adjusting and processing property, casualty and other non-life insurance claims for Alabama Power Company (Allen depo. at 26:23-28:2); conducting inventory of grave sites in cemeteries for National Producers (Allen depo at 29:17-30:8); investigation and adjustment of automobile, dram shop and subrogation claims for Stonewall Dixie Insurance Company (Allen depo. at 30:11-31:13); and adjusting business insurance claims (i.e., workers compensation, casualty, fidelity bonds, surety bonds, reclamation bonds and business interruption claims) for Aetna Insurance Company (Allen depo. at 44:11-5). Mr. Allen even admitted in his deposition that none of these jobs involved life insurance. (Allen depo. at 28:1-2; 31:10-11; 45:6-7).

Mr. Allen was fired from his job at Alabama Power due to a marijuana arrest. (Allen depo. at 28:8-15). Mr. Allen left the employ of National Producers because it was not a "fruitful" job and because the company went bankrupt. (Allen depo. at 30:3-8). Mr. Allen was fired from his job at Stonewall Dixie, but claims it was because he blew the whistle on illegal activities that were taking place at the company. (Allen depo. at 33:15-40:9). The reason for Mr. Allen's separation from Aetna in December 1992, his last insurance employer, is uncertain. Mr. Allen admitted that he had been reprimanded by Aetna and that his supervisor has testified that he was fired; however, Mr. Allen's contends that his position at Aetna was eliminated. (Allen depo. at 47:19-48:23).

At any rate, upon leaving the employ of Aetna, Mr. Allen went into the consulting/expert witness business. (Allen depo. at 50:23-51:3). He states that he has given 58 or 59 depositions in his career. (Allen depo. at 14:23-15:4). He admits that only <u>three</u> of those depositions have even involved the field of life insurance. (Allen depo. at 69:22-70:21; 83:1-87:22). One of those two life insurance cases was limited to the issue of whether the cash value or "policy fund" should have been sufficient to keep the policy in benefit. (Allen depo. at 83:1-86:19).

Mr. Allen admits that he has twice knowingly given false testimony under oath in a previous deposition:

> <u>Joseph Moorer v. Republic American Life Insurance</u> – Allen responded "no" to an inquiry as to whether he had ever been arrested, when he knew the answer was false. (Allen depo. at 13:21-14:22).

> <u>Joseph Moorer v. Republic American Life Insurance</u> - Allen responded to a question as to why he left the employ of Alabama Power Company that the only reason he left Alabama Power was that he had "a better opportunity with National Producers." However, contrary to this testimony, Allen was fired by Alabama Power and admitted in his deposition in this case that he knew the answer was not the truth when he gave it. (Allen depo. at 40:10-42:3).

Furthermore, Allen's past testimony has also shown that he has a blatant disregard for the truth and full disclosure, if not rising to the level of knowingly giving false testimony. For example:

> <u>Joseph Moorer v. Republic American Life Insurance</u> - Allen failed to disclose the fact that he was fired from his job at Stonewall Dixie Insurance Company in response to a question as to whether he had any complaints, reprimands, or discipline while employed by Stonewall Dixie. (Allen depo. at 35:12-40:9).

> <u>Brooks v. American Fidelity</u> - Allen failed to disclose the fact that he was fired from his job at Stonewall Dixie in response to being questioned why he left his job at Stonewall Dixie. (Allen depo. at 31:14-35:4).

Mr. Allen's response to questions of why he lied under oath in previous sworn deposition testimony showed a blatant failure to appreciate the seriousness of the oath he takes before testifying. Allen called his knowingly false answer to the question whether he had ever been

arrested merely a "judgment error." (Allen depo. at 14:10-22). Similarly, he testified that his failure to disclose the fact he had been fired from Alabama Power, in response to a question of why he left the employ of Alabama Power, was also a "judgment error." (Allen depo. at 42:4-20).

In addition to knowingly giving false testimony under oath, Mr. Allen has knowingly provided untrue responses on employment applications as he admitted in his deposition that he intentionally lied on job applications when he failed to disclose his marijuana conviction. (Allen depo. at 29:9-16). He also failed to disclose the fact that he was terminated from his job at Stonewall Dixie on his application with Aetna. (Allen depo. at 43:10-44:8).

