IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KAREN LURIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:06-cv-34-MEF |
| ) | |
| GLOBE LIFE AND ACCIDENT ) | (WO-Not Recommended for Publication) |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Karen Lurie brings suit against Defendant Globe Life and Accident Insurance Company for breach of contract and bad faith. This cause is before the Court on Globe Life's Motion for Summary Judgment (Doc. # 9) filed on October 18, 2006. The Court has carefully considered all submissions in support of and in opposition to the motion and surveyed the relevant case law. The Court finds that the motion is due to be GRANTED.

**RELEVANT PROCEDURAL HISTORY, JURISDICTION, AND VENUE**

Karen Lurie ("Plaintiff") filed suit against Globe Life and Accident Insurance Company ("Globe Life") in the Circuit Court of Houston County, Alabama on December 14, 2005. Plaintiff's Complaint set forth two claims: breach of contract and bad faith. Both claims were predicated on allegations that Globe Life failed to pay Plaintiff, the beneficiary on her deceased husband's accidental death insurance policy, the benefits owed her under the policy after her husband's death. On January 13, 2006, Globe Life timely removed this action to this Court, invoking its subject matter jurisdiction over the action pursuant to 28

U.S.C. § 1332.

This Court finds that it has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion for summary judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

David Lurie obtained a policy of insurance from Globe Life. The policy number was 14-J522138 and its effective date was April 28, 2003. According to the plain terms of the policy of insurance, "[e]ach premium is payable in advance at [Globe Life's] Administrative Office." Premiums on the policy could be paid monthly, quarterly, semi-annually, or annually. The first premium payment of $1.00 was due on the "Certificate Effective Date" which in this case was April 28, 2003. Subsequent premiums were due "at the end of the period for which the preceding premium was paid." Historically, Plaintiff[1] had paid the premiums on this policy on a monthly basis.

In exchange for a $1.00 premium payment for the first month and a monthly premium

---

[1] Plaintiff was married to David Lurie and was the designated beneficiary under the Globe Life policy. Additionally, Plaintiff usually was the one to write the checks for the family's bills.

payment of $16.80 thereafter, this policy provided an accidental death benefit of $100,000 to the designated beneficiary should David Lurie die while the policy was effective between April 28, 2003 and April 27, 2029.

Due to financial constraints brought about by the holiday season, Plaintiff failed to send the premium payment due on November 28, 2003 prior to the date it was due. Similarly, Plaintiff failed to make the premium payment due on December 28, 2003 prior to its due date.

The Globe Life policy clearly provides that

> The coverage of any insured shall terminate at the end of the Grace Period[2] following any premium due date for which the Insured's required premium has not been paid. Any premium paid for any period after the date coverage terminates will not continue the Insured's coverage in force and will be returned, unless accepted by [Globe Life] under the Reinstatement provision in the certificate.

The Reinstatement provision in the certificate provides that

> Coverage may be reinstated at any time within one year after default in premium payment, if:
>
> a. The Insured provides Evidence of Insurability satisfactory to [Globe Life]; and
>
> b. All overdue premiums are paid.

The certificate defines "Evidence of Insurability" as "[s]atisfactory proof, as determined by

---

[2] The certificate defines the "Grace Period" as follows: "A grace period of 31 days will be allowed each Insured for the payment of each premium after the first, during which period his or her insurance shall continue in force.

[Globe Life and Accident Insurance Company at Our Administrative Office in Oklahoma City, Oklahoma], that a person is acceptable for insurance." The certificate, which is without question a contract of insurance, also provides that the

> certificate, with the group policy, enrollment form and attached papers, if any, is the entire contract between [the insured] and [Globe Life]. No change in this certificate will be effective until approved by [Globe Life]. This approval must be noted on or attached to this certificate.

The language of the policy provides for a grace period of thirty-one days following the due date for a premium that was not paid. If the premium is paid within the grace period, the insured's coverage will remain in force. Under the title "Default," the policy states, "If a premium remains unpaid at the end of the grace period, the Insured's Insurance will terminate."

On January 4, 2004, Plaintiff wrote a check[3] to Globe Life for $33.60. Plaintiff believed this amount to be the correct amount of premiums then owing on the policy for the November 28, 2003 premium payment and the December 28, 2003 premium payment. Although it was a Sunday, Plaintiff deposited the check in her mailbox for the mailman to pick up on the following morning.

On the morning of January 6, 2004, David Lurie was killed in a motor vehicle accident.

---

[3] While the date on the check erroneously indicates that it was written on January 4, 2003, the procedural posture of this case requires the Court to credit Plaintiff's testimony that it was actually written on January 4, 2004.