## ARGUMENT

I. **MR. ALLEN'S TESTIMONY SHOULD BE EXCLUDED UNDER RULE 702 OF THE FEDERAL RULES OF EVIDENCE DUE TO LACK OF QUALIFICATIONS OF THE WITNESS.**

Whether or not to permit an expert to testify "is governed by Rule 702 of the Federal Rules of Evidence, which lays the foundation for a trial court's *Daubert* analysis. Benkwith v. Matrixx Initiatives, Inc.*,* 2006 WL 3804547 at *2 (M.D. Ala. Dec. 27, 2006). Federal Rule of Evidence 702 provides: "[i]f scientific, technical, or other specialized knowledge will assist a trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by *knowledge, skill, experience, training, or education*, may testify thereto in the form of an opinion or otherwise." (Emphasis added.) The rule lays out three tests, each of which must be met before a witness can give expert testimony. First, the testimony must be "scientific, technical, or other specialized knowledge"– the knowledge test. Second, the knowledge must "assist a trier of fact to understand the evidence or to determine a fact in issue"– the helpfulness test. Lastly, the witness must be qualified as an expert by "*knowledge, skill, experience,*

*training, or education*"– the qualifications test.[1]  It is the third test that Mr. Allen fails.  Mr. Allen is not qualified as an expert and, therefore, his testimony is not admissible.  "District courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'"  FED. R. EVID. 702.  "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified in a particular field or on a given subject."  Wilson v. Woods, 163 F.3d 935 (5th Cir. 1999) (quoting Holbrook v. Lykes Bros. Steamship Co., Inc., 80 F.3d 777, 781 (3d Cir. 1996)).  This Court must make a preliminary determination regarding whether Mr. Allen is qualified under Rule 702.  See Holbrook, 80 F.3d at 781; See also Benkwith, 2006 WL 3804547 at *3 ("Rule 702 imposes upon a district court the duty to act as a 'gatekeeper' for expert scientific testimony before it may be admitted into evidence.")(citing Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); General Electric v. Joiner, 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)).

Federal courts have consistently excluded witnesses, such as Mr. Allen, whose knowledge and experience is not within the specific area of a general subject matter for which the expert testimony is proffered.  In Wilson, the Fifth Circuit Court of Appeals affirmed the trial court's finding that a proffered expert lacked the requisite qualifications.  Wilson, 163 F.3d at 937.  Specifically, the Court found that although the witness was an expert in certain fields, such as fire origin and cause, he was not qualified to give expert testimony in the area of accident reconstruction.  Id.

In Watkins v. Telsmith, Inc., 121 F.3d 984 (5th Cir. 1997), the Plaintiff offered the testimony of an expert to assert that a conveyor was unsafe and that alternative designs were

---

[1] See Black, Bert, Expert Evidence in the Wake of the Daubert-Joiner-Kumho Tire Trilogy, presented at the American Bar Association 1999 Annual Meeting.

feasible. The court found the expert to be unqualified because his training was in civil engineering while the expertise required of the case was in mechanical engineering. Watkins, 121 F.3d at 988. The expert had no education in mechanical engineering and his experience was completely lacking. Id. In the present case, like Watkins, the proffered expert does not have the necessary qualifications. While Mr. Allen has considerable experience with regard to property and casualty claims, his experience in the life insurance area is completely lacking. Just as the expert in Watkins had experience in the wrong field of engineering, Mr. Allen has experience in the wrong field of insurance.

District Courts in the Eleventh Circuit have issued decisions consistent with these opinions. For example, in Everett v. Georgia-Pacific Corp., 949 F.Supp. 856 (S.D. Ga. 1996), the Plaintiff offered a physician to provide expert testimony in the filed of toxicology. The purported expert, however, did not practice in the filed of toxicology and had no specialized training in toxicology. Everett, 949 F.Supp. at 858. Rather, the purported expert practiced family medicine and surgery. Id. Based upon these findings, the United States District Court for the Southern District of Georgia excluded the physician from testifying finding that he was "not qualified to give expert testimony as to the cause of the [Plaintiff's] medical condition." Id.

Furthermore, the Eleventh Circuit Court of Appeals has upheld trial courts' decisions excluding testimony in these types of cases. For example, in Montgomery v. Noga, 168 F.3d 1282, 1302 (11th Cit. 1999), the Eleventh Circuit upheld a trial court's exclusion of a purported expert because his experience and expertise concerning computer software was not "germane to the issues involved in the case." Specifically, the purported expert was proffered as an expert in computer software licensing practices, the various types of software licenses available and the pricing of unlimited use licenses. Id. However, the trial court found that his knowledge and

experience specifically pertained to development, marketing and licensing of software used by individual banks and that he had insufficient knowledge of the issues on which he was being proffered, which were negotiating utility licenses and marketing the type of software distributed as "shareware" and/or under a "shrink-wrap license." Id.