On January 12, 2004, Plaintiff received a Final Notice from Globe Life addressed to David Lurie. This notice was dated January 2, 2004. It indicated that Globe Life had not received the premium payment due on November 28, 2003 and urged David Lurie to send in a payment if he had not already done so. The notice, which purports to be signed by the Chairman and Chief Executive Officer of Globe Life, provides for reinstatement of the policy if David Lurie was in good health and Globe Life received payment of the past due amount by January 17, 2004. The notice states:

> If you have already mailed in your payment, please accept our thanks.
>
> If you have not had a chance to do so, please send in your payment along with the attached noticed and the benefits of your policy will be reinstated provided the insured is still in good health. We must receive your payment by January 17, 2004.

After receiving this notice, Plaintiff and her attorney William B. Matthews, Jr. ("Matthews")[4] called Globe Life on January 12, 2004. During this telephone call, they notified Globe Life that David Lurie, its insured, had been killed in an accident on January 6, 2004. Matthews provided the Globe Life representative with David Lurie's policy number and told the representative that the November and December 2003 premium payments were not paid until January 4, 2004. The Globe Life representative told Matthews and Plaintiff that there would be no lapse in coverage as long as Globe Life received the premium

---

[4] While Matthews represented Plaintiff after the death of her husband and in the early stages of this lawsuit, he has since withdrawn from representing her in this case as certain issues have made it necessary for him to serve as a witness in this case.

5

payments before the January 17, 2004 deadline. The Globe Life representative instructed Matthews to send a letter regarding David Lurie's demise to Globe Life as soon as he was able to obtain a copy of the accident report for the accident which took his life and a copy of the death certificate. The Globe Life representative also told Matthews that he and Plaintiff would receive claims forms to complete and return to Globe Life with the appropriate information. On January 26, 2004, Matthews sent a letter to the Globe Life claims department confirming the conversation they had with the representative on January 12, 2004. Matthews had numerous subsequent telephone conversations with various representatives of Globe Life who reassured him that there had been no lapse in coverage because the premium payment had been received and processed by Globe Life before the January 17, 2004 deadline.[5] Additionally, Plaintiff called Globe Life at various times to check on the status of her claims and was told that the policy was still in effect. Despite having told Globe Life about David Lurie's death, Plaintiff received a bill for the policy premium due at the end of January of 2004.

In May of 2004, Globe Life sent a letter dated May 18, 2004 to Plaintiff's counsel indicating that it was returning the November 2003 and the December 2003 premium payments on David Lurie's policy. Plaintiff's counsel did not receive this letter until June 3, 2004. Globe Life sent a check to Plaintiff dated May 19, 2004 in the amount of $33.60.

---

[5] It is undisputed that on January 16, 2004, Globe Life received and processed the check Plaintiff mailed on January 4, 2004.

**SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A plaintiff must present evidence demonstrating that he can establish the basic elements of his

claim. *Celotex,* 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## DISCUSSION

**A. Applicable Law**

When a federal court exercises jurisdiction based upon diversity of citizenship, the court is bound to apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The *Erie* doctrine extends to choice-of-law questions, so that a court sitting in diversity must apply the forum state's conflict-of-law rules. *Strochak v. Fed. Ins. Co.,* 109 F.3d 717, 719 (11th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Alabama's choice-of-law rules require this Court to apply Alabama law to the bad faith claim. *See, e.g., Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991) (For claims sounding in tort, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred.). The Court will also apply Alabama law to the breach of contract claim.[6]

---

[6] It appears that there is no choice-of-law provision in the insurance contract at issue here. Thus, the Court must apply the law of the state where the contract was made. *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991) ("[A] contract is governed by

**B. Plaintiff's Breach of Contract Claim**

Globe Life argues that Plaintiff cannot demonstrate a prima facie case of breach of contract because: (1) her policy lapsed prior to David Lurie's death due to Plaintiff's nonperformance when the premium was not paid on time; (2) the policy was not reinstated prior to David Lurie's death and therefore no valid contract was in existence at the time of his death; and (3) Globe Life complied with Alabama law when it returned Plaintiff's premium to her.

It is undisputed that Plaintiff did not timely pay the premium that was due on November 28, 2003. Absent some extension of the period of coverage, Plaintiff cannot recover on her claim for breach of contract because no contract would have existed when David Lurie died. *See Grimes v. Liberty Nat. Life Ins. Co.*, 551 So. 2d 329, 332 (Ala. 1989) ("[A]greements for the forfeiture of an insurance policy for nonpayment of premiums are valid and are enforceable by the insurer."); *id.* at 333 (finding that there was no contract in existence where the plaintiff had failed to produce evidence that she had paid the premiums on the policy after being notified that the policy had lapsed for nonpayment of premiums).