In fact, an issue similar to the one before this Court was faced by the Third Circuit Court of Appeals in the case of *In re:* Unisys Savings Plan Litigation, 173 F.3d 145 (3d Cir. 1999), *cert. denied,* Meinhardt v. Unisys Corp., 528 U.S.950, 120 S.Ct. 372, 145 L.Ed.2d 290 (1999), in which the Court held that the trial court did not abuse its discretion by refusing the proposed testimony of an expert because, among other things, his expertise was in the wrong type of insurance. In Unisys, an action was brought by employees who had participated in employee pension plans maintained by Unisys, alleging that the defendants had breached their fiduciary duties by investing in guaranteed investment contracts. Id. The Plaintiffs offered the testimony of a proposed expert witness to testify on the subject of customary methods of investigating the financial condition and creditworthiness of insurance companies, but the trial court excluded the testimony. Unisys, 173 F.3d at 155. The Third Circuit Court of Appeals affirmed the trial court's decision noting that the expert's alleged expertise did not "fit with or meet the need of the District Court for expert testimony" under the facts of the particular case because his expertise was in property casualty insurance, not life insurance. Unisys, 173 F.3d at 156-7.

In the instant case, like Unisys, Mr. Allen's expertise is in the wrong field of insurance. The central issues in this case involve questions peculiar to life insurance claims handling. Without any expertise in this area, Mr. Allen cannot assist the jury. See, FED. R. EVID. 702. This is apparent in Mr. Allen's testimony concerning and his use of the term "reservation of rights," which is a term used in liability insurance and not life insurance. (Allen depo. at 62:20-

67:9; 77:21-79:8).  Mr. Allen is of the opinion that Globe Life should have issued a reservation of rights to the Plaintiff in this case, however, he admitted in deposition testimony that he has <u>never</u> seen term reservation of rights used outside of liability insurance and bonds.  (Allen depo. at 65:10-67:9; 77:21-79:8).  Furthermore, Mr. Allen is not aware of any authoritative source that would even suggest the term "reservation of rights" has a place and application in the context of handling life insurance claims.  (Allen depo. at 78:17-79:8).  Although Mr. Allen admitted in deposition that he could not point to any instance where any insurance company utilizes the term "reservation of rights" in connection with life insurance, Mr. Allen agreed that he would research the issue and report back if he found any such instance.  (Allen depo. at 114:17-115:5).  Not surprisingly, Globe Life's counsel has heard nothing back from Mr. Allen on this point.

Lastly, Globe Life would direct this Court to <u>Kumho Tire Co., Ltd., v. Carmichael, etc., et al.</u>, 526 U.S. 137, 119 S.Ct.1167, 143 L.Ed.2d 238 (1999), in which the United States Supreme Court decided that the <u>Daubert</u> standards apply, not just to soft science, but to all expert testimony in the federal courts.  The Court also confirmed that all experts are subject to <u>Daubert</u>'s requirement that their testimony constitute genuine knowledge from their field.  <u>Id</u>.; <u>See also Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  Mr. Allen's testimony clearly indicates that life insurance is not his field.

**II.    THE LACK OF OBJECTIVITY AND APPARENT ADVOCACY RENDERS THE OPINIONS OF JOHN ALLEN UNRELIABLE.**

The requirement of reliability recognized by <u>Daubert</u>, <u>supra</u>, and its progeny does not require neutrality or complete objectivity on the part of the purported "expert" to permit his opinions as testimony, for clearly, a party would not attempt to advance the opinion of an expert witness if the opinion was not favorable to such party.  However, there is a line of advocacy, which if crossed by a witness intending to give expert testimony, should require exclusion of

such testimony as "unreliable" and unfairly prejudicial. Conde v. Veliscol Chemical Corp., 804 F. Supp 972 (S.D. Ohio 1992) aff'd 24 F. 3d 809 (6th Cir. 1994). Defendant submits that that line has been crossed by this witness.

The basis for Defendant's contention that Mr. Allen should be prohibited from testifying as an expert due to advocacy arises out of his opinion concerning Globe Life's letter to its insured dated January 2, 2004. (Ex. 10 to Allen depo.). Mr. Allen referred a sentence in part of the third paragraph from this letter as his basis that the subject policy was properly reinstated. (Allen depo. at 89:4-91:7). He concluded that the policy would be reinstated if Globe Life received the premium payment by January 17, 2004. However, paragraph 3 of this letter states as follows:

> "If you have not had a chance to do so, please send your payment along with the attached notice and the benefits of your policy will be reinstated **provided the insured is in good health**. We must receive your payment by January 17, 2004."

(Ex 10 to Allen depo.)(emphasis added).

When Mr. Allen was asked why he left out of his expert report the condition to reinstatement, "provided the insured is still in good health" at the time Globe Life received the payment, he answered, "that's just the way I worded it." (Allen depo. at 90:1-3). The letter clearly and unambiguously states that the offer of reinstatement is subject to two conditions: 1) that Globe Life received the premium payment by January 17, 2004 and 2) that the insured must still be in good health at the time Globe Life received the payment. It is undisputed that the insured was dead, and obviously not in good health, when Globe Life received the premium.