---

the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction."). It is unclear in this case where the contract was made. In such cases, Plaintiff has the burden to demonstrate that she can survive summary judgment under the law of either state. *Cf. Stovall v. Universal Constr. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004) (plaintiff opposing a motion to dismiss in a contractual dispute where there is no evidence detailing where the contract was formed has the "burden . . . merely to demonstrate that it [could] prevail under the law of either state"). However, in this case the parties cite solely to Alabama law and do not argue that the law of another state should apply.

The question, therefore, is whether Globe Life "in some way extend[ed] the period of coverage so as to render itself liable on [the policy]." *Mut. Sav. Life Ins. Co. v. Noah*, 282 So. 2d 271, 277 (Ala. 1973). Plaintiff contends that Globe Life did so by waiving its right to cancel the policy and deny Plaintiff's claim when it accepted, negotiated, and deposited Plaintiff's January 4, 2004 premium check after being notified of David Lurie's death.

Plaintiff claims that it is undisputed that Globe Life: (1) sent her a notice informing her that if she paid her past due premiums by January 17, 2004 and her husband was still in good health, the coverage would be reinstated; (2) waived the good health requirement by telling her and her attorney during a telephone call that there would be no lapse in coverage if it received her premium payment by January 17, 2004; (3) initially approved her claim and continued to adjust her claim for almost five months following her payment of the lapsed premiums; and (4) canceled the insurance contract, denied her benefits, and returned her premium payment. She then states:

> The only dispute is whether Globe Life was justified in [canceling the policy and denying Plaintiff benefits]. If Globe Life had notice of David Lurie's death before it accepted, negotiated and deposited the January 4, 2004, premium payment check, then it waived its right to cancel the insurance and deny Mrs. Lurie's claim for benefits.

Plaintiff cites several Alabama Supreme Court cases in support of this proposition. *See Nationwide Mut. Ins. Co. v. Clay*, 525 So. 2d 1339 (Ala. 1987); *State Farm Mut. Auto. Ins. Co. v. Anderson*, 318 So. 2d 687 (Ala. 1975); *Alabama Farm Bureau Mutual Casualty Insurance Co. v. Hicks*, 133 So. 2d 221 (Ala. 1961). Globe Life asserts that these cases are

distinguishable from the facts of this case.[7]

"[W]hen an insurance company accepts payment for a premium on a lapsed policy with knowledge that an accident occurred during the period of lapse, three options are available to the insurer." *Allen v. Dairyland Ins. Co.*, 391 So. 2d 109, 110 (Ala. 1980). These are: (1) return the premium paid for the lapsed period; (2) apply the premium from the date received forward; or (3) retain the premium and cover the loss. *Id.*; *see Noah*, 282 So. 2d at 452. As Globe Life notes, where the policy in question is a life insurance policy, option 2 is not available. *Noah*, 282 So. 2d at 452. However, the options 1 and 3 remain available to the insurance company. *See id.* at 452-53. Globe Life argues that it has chosen option 1 by returning Plaintiff's premium.

The Alabama Supreme Court has applied a doctrine of waiver to situations where an insurance company retains a premium paid after a policy has lapsed where the insurance company has knowledge that a loss occurred during the lapsed period. *See, e.g.*, *Am. Cas. Co. v. Wright*, 554 So. 2d 1015, 1017-19 (Ala. 1989). When the insurance company retains the premium paid for the lapsed period, it chooses option 3 (retaining the premium and

---

[7] Globe Life also argues in its Reply that the terms of the contract could not be changed through the January 12, 2004 telephone call between a Globe Life customer service representative and Plaintiff and her attorney. It further contends that "[i]t was impossible for the policy . . . to be reinstated when the premium was received on January 16, 2004." The Court does not address these arguments because it is convinced that Plaintiff does not raise them as a grounds for denying summary judgment, except inasmuch as they are relevant to her contention that summary judgment should be denied because Globe Life deposited her premium check while having knowledge of her husband's death.

11

covering the loss) and must pay the beneficiaries the amount due under the policy. *See Noah*, 282 So. 2d at 452-53.

Globe Life has pointed out that the insurance contract lapsed when Plaintiff failed to pay her premium due on November 28, 2003. It is Plaintiff's burden to demonstrate that there is a genuine issue for trial. In her Response to the Motion for Summary Judgment, Plaintiff cites several cases standing for the proposition that Globe Life waived its right to cancel the policy and deny Plaintiff's claim when it accepted, negotiated, and deposited Plaintiff's January 4, 2004 premium check with knowledge of David Lurie's death. The cases Plaintiff cites, however, are distinguishable from the facts of this case. In each case, the insurance company did not choose the option of returning the plaintiff's premium payments.