Knowing that Globe Life received the premium payment before January 17, 2004 (which is undisputed), Mr. Allen selectively seized upon such condition in the letter to support his opinion, while ignoring the condition that the insured must also still be in good health upon

receipt of the premium. Such careful selectively from the contents of this letter speaks volumes as to Mr. Allen's strong desire to advocate for the Party who hired him. The same selectivity does little to advance his reliability as an expert to assist the trier of fact to understand the facts.

Of course Globe Life's January 2, 2004 letter speaks for itself and must be read as a whole to objectively determine the conditions placed upon reinstatement. It is difficult to determine how Mr. Allen's selecting only part of the contents of this letter could be reasonably calculated to assist the triers of fact.

Another example of Mr. Allen's tendency to be an advocate witness was his disingenuous testimony to the effect that he could not answer the question of whether he would expect an insurance company to reinstate a life insurance policy that was out of benefit, with knowledge that the insured was already dead. (Allen depo. at 102:9-105:7).

Globe Life realizes that it can address these matters on cross-examination of Mr. Allen should the Court deny this motion. However, in all fairness, Globe Life should not be put to the expense and effort of cross-examining a witness of the caliber of this purported expert.

### III. THE LACK OF CREDIBILITY OF WITNESS ALLEN PRECLUDES THIS TESTIMONY.

Defendant is well aware that the issue of credibility of a witness, expert or otherwise, is generally for the trier of fact. Issues regarding the truthfulness of the witness can be explored by means of thorough cross-examination of the sworn testimony of the witness.

However, this witness, John Allen, presents a novel circumstance in that he has shown that he has no regard for the "oath" he takes when he swears to tell the truth. He has freely admitted to knowingly giving false testimony under oath twice in one case in which he testified as an "expert witness". (Allen depo. at 13:21-14:22; 40:10-42:3). Furthermore, he showed, at the very least, a reckless disregard for the truth and his oath in two depositions. (Allen depo. at

35:12-40:9; 31:14-35:4).  Just as disturbing, his responses to questions as to why he testified in this manner, that he merely made "errors in judgment," leave no doubt as to his disregard for the oath.  (Allen depo. at 14:10-22; 42:4-20).

As "gatekeeper," the Court's proper function is to satisfy itself that the witness has sufficient knowledge of the subject and credentials to actually qualify for expert opinion testimony. Surely, one of the mandatory qualifications is the willingness of the witness to adhere to his oath to tell the truth.  Those of us experienced in litigation have occasionally observed expert witnesses who we suspected were not being forthright or completely truthful in their testimony, but Mr. Allen saves us this quiry; he readily admits that he has knowingly given false testimony under oath. He handily and casually dismisses such infraction as a mere "errors of judgment."

A putative expert is allowed to testify in a trial, not as a matter of right, as would a fact witness, but rather with the permission of the Court which has found the witness capable and reliable to express his proffered opinion as an issue. Clearly, Mr. Allen's previous infractions hardly qualify him as "fit" to render expert testimony. Certainly he cannot be fairly described as a reliable expert witness.

## CONCLUSION

Rule 702 of the Federal Rules of Evidence requires that a witness proffered to give expert testimony be qualified as an expert by knowledge, skill, experience, training or education.  By his own testimony, Mr. Allen is not qualified as an expert in the area of life insurance.  The fact that he has experience in other areas of insurance does not qualify him to give testimony on issues of life insurance any more than a civil engineer is qualified to give testimony on mechanical engineering issues simply because both areas fall under the broad umbrella of

"engineering". While life insurance falls under the broad umbrella of "insurance", expertise in one area of insurance is not tantamount to expertise in another. Additionally, it is clear that Allen's opinions are not based upon any reasonable interpretation of the facts of this case as he has taken advocacy to an inappropriate level. Finally, Mr. Allen has demonstrated such a blatant disregard for the truth and the oath he takes as a witness, that is testimony is not credible.

For the foregoing reasons, Globe Life respectfully moves this Court to exclude the testimony of John Allen and to prevent him from testifying as an expert in this case.

/s/Robert E. Poundstone IV
Philip H. Butler (BUT007)
Robert E. Poundstone IV (POU006)
**Attorneys for Defendant Globe Life and Accident Insurance Company**
BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
E-mail: pbutler@bradleyarant.com
          bpoundstone@bradleyarant.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on January 18th, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Christopher Sanspree, Esq.
*Beasley, Allen, Crow, Methvin,*
 *Portis & Miles, P.C.*
    P. O. Box 4160
    Montgomery, AL 36103-4160
    Chris.sanspree@beasleyallen.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: **None.**

    /s/Robert E. Poundstone IV
    Robert E. Poundstone IV (POU006)
    BRADLEY ARANT ROSE & WHITE LLP
    The Alabama Center for Commerce
    401 Adams Avenue, Suite 780
    Montgomery, AL 36104
    Telephone: (334) 956-7700
    Facsimile: (334) 956-7701
    E-mail: bpoundstone@bradleyarant.com