In *Nationwide Mut. Ins. Co. v. Clay*, 525 So. 2d 1339 (Ala. 1987), the insurance company continued to collect automatic premium payments from the plaintiff's checking account for at least ten months after a waiver of premium provision in the policy should have taken effect, and for at least three months after the plaintiff filed suit. *Id.* at 1342. The Alabama Supreme Court held that the insurance company could not deny payment based on misrepresentation in the plaintiff's application because "it waived such a defense by continuing to demand and collect premiums," thereby "ratifying the existence of a contract." *Id.* at 1343. There is no suggestion that the insurance company returned the plaintiff's premiums. Here, Globe Life did accept Plaintiff's January 4, 2004 check. However, it did

not continue to collect premiums,[8] as the insurance company did in *Clay*, and it returned the premium Plaintiff had submitted.

In *Alabama Farm Bureau Mutual Casualty Insurance Co. v. Hicks*, 133 So. 2d 221 (Ala.1961), after the plaintiff sustained a collision loss after his automobile insurance coverage had lapsed, the insurance company accepted his premium payment and renewed coverage. *Id.* at 222-23. The Alabama Supreme Court held that the insurance company could not deny liability. Id. at 223. It stated that the insurance company

> was not entitled to retain and use the premium paid for the defaulting period *with knowledge of the loss* and then deny liability. It cannot in one breath say the policy was not in full force and effect during the defaulting period . . . and in the same breath say that it is, nonetheless, its right to retain and use the premium paid to it covering the defaulting period.

*Id.* The court concluded that the insurance company chose option 3 (retaining the premium and covering the loss) of the three options available to it when it retained plaintiff's premium payment. *Id.* There is no suggestion that the insurance company returned or offered to return the premium payment. *Id.* In this case, however, Globe Life returned Plaintiff's premium payment.

The Alabama Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Anderson*, 318 So. 2d 687 (Ala. 1975), considered the case of a plaintiff who received a premium notice

---

[8] To be sure, one would not expect an insurance company to continue to collect premiums on a life insurance policy after it is notified of the death of the insured. This fact underscores the differences between the facts of this case and those of *Clay*.

informing him that the gross premium due was $112.90, but with a dividend of $6.80 the amount due was $106.10. *Id.* at 452. The plaintiff did not pay this amount until after the due date, and the policy did not provide for a grace period. *Id.* Plaintiff sent the insurance company a check for $106.10 dated three days before the accident, and postmarked one day after the accident. *Id.* The insurance company, with knowledge of the loss, negotiated and deposited the check. *Id.* It then sent the plaintiff a new policy effective from the date it received his check and billed him for the $6.80 dividend. *Id.*

The court concluded that because the loss was sustained during a defaulting period, the check was for a past due payment, and the insurance company negotiated and deposited the check after learning of the loss, the insurance company had waived its right to deny benefits based on the late premium payment. *See id.* at 453-54. This case is distinguishable from *Anderson* because in that case the premium was retained by the insurance company and applied forward. Thus, the insurance company did not choose the option of returning the premium and the Alabama Supreme Court did not discuss that option. Here, in contrast, it is undisputed that Globe Life returned Plaintiff's premium payments.[9]

The Court finds that the cases cited by Plaintiff are distinguishable from the present case. Plaintiff has not demonstrated a genuine issue of material fact regarding her breach of contract claim, and Globe Life is entitled to judgment as a matter of law on that claim.

---

[9] Globe Life did not return the Plaintiff's premium payments until several months after it received her check. However, the issue of the timeliness of Globe Life's return of the premium was not raised by the parties, and the Court will therefore not address it.

**C. Plaintiff's Bad Faith Claim**

Plaintiff alleges that Globe Life is liable for abnormal bad faith. She claims that Globe Life created its own debatable reason to deny her claim, which an insurance company is prohibited from doing. *See State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 306 (Ala. 1999) (an insurer is liable for bad faith if "the plaintiff produce[s] substantial evidence showing that the insurer . . . created its own debatable reason for denying the plaintiff's claim"). However, "contractual liability is a prerequisite for liability for bad faith. Therefore, one who cannot prove she was entitled to benefits under an insurance policy cannot recover on a bad-faith claim." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001). It is undisputed that Globe Life returned Plaintiff's premium payment, in accordance with Alabama law. Plaintiff was not entitled to benefits. Globe Life's motion is therefore due to be GRANTED on Plaintiff's bad faith claim.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

1. Globe Life's Motion for Summary Judgment (Doc. # 9) is GRANTED.

2. The trial and pretrial hearing are CANCELED.

3. The Court will enter a separate final judgment taxing costs.

DONE this the 30th day of January, 2007.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